1  TOMIO B. NARITA (SBN 156576)
   ROBIN M. BOWEN (SBN 230309)
2  SIMMONDS & NARITA LLP
   44 Montgomery Street, Suite 3010
3  San Francisco, CA 94104-4816
   Telephone: (415) 283-1000
4  Facsimile:   (415) 352-2625
   tnarita@snllp.com
5  rbowen@snllp.com

6  Attorneys for Defendants
   Global Acceptance Company, LP
7  and GAC GP, LLC

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10                        SAN JOSE DIVISION

11

12  JENNIFER LEIGH REED,              )  CASE NO.: C08 01826 RMW (RS)
                                      )
13        Plaintiff,                  )
                                      )
14     vs.                            )  **OPPOSITION TO PLAINTIFF'S**
                                      )  **MOTION FOR SUMMARY**
15                                    )  **JUDGMENT;  REQUEST TO**
                                      )  **VACATE HEARING ON THE**
16  GLOBAL ACCEPTANCE CREDIT          )  **MOTION**
    COMPANY, a Texas Limited          )
17  Partnership; and GAC GP, LLC, a   )  Date:  June 27, 2008
    Texas Corporation,                )  Time:  9:00 a.m.
18                                    )  Ctrm:  6, 4th Floor
          Defendants.                 )
19  _____  )  Honorable Ronald M. Whyte
                                      )

20

21

22

23

24

25

26

27

28

I.    **INTRODUCTION**

Plaintiff Jennifer Leigh Reed ("Reed") has moved for summary judgment on the claims she filed against defendants Global Acceptance Credit Company ("Global Acceptance") and GAC GP, LLC ("GAC") for alleged violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692, *et seq.*, and the Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act"), Cal. Civ. Code § 1788, *et. seq.* Although the Defendants expressly deny that they have violated either the FDCPA or the Rosenthal Act, they have made an offer to Plaintiff to have judgment entered against them in this case pursuant to Federal Rule of Civil Procedure 68. According to the terms of Rule 68, Reed has until June 13, 2008 to respond to Defendants' offer.

The Defendants request that the hearing on this motion be vacated. They anticipate that Reed will accept their Rule 68 offer. Indeed, she has no choice but to accept it because the Defendants offered Reed <u>more</u> than she could hope to receive if she were to prevail at trial. If Reed refuses Defendants' offer of full recovery, her case will become moot and she will lack standing to pursue this action. Notably, Defendants have made several attempts to resolve this case early through settlement, but Reed has ignored these efforts, and has charged forward with this early motion.

In order to preserve judicial resources, the Defendants respectfully request that the hearing on this motion be vacated. If the Rule 68 offer is accepted, the case will be over, except for resolution of Plaintiff's request for fees. If the Rule 68 offer is rejected, the Defendants will file a motion to dismiss for lack of subject matter jurisdiction. In either case, a hearing on Reed's motion for summary judgment is unnecessary at this time.

II.    **PROCEDURAL HISTORY**

Reed failed to pay a debt that she owed to Corinthian Colleges, Inc. ("Corinthian") for expenses associated with her attendance at Everest College, a school owned by Corinthian. In March 2007, Corinthian sold Reed's account, along with a portfolio of other delinquent accounts, to Global Acceptance. *See* Declaration of

1  Michael Varrichio in Support of Defendants' Opposition ("Varrichio Decl.") at ¶ 2. In

2  connection with the sale, Corinthian provided Global Acceptance with information

3  about Reed's account, which reflects an unpaid balance of $2,782.04. *See* Varrichio

4  Decl. at ¶ 2, Exh. A.

5      Reed filed suit against Global Acceptance, and against its general partner GAC,

6  alleging that Global Acceptance's attempts to collect the unpaid balance violated the

7  FDCPA and the Rosenthal Act.  The Defendants evaluated Reed's complaint, and

8  elected to pursue early settlement, even though they believed that they were not liable.

9  Defendants retained counsel and instructed him to obtain a settlement demand from

10  Plaintiff's counsel. *See* Declaration of Tomio B. Narita in Support of Defendants'

11  Opposition ("Narita Decl.") at ¶ 2.  Defendants' counsel sent two requests for a

12  settlement demand to Plaintiff's counsel, but received no response. *Id.* at ¶ 3, Exh. A.

13      Rather than provide a settlement demand, Reed filed an early summary judgment

14  motion.  The motion filed by Mr. Schwinn, Reed's counsel, appears to be virtually

15  identical to similar motions that he has filed in other cases. *See id.* at ¶ 5, Exh. B.

16  When faced with a defendant willing to settle a case early, the prudent course of action

17  would be to minimize the fees and costs necessary to conclude the matter.  However,

18  Mr. Schwinn's practice in FDCPA cases is to increase the amount of time he spends on

19  the matter in order to increase the amount of attorneys' fees that he might later request

20  from the Court. *See id.* at ¶ 6;  *see also, Navarro v. Eskanos & Adler*, 2007 WL

21  4200171, *10 (N.D.Cal. Nov. 26, 2007) ("Mr. Schwinn's activities in the case, and his

22  billing practices, appear calculated to maximize his fees and many cannot be

23  justified.").

24      On May 27, 2008, counsel for Defendants served Reed with an offer of judgment

25  pursuant to Federal Rule of Civil Procedure 68. *See* Narita Decl. at ¶ 7, Exh. C.  Reed's

26  ten-day period to accept the offer will expire on June 13, 2008.  The offer states that,

27  without admitting liability, the Defendants will allow judgment to be taken against

28  them for $3,001, "plus reasonable attorneys' fees and costs, in an amount to be

determined by the court, <u>less</u> the sum of $2,782.04, which represents the outstanding amount of plaintiff's debt." *Id*. at Exh. C.  Thus, Defendants have offered Reed more than she could hope to recover even if she were successful in this action.

Since Reed's prayer is fully satisfied by Defendants' offer, this case no longer presents a justiciable case or controversy.  Reed must either accept Defendants' Rule 68 offer, or her claims will be moot.

## III.  **ARGUMENT**

### A.  **Legal Standards Governing Rule 68 Offers**

Federal Rule of Civil Procedure 68 provides a mechanism by which a defendant can choose to have judgment entered against it rather than continuing to litigate a case. Rule 68 is particularly helpful in cases where, as here, the amount in controversy is likely to be dwarfed by the costs of the litigation process.  As the Supreme Court stated in *Marek v. Chesny*, 473 U.S. 1, 5 (1985), "[t]he plain purpose of Rule 68 is to encourage settlement and avoid litigation. … The Rule prompts both parties to a suit to evaluate the risks and costs of litigation, and to balance them against the likelihood of success upon trial on the merits."

Rule 68 states, in pertinent part, "a party defending against a claim may serve on an opposing party an offer to allow judgment on specified terms, with the costs then accrued."  A plaintiff has ten days in which to accept an offer of judgment;  an offer that remains unaccepted after the expiration of the ten days is deemed withdrawn.  *See Ambalu v. Rosenblatt*, 194 F.R.D. 451, 453 (E.D.N.Y. 2000) ("If accepted, the judgment is entered against the defendant.  If rejected, the offer is deemed withdrawn.")

Although the plaintiff has the discretion to accept or reject any offer, courts throughout the United States have repeatedly held that if a plaintiff rejects an offer

1  providing the maximum statutory relief, the case becomes moot.[1]  As the court observed

2  in *Mackenzie v. Kindred Hospitals East, L.L.C.*, 276 F.Supp.2d 1211, 1218 (M.D.Fl.

3  2003), "complete relief to the plaintiff moots the action because [the plaintiff] no longer

4  has a legally cognizable interest in the outcome of the litigation."  When the parties

5  have no cognizable interest in the outcome of a case, the issues do not present a "live"

6  controversy.  Thus, the case is  rendered moot and the court is divested of subject

7  matter jurisdiction under Article III of the United States Constitution.  *Id.*; *see also*,

8  *Ward v. Bank of New York,* 455 F.Supp.2d 262, 266 (S.D.N.Y. 2006) ("If a controversy

9  is moot, then the Court lacks subject matter jurisdiction over the action.").

10      The same rule applies in cases arising under the FDCPA.  Numerous cases have

11  been deemed moot after a defendant debt collector offered full relief to a plaintiff

12  debtor.  *See Thomas v. Law Firm of Simpson & Cybak,* 244 Fed. Appx. 741, 743 (7th

13  Cir., 2007) ("[B]y rejecting an offer that would otherwise make him whole on the claim

14  he brings, the plaintiff 'eliminates a legal dispute upon which federal jurisdiction can be

15  based,'" citing *Greisz v. Household Bank*, 176 F.3d 1012, 1014-15 (7th Cir. 1999);

16  *Ambalu,* 194 F.R.D. at 453 ("'Once the defendant offers to satisfy the plaintiff's entire

17  demand, there is no dispute over which to litigate … and a plaintiff who refuses to

18  acknowledge this loses outright, under Fed.R.Civ.P. 12(b)(1), because he has no

19  remaining stake,'" citing *Rand v. Monsanto Co.,* 926 F.2d 596, 598 (7th Cir. 1991);

20  *Morgan v. Account Collection Tech., LLC*, 2006 WL 2597865, *2 (S.D.N.Y., Sept. 6,

21  2006) ("Generally, when an offer of judgment constitutes full relief for the named

22

23

24

25

26      [1] *See, e.g.*, *Ambalu*, 194 F.R.D. at 453; *Mackenzie v. Kindred Hospitals East, L.L.C.*, 276
    F.Supp.2d 1211, 1218 (M.D.Fl. 2003)*;  Ward v. Bank of New York,* 455 F.Supp.2d 262, 266
27  (S.D.N.Y. 2006)*;  Darboe v. Goodwill Indust. of Greater NY & No. NJ, Inc.*, 485 F.Supp.2d
    221, 224 (E.D.N.Y. 2007); *Wiskur v. Short Term Loans, LLC*, 94 F.Supp.2d 937, 939 (N.D.Ill.
28  2000).

1  plaintiff's substantive claims, the plaintiff ceases to have a personal stake in the case

2  and the court lacks jurisdiction.").[2]

3      In *Ambalu*, the court held that once the defendant "offered all that Ambalu could

4  hope to recover through the litigation, 'there is no justification for taking the time of the

5  court and the defendant in the pursuit of [a] minuscule individual claim[] which

6  defendant has … satisfied.'" *Ambalu,* 194 F.R.D. at 453, citing *Abrams v. Interco Inc.,*

7  719 F2d 23, 32 (2d Cir. 1983).  Similarly, in *Morgan*, 2006 WL 2597865**, \*2,** the court

8  said that "[a]lthough the language of the rule gives a plaintiff the authority to accept or

9  reject such offers, it may be appropriate for a court to compel acceptance of the offer

10 when it is all the plaintiff could expect to receive through litigation, as the purpose of

11 Rule 68 is to encourage settlement and avoid unnecessary litigation."

**B.    Reed Is Not Legally Entitled To Recover More Than The Amount Offered In Defendants' Rule 68 Offer**

12

13      In their Rule 68 offer, the Defendants' agreed to have judgment entered against

14 them for the amount of $3,001 in damages, plus reasonable attorneys' fees and costs.

15 The offer <u>exceeds</u> the amount of Reed's requested damages (even though defendants

16 dispute that she could be awarded the full amount she requested if she were to prevail

17 in the action).

18      The maximum amount of damages available under the FDCPA is limited to

19 $1,000 per action.  *See* 15 U.S.C. § 1692k(a) ("[A]ny debt collector who fails to comply

20 with any provision of this title with respect to any person is liable to such person in an

21 amount equal to the sum of … additional damages as the court may allow, but **not**

22 **exceeding $1,000**," emphasis added).  Similarly, the Rosenthal Act also limits statutory

23

24      [2] *See also*, *McCauley v. Trans Union, L.L.C.,* 402 F.3d 340, 341 (2nd Cir. 2005); *Weiss*
25 *v. Regal Collections*, 385 F.3d 337, 342 (3d Cir. 2004);  *Basha v. Mitsubishi Motor Credit of*
*Am., Inc.*, 336 F.3d 451, 453 (5th Cir. 2003);  *Vega v. Credit Bureau Enterprises*, 2003 WL
26 21544258 (E.D.N.Y., July 9, 2003); *Weissman v. ABC Financial Serv., Inc.*, 203 F.R.D. 81, 83
27 (E.D.N.Y., Sept. 22, 2001);  *Wilner v. OSI Collection Serv., Inc.*, 201 F.R.D. 321, 323
(S.D.N.Y., June 26, 2001);  *Malm v. Household Bank (SB), N.A.*, 2004 WL 1559370, \*3
28 (D.Minn., July 7, 2004).

1  damages to $1,000, and only in cases where there is proof of a willful and knowing

2  violation. *See* Cal. Civ. Code § 1788.30(b) (Statutory damages may be awarded "in

3  such amount as the court may allow, which shall not be less than one hundred dollars

4  ($100) nor greater than one thousand dollars ($1,000).") Thus, the maximum amount

5  of statutory damages Reed could be awarded if she were successful in her claims is

6  $2,000, assuming she could prove a willful and knowing violation of the Rosenthal Act.

7  Reed suggests that, in addition to the $1,000 she seeks under section 1788.30 of

8  the Rosenthal Act, she is also entitled to an additional $1,000 in damages under section

9  1788.17. *See* Plaintiff's Memorandum in Support of Motion for Summary Judgment at

10  section F. But section 1788.17 does <u>not</u> provide that a debtor may recover an additional

11  $1,000 under the Rosenthal Act against the same debt collector in the same action. It

12  merely states that a collector is "subject to" certain of the remedies provided for by

13  federal law if the collector violates certain provisions of the FDCPA. There is nothing

14  to suggest that the California Legislature wanted to repeal by implication section

15  1788.30(b) of the Civil Code, which limits the amount of statutory damages to $1,000

16  **per action**, upon a showing of a willful and knowing violation.

17  Furthermore, the facts of this case support an award of no or minimal damages,

18  not the maximum amount permitted by the statutes. In determining the amount of

19  damages appropriate for a violation of the FDCPA, the court should consider "the

20  frequency and persistence of noncompliance by the debt collector, the nature of such

21  noncompliance, and the extent to which such noncompliance was intentional." 15

22  U.S.C. § 1692k(b)(1). At most, Reed can prove only a technical violation of the

23  FDCPA, and she has submitted no evidence that the Defendants intended to violate the

24  Act or that they have done so in the past. Statutory damages are not warranted in this

25  case. *See, e.g., Emanuel v. American Credit Exchange*, 870 F. 2d 805, 809 (2d Cir.

26  1989) (awarding zero statutory damages for a technical violation of the FDCPA); *Piples*

27  *v. Credit Bureau of Lockport, Inc.*, 886 F. 2d 22, 28 (2d Cir. 1989) (same).

28

Under the Rosenthal Act, Reed may recover statutory damages only if she proves that the Defendants "willfully and knowingly" violated the statute.  Cal. Civ. Code § 1788.30(b) ("Any debt collector who willfully and knowingly violates this title …."). Again, Reed has submitted no evidence showing that the Defendants intended to violate the Rosenthal Act, or that they even knew that they allegedly did so.  The Rosenthal Act does not permit damages here.  Thus, the Defendants have offered Reed significantly more than she could hope to recover through litigation.

### C.    If Reed Rejects The Rule 68 Offer, Her Claims Will Become Moot And The Action Must Be Dismissed

The Defendants anticipate that Reed will accept their offer because it provides her with more than the maximum amount she could hope to recover for her claims if she were to ultimately prevail in this action.  In her prayer for relief, Reed requests $3,000 in statutory damages plus costs and reasonable attorneys' fees.  *See* Complaint at 9:12-19.  The Defendants offered Reed <u>more</u> than she requested.  Their Rule 68 offer proposes payment of $3,001 plus costs and reasonable attorneys' fees.  *See* Narita Decl. at ¶ 7, Exh. C.

In their Answer to Reed's Complaint, Defendants properly plead, as an affirmative defense, a setoff of any damages in the amount of the debt Reed owes to them.  *See* Answer at 11:14-19.  Even if Reed were to prevail in the case and was awarded her full claimed damages, the judgment amount would be subject to reduction by the amount of the debt that Reed indisputably owes to Global Acceptance.  *See* Varrichio Decl. at ¶ 2 and Ex. A.  Therefore, Defendants' offer of $3,001, minus Reed's outstanding debt of $2,782.04, completely satisfies Reed's claims.

Acceptance of the Defendants' Rule 68 offer of judgment will provide Reed with full and complete compensation for the alleged violations of the FDCPA and Rosenthal Act.  If she were to continue this litigation, Reed could expect no more recovery than has already been offered.  She therefore no longer has a cognizable interest the outcome of this proceeding.  When a party lacks a cognizable interest in the outcome of the

litigation, the case becomes moot. *See Mackenzie*, 276 F.Supp.2d at 1218. Given the Defendants Rule 68 offer, there is no justification for taking the time of the Court and Defendants in pursuit of a fully-satisfied claim.

Defendants request that the Court vacate the hearing on this motion. If Reed accepts the offer, as she must, there will be no need for a hearing on this summary judgment motion. The only unresolved matter will be the amount of Reed's reasonable costs and attorneys' fees. If Reed chooses to reject the offer, Defendants will file a motion to dismiss for lack of subject matter jurisdiction.

In the alternative, Defendants request that the Court deny the summary judgment motion, because genuine issues of material fact exist as to each of Reed's claims.

## IV. **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that Court vacate the hearing on Plaintiff's Motion for Summary Judgment. In the alternative, the motion should be denied.

DATED: June 6, 2008                SIMMONDS & NARITA LLP
                                   TOMIO B. NARITA
                                   ROBIN M. BOWEN


                      By:    /s/Robin M. Bowen
                             Robin M. Bowen
                             Attorneys for Defendants
                             Global Acceptance Credit Company, LP and
                             GAC GP, LLC

1  TOMIO B. NARITA (SBN 156576)
   ROBIN M. BOWEN (SBN 230309)
2  SIMMONDS & NARITA LLP
   44 Montgomery Street, Suite 3010
3  San Francisco, CA 94104-4816
   Telephone: (415) 283-1000
4  Facsimile:   (415) 352-2625
   tnarita@snllp.com
5  rbowen@snllp.com

6  Attorneys for Defendants
   Global Acceptance Credit Company, LP
7  and GAC GP, LLC

8                UNITED STATES DISTRICT COURT

9                NORTHERN DISTRICT OF CALIFORNIA

10                    SAN JOSE DIVISION

11

12  JENNIFER LEIGH REED,              )  CASE NO.: C08 01826 RMW (RS)
                                      )
13              Plaintiff,            )
                                      )  **DECLARATION OF MICHAEL**
14       vs.                          )  **VARRICHIO IN SUPPORT OF**
                                      )  **OPPOSITION TO PLAINTIFF'S**
15                                    )  **MOTION FOR SUMMARY**
                                      )  **JUDGMENT**
16  GLOBAL ACCEPTANCE CREDIT          )
    COMPANY, a Texas Limited          )  Date:  June 27, 2008
17  Partnership; and GAC GP, LLC, a   )  Time:  9:00 a.m.
    Texas Corporation,                )  Ctrm:  6, 4th Floor
18                                    )
                Defendants.           )  Honorable Ronald M. Whyte
19  _____  )

20

21

22

23

24

25

26

27

28

I, Michael Varrichio, hereby declare as follows:

1.    I am the President of Global Acceptance Credit Company, LP ("Global Acceptance"), a defendant in this action. I make this declaration in support of Defendants' Opposition to Plaintiff's Motion for Summary Judgment. I have personal knowledge of the facts set forth below, and could and would testify thereto if called upon to do so.

2.    On about March 27, 2007, Global Acceptance purchased a portfolio of delinquent accounts from Corinthian Colleges, Inc., including a debt owed by Plaintiff Jennifer Leigh Reed to one of the schools owned by Corinthian (Everest College). The information provided to Global Acceptance by the seller shows that Ms. Reed made a number of payments on her account, but the last payment was received on July 10, 2006, and the outstanding balance on Ms. Reed's account as of March 29, 2007 was $2,782.04. A true and correct copy of a ledger reflecting this balance is attached hereto as **Exhibit A.**

3.    No payments have been made to Global Acceptance by Ms. Reed on this debt and it remains due and owing at this time.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed at Arlington, Texas on this 6th day of June 2008.


_____
Michael Varrichio

Exhibit A

```
AS OF 07/19/07                    STUDENT LEDGER                                    PAGE:        1
      10:38:17

                              184 - EVEREST COLLEGE
                              1245 SO. WINCHESTER BLVD.
                              SAN JOSE   CA 95128
                              408-246-4171
```

STUDENT NAME : REED, JENNIFER
LOCAL ADDRESS: 4920 HARMONY WAY

SAN JOSE
CA  95130

ALTER ADDRESS:

| Field | Value |
|---|---|
| STUDENT ID.......: | REDACTED3231 |
| PROGRAM ID.......: | MMA  FROM 09/16/04 |
| ORIGINAL START...: | 09/16/04 |
| STATUS...........: | 40 - GRADUATE W/O BALANCE |
| ACADEMIC YR/MTH..: | 00 - 00 |
| LAST-DAY PRESENT.: | 04/26/2005 |
| DOD..............: | |
| TOTAL BALANCE....: | 0.00 |
| PHONE NBR..: | 408-364-1084 |
| ALT PHONE..: | 408-807-2605 |
| CONTRACT...: | |
| PAYGO: | |

THIS ACCOUNT HAS BEEN SOLD TO UNKNOWN

| | DATE | TR TYPE | MEDIUM | DESCRIPTION | F/A DESC | CHARGES | PAYMENTS | RECEIPT NBR | REFUNDS | BALANCE | COMMENTS |
|---|---|---|---|---|---|---|---|---|---|---|---|
| MMA | 09/14/04 | 01 | A1 | PAY CHECK | PAYGO | 0.00 | 50.00 | S0003174 | 0.00 | 50.00- | CK 1305 |
| MMA | 09/16/04 | 01 | B2 | TUIT ORIG | | 12,810.00 | 0.00 | | 0.00 | 12,760.00 | |
| MMA | 09/23/04 | 01 | DK | LEDGER TRNSFR | PAYGO | | 50.00- | | 0.00 | 12,810.00 | AUTOPOST |
| MMA | 09/23/04 | 08 | B6 | BOOK CHG | | 499.00 | 0.00 | | 0.00 | 13,309.00 | |
| MMA | 09/23/04 | 08 | DK | LEDGER TRNSFR | | | 50.00 | | 0.00 | 13,259.00 | |
| MMA | 09/29/04 | 03 | BS | STRF FEE (CA.) | | 32.50 | 0.00 | | 0.00 | 13,291.50 | |
| MMA | 01/12/05 | 01 | A6 | PAY EFT | UNSUB | 0.00 | 1,940.00 | | 0.00 | 11,351.50 | 1/2 AUTO |
| MMA | 01/12/05 | 01 | A6 | PAY EFT | STAFFO | 0.00 | 1,273.13 | 20050112 | 0.00 | 10,078.37 | 1/2 AUTO |
| MMA | 01/20/05 | 01 | DK | LEDGER TRNSFR | BALANC | 449.00 | 0.00 | 20050112 | 0.00 | 10,527.37 | |
| MMA | 01/20/05 | 03 | DK | LEDGER TRNSFR | BALANC | 0.00 | 32.50 | | 0.00 | 10,494.87 | |
| MMA | 01/20/05 | 03 | DK | LEDGER TRNSFR | BALANC | 32.50 | 0.00 | | 0.00 | 10,527.37 | |
| MMA | 01/20/05 | 01 | DK | LEDGER TRNSFR | BALANC | 0.00 | 449.00 | | 0.00 | 10,078.37 | |
| MMA | 03/03/05 | 01 | A6 | PAY EFT | STAFFO | 0.00 | 1,273.12 | 20050303 | 0.00 | 8,805.25 | 2/2 AUTO |
| MMA | 03/03/05 | 01 | A6 | PAY EFT | UNSUB | 0.00 | 1,950.00 | 20050303 | 0.00 | 6,855.25 | 2/2 AUTO |
| MMA | 05/06/05 | 01 | A4 | PAY F/A VCHR | PERKIN | 0.00 | 1,324.00 | CCP 1359 | 0.00 | 5,531.25 | 12/16/04 |
| MMA | 05/06/05 | 01 | A4 | PAY F/A VCHR | PERKIN | 0.00 | 1,333.00 | CCP 1359 | 0.00 | 4,198.25 | 03/23/05 |
| MMA | 05/06/05 | 01 | A4 | PAY F/A VCHR | PERKIN | 0.00 | 1,333.00 | CCP 1359 | 0.00 | 2,865.25 | 09/16/04 |
| MMA | 07/25/05 | 01 | A5 | EPP CHECK | EPP | 0.00 | 15.87 | AU050725 | 0.00 | 2,849.38 | AUTOO899 |
| MMA | 08/25/05 | 01 | A5 | EPP CHECK | EPP | 0.00 | 16.07 | AU050825 | 0.00 | 2,833.31 | AUTOO899 |
| MMA | 09/26/05 | 01 | A5 | EPP CHECK | EPP | 0.00 | 16.27 | AU050925 | 0.00 | 2,817.04 | AUTOO899 |
| MMA | 01/03/06 | 01 | A5 | EPP CHECK | EPP | 0.00 | 5.00 | NP123005 | 0.00 | 2,812.04 | NLSC N/P |
| MMA | 02/01/06 | 01 | A5 | EPP CHECK | EPP | 0.00 | 5.00 | NP013006 | 0.00 | 2,807.04 | NLSC N/P |
| MMA | 03/01/06 | 01 | A5 | EPP CHECK | EPP | 0.00 | 5.00 | NP023006 | 0.00 | 2,802.04 | NLSC N/P |
| MMA | 04/06/06 | 01 | A5 | EPP CHECK | EPP | 0.00 | 5.00 | NP033006 | 0.00 | 2,797.04 | NLSC N/P |
| MMA | 05/11/06 | 01 | A5 | EPP CHECK | EPP | 0.00 | 5.00 | NP051006 | 0.00 | 2,792.04 | NLSC N/P |
| MMA | 06/01/06 | 01 | A5 | EPP CHECK | EPP | 0.00 | 5.00 | NP053006 | 0.00 | 2,787.04 | NLSC N/P |
| MMA | 07/10/06 | 01 | A5 | EPP CHECK | EPP | 0.00 | 5.00 | NP063006 | 0.00 | 2,782.04 | NLSC N/P |
| MMA | 12/21/06 | 01 | DK | LEDGER TRNSFR | BALANC | 0.00 | 2,782.04 | COLLECTN | 0.00 | 0.00 | ACM26PA1 |
| MMA | 12/21/06 | 96 | DK | LEDGER TRNSFR | BALANC | 0.00 | 2,782.04- | FROM 01 | 0.00 | 2,782.04 | ACM26PA1 |
| MMA | 12/21/06 | 96 | D4 | TRNSFR TO COLLE | BALANC | 0.00 | 2,782.04 | TO AGCY | 0.00 | 0.00 | ACM26PA1 |
| MMA | 03/29/07 | 96 | D4 | TRNSFR TO COLLE | BALANC | 0.00 | 2,782.04- | GACO307 | 0.00 | 2,782.04 | ACM26PA1 |

```
AS OF 07/19/07                    STUDENT LEDGER                                    PAGE:      2
      10:38:18
                       184 - EVEREST COLLEGE
                             1245 SO. WINCHESTER BLVD.
                             SAN JOSE    CA 95128
                             408-246-4171


STUDENT NAME : REED, JENNIFER                STUDENT ID.....: REDACTED3231        PHONE NBR..: 408-364-1084
LOCAL ADDRESS: 4920 HARMONY WAY              PROGRAM ID.....: MMA FROM 09/16/04   ALT PHONE..: 408-807-2605
                                             ORIGINAL START.: 09/16/04            CONTRACT...:     PAYGO:
                   SAN JOSE                  STATUS.........: 40 - GRADUATE W/O BALANCE
                   CA    95130               ACADEMIC YR/MTH.: 00 - 00
ALTER ADDRESS:                               LAST-DAY PRESENT: 04/26/2005
                                             DOD............:

                                             TOTAL BALANCE...:          0.00

          THIS ACCOUNT HAS BEEN SOLD TO UNKNOWN

                               F/A                         RECEIPT
     DATE  TYPE MEDIUM  DESCRIPTION  DESC   CHARGES  PAYMENTS  NBR    REFUNDS  BALANCE  COMMENTS
     ----- ---- ------  -----------  ----  --------  --------  -------  -------  -------  --------
ACADEMIC YEAR: 00 CONTINUED
MMA  03/29/07  96  A7  WIRE TRANSFER  SALE    0.00    156.07  GACO307    0.00  2,625.97
MMA  03/29/07  96  AZ  OTHER PAY      SALE    0.00  2,625.97  GACO307    0.00      0.00

          COURSE TOTALS                            13,341.50  13,341.50           0.00      0.00
```

AS OF 07/19/07                    STUDENT LEDGER                                    PAGE:    3
       10:38:18

             184 - EVEREST COLLEGE
                   1245 SO. WINCHESTER BLVD.
                   SAN JOSE   CA  95128
                   408-246-4171

STUDENT NAME : REED, JENNIFER              STUDENT ID......: REDACTED3231        PHONE NBR..: 408-364-1084
LOCAL ADDRESS: 4920 HARMONY WAY            PROGRAM ID......: MMA  FROM 09/16/04  ALT PHONE..: 408-807-2605
                                           ORIGINAL START..: 09/16/04            CONTRACT...:        PAYGO:
                                           STATUS..........: 40 - GRADUATE W/O BALANCE
             SAN JOSE                       ACADEMIC YR/MTH.: 00 - 00
             CA   95130                     LAST-DAY PRESENT: 04/26/2005
ALTER ADDRESS:                              DOD.............:

       THIS ACCOUNT HAS BEEN SOLD TO UNKNOWN     TOTAL BALANCE...:         0.00

                        ORIGINAL PROGRAM SETUP
                        ----------------------
                                           COURSE CREDIT..:     47.00
COURSE TUITION: 12,810.00                  CLOCK HOURS....:       720
PGM EFF DATE..: 04/05/2004                 COST-PER-CREDIT:    272.55
REG FEE AMOUNT:        0.00                PROGRAM LENGTH.: 8 MONTH(S)
TUITION BY....: COURSE

                              LEDGER TOTALS
                              -------------
COURSE TUITION: 12,810.00                  TOTAL CHARGES..: 13,341.50
TUITION ADJ...:        0.00                TOTAL PAYMENTS.: 13,341.50
TOTAL-TUITION.: 12,810.00                  COURSE BALANCE.:        0.00
TUITION EARNED: 12,810.00

                   CHARGES      PAYMENTS     REFUNDS     BALANCE
                   -------      --------     -------     -------
TUITION           12,810.00    12,810.00        0.00
BKSTORE (NON-TA      499.00       499.00        0.00
STUDENT SERVICE       32.50        32.50        0.00
COLLECTIONS                                     0.00

PROGRAM TOTALS    13,341.50    13,341.50        0.00        0.00

1  TOMIO B. NARITA (SBN 156576)
   ROBIN M. BOWEN (SBN 230309)
2  SIMMONDS & NARITA LLP
   44 Montgomery Street, Suite 3010
3  San Francisco, CA 94104-4816
   Telephone: (415) 283-1000
4  Facsimile:   (415) 352-2625
   tnarita@snllp.com
5  rbowen@snllp.com

6  Attorneys for Defendants
   Global Acceptance Credit Company, LP
7  and GAC GP, LLC

8                    UNITED STATES DISTRICT COURT

9                    NORTHERN DISTRICT OF CALIFORNIA

10                         SAN JOSE DIVISION

11

12  JENNIFER LEIGH REED,                )  CASE NO.: C08 01826 RMW (RS)
                                        )
13              Plaintiff,              )
                                        )
14         vs.                          )  **DECLARATION OF TOMIO B.**
                                        )  **NARITA IN SUPPORT OF**
15                                      )  **OPPOSITION TO PLAINTIFF'S**
                                        )  **MOTION FOR SUMMARY**
16  GLOBAL ACCEPTANCE CREDIT            )  **JUDGMENT**
    COMPANY, a Texas Limited            )
17  Partnership; and GAC GP, LLC, a     )  Date:  June 27, 2008
    Texas Corporation,                  )  Time:  9:00 a.m.
18                                      )  Ctrm:  6, 4th Floor
                Defendants.             )
19  _____        )  Honorable Ronald M. Whyte
                                        )
20

21

22

23

24

25

26

27

28

1    I, Tomio B. Narita, hereby declare as follows:

2        1.      I am a partner of Simmonds & Narita LLP, counsel of record for

3    defendants Global Acceptance Credit Company and GAC GP, LLC in this action.  I

4    make this declaration in support of Defendants' Opposition to Plaintiff's Motion for

5    Summary Judgment.  I have personal knowledge of the facts set forth below, and could

6    and would testify thereto if called upon to do so.

7        2.      On about April 22, 2008, my firm was retained to represent the defendants

8    in this action.  Although Defendants believed that they had a number of meritorious

9    defenses to the Complaint, they concluded that it would be most cost-effective to

10   resolve the matter early.  Accordingly, they requested that I contact counsel for Plaintiff

11   to obtain a settlement demand from Plaintiff before any Answer needed to be filed on

12   behalf of Defendants.

13       3.      On April 22, 2008, as instructed by my client, I contacted counsel for

14   Plaintiff, Fred Schwinn, and asked him to make a settlement demand before Defendants

15   needed to file an Answer.   He did not respond.  On May 3, 2008, I sent a follow-up

16   message to Mr. Schwinn, repeating my request that he make a settlement demand.

17   Once again, he did not respond.  To date, he has never responded.  A true and correct

18   copy of the emails that I sent to Mr. Schwinn requesting a settlement demand from him

19   in this action are attached hereto as **Exhibit A.**

20       4.      Rather than respond to my requests for a settlement demand, Mr. Schwinn

21   elected to file an early summary judgment motion in this action.

22       5.      The summary judgment motion filed by Mr. Schwinn in this action appears

23   to be in large part a "stock" summary judgment motion which is in large part virtually

24   identical to other motions that Mr. Schwinn has filed in other cases before this court.

25   Examples of other substantially identical summary judgment motions filed by Mr.

26   Schwinn on behalf of other clients are attached hereto as **Exhibit B**.

27

28

REED V. GLOBAL ACCEPTANCE CREDIT COMPANY ET AL. (CASE NO. C08 01826 RMW (RS))
DECLARATION OF TOMIO B. NARITA RE OPPOSITION TO SUMMARY JUDGMENT                    2.

1          6.    I am informed and believe and based thereon allege that Mr. Schwinn's

2    refusal to respond to my request for a settlement demand before either party had spent

3    much time on the case, and his immediate filing of an early "stock" summary judgment

4    motion in this case, was done as part of a deliberate attempt on his part to increase the

5    amount of time that he spent on this matter, so as to increase the amount of attorneys'

6    fees that he might later request from the Court in this action.

7          7.    On May 27, 2008, Defendants served Plaintiff with an offer of judgment

8    pursuant to Federal Rule of Civil Procedure 68.  In the offer, the Defendants, while

9    denying liability, offered to have judgment entered against them for the amount of

10   $3,001 plus reasonable attorneys' fees and costs, in an amount to be determined by the

11   Court, minus the amount of Ms. Reed's outstanding debt.  A true and correct copy of

12   the offer is attached hereto as **Exhibit C.**  As of the date of this declaration, Ms. Reed

13   has not accepted the offer.

14         I declare under penalty of perjury that the foregoing is true and correct.

15   Executed at San Francisco, California, on this 6th day of June 2008.

16

17

18                            s/Tomio B. Narita

19                            Tomio B. Narita

20

21

22

23

24

25

26

27

28

Exhibit A

**From:**          Tomio Narita
**Sent:**          Saturday, May 03, 2008 11:44 AM
**To:**            Tomio Narita; 'Fred W. Schwinn Esq. (fred.schwinn@sjconsumerlaw.com)'
**Subject:**       RE: Reed v. Global Acceptance Credit Co. - ND Cal. Case No 08-1826


Fred:

I have not heard a response from you on this.  Please advise if your client has a demand.

Thank you.

Tomio

---

**From:** Tomio Narita
**Sent:** Tuesday, April 22, 2008 9:43 PM
**To:** Fred W. Schwinn Esq. (fred.schwinn@sjconsumerlaw.com)
**Cc:** Tomio Narita
**Subject:** Reed v. Global Acceptance Credit Co. - ND Cal. Case No 08-1826


Fred:

The defendant in this action has retained us to respond to the complaint.   In an effort to reduce the cost of defense, the client has asked us to determine whether the plaintiff has a settlement demand. In formulating the demand, please keep in mind that if your client wishes to obtain a release of the debt that is due, the balance on her account was $2,782.04 as of 12/21/06, the debt has been accruing interest since that date, and the debt is within the statute of limitations.

I look forward to hearing from you.

Tomio B. Narita
Simmonds & Narita LLP
44 Montgomery Street, Suite 3010
San Francisco, CA  94104
Direct:  (415) 283.1010
Mobile: (415) 519.6093
Main:  (415) 283.1000
Fax:  (415) 352.2625
email:  tnarita@snllp.com
www.snllp.com

1

Exhibit B

Fred W. Schwinn (SBN 225575)
CONSUMER LAW CENTER, INC.
12 South First Street, Suite 1014
San Jose, California  95113-2418
Telephone Number: (408) 294-6100
Facsimile Number: (408) 294-6190
Email Address: fred.schwinn@sjconsumerlaw.com

Attorney for Plaintiff
JO ANNE GRAFF

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| JO ANNE GRAFF,<br><br>      Plaintiff,<br><br>v.<br><br>HUNT & HENRIQUES, a general partnership, MICHAEL SCOTT HUNT, individually and in his official capacity, and JANALIE ANN HENRIQUES, individually and in her official capacity,<br><br>      Defendants. | Case No.  C08-00908-JF-PVT<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST DEFENDANT, HUNT & HENRIQUES**<br><br>Date:    August 15, 2008<br>Time:    9:00 a.m.<br>Judge:   Honorable Jeremy Fogel<br>Courtroom: Courtroom 3, 5th Floor<br>Place:   280 South First Street<br>      San Jose, California |

   COMES NOW the Plaintiff, JO ANNE GRAFF, by and through her attorney Fred W. Schwinn of the Consumer Law Center, Inc., and hereby submits her Memorandum of Points and Authorities in Support of Motion for Partial Summary Judgment filed herein.

# TABLE OF CONTENTS

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

PROCEDURAL HISTORY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

FACTS OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

STATEMENT OF QUESTIONS PRESENTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

      A.    THE "LEAST SOPHISTICATED CONSUMER" STANDARD IS USED
            TO ANALYZE VIOLATIONS OF THE FDCPA . . . . . . . . . . . . . . . . . . . . . . . 5

      B.    UNDER THE STRICT LIABILITY STANDARD OF THE FDCPA,
            PLAINTIFF HAS PLED NUMEROUS VIOLATIONS OF THE ACT, AS
            SEEN FROM THE PERSPECTIVE OF THE "LEAST SOPHISTICATED
            CONSUMER" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

            1.     DEFENDANT H&H CONTINUED TO COMMUNICATE
                   DIRECTLY WITH PLAINTIFF IN AN ATTEMPT TO COLLECT
                   THE DEBT DESPITE KNOWING THAT PLAINTIFF WAS
                   REPRESENTED BY AN ATTORNEY, IN VIOLATION OF 15
                   U.S.C. § 1692c(a)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

      C.    THIS COURT SHOULD AWARD PLAINTIFF THE MAXIMUM
            STATUTORY DAMAGE AMOUNT OF $1,000 UNDER THE FDCPA . . . . . . 9

      D.    PLAINTIFF HAS A STATUTORY RIGHT TO ATTORNEY'S FEES AND
            COSTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

**TABLE OF AUTHORITIES**

**CASES**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L. Ed. 2d 202 (1986). . . . 3, 4

*Avila v. Rubin*, 84 F.3d 222 (7th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Baker v. G.C. Services*, 677 F.2d 775 (9th Cir. 1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 7, 8

*Bentley v. Great Lakes Collection Bureau*, 6 F.3d 60 (2nd Cir. 1993) . . . . . . . . . . . . . . . . . . . 6, 8

*Brinson v. Linda Rose Joint Venture*, 53 F.3d 1044 (9th Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . 4

*Cacace v. Lucas*, 775 F. Supp. 502 (D. Conn. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 8

*Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). . . . . . . . . . . 4

*Clomon v. Jackson*, 988 F.2d 1314 (2nd Cir. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*De Coito v. Unifund Corp.*, 2004 U.S. Dist. LEXIS 23729 (D. Haw. January 4, 2004) . . . . . . . . 7

*EEOC v. Farmer Bros. Co.,* 31 F.3d 891 (9th Cir. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Goins v. JBC & Associates, P.C.*, 352 F. Supp. 2d 262 (D. Conn. 2005) . . . . . . . . . . . . . . . . . . 9

*Graziano v. Harrison*, 950 F.2d 107 (3rd Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Hartman v. Meridian Financial Services, Inc.*, 191 F. Supp. 2d 1031 (W.D. Wis. 2002) . . . . . . 8

*Herbert v. Monterey Financial Services*, 863 F. Supp. 76 (D. Conn. 1994) . . . . . . . . . . . . . . . . . 9

*Jeter v. Credit Bureau*, 760 F.2d 1168 (11th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

*McCartney v. First City Bank*, 970 F.2d 45 (5th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Perez v. Perkiss*, 742 F. Supp. 883 (D. Del. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Picht v. Jon R. Hawks, Ltd.*, 236 F.3d 446 (8th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Pipiles v. Credit Bureau*, Inc., 886 F.2d 22 (2d Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Pittman v. J.J. Mac Inttyre Co. of Nevada, Inc.*, 969 F. Supp. 609 (D. Nev. 1997) . . . . . . . . . . 8

*Rieber v. Kovelman (In re Kovelman),* 1995 U.S. App. LEXIS 8487
(9th Cir. April 6, 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Riveria v. MAB Collections*, 682 F. Supp. 174 (W.D.N.Y. 1988). . . . . . . . . . . . . . . . . . . . . . 6, 9

*Romine v. Diversified Collection Servs.*, 155 F.3d 1142 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . 7

*Russell v. Equifax A.R.S.*, 74 F.3d 30 (2nd Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 8

*Schneider v. TRW, Inc.,* 938 F.3d 986 (9th Cir. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Stockton Wire Products, Inc. v. K-Lath Corp.,* 440 F.2d 782 (9th Cir. 1971). . . . . . . . . . . . . . . . 3

*Stojanovski v. Strobl & Manoogian, P.C.*, 783 F. Supp. 319 (E.D. Mich. 1992) . . . . . . . . . . . . 6

*Swanson v. Southern Oregon Credit Serv.*, 869 F.2d 1222 (9th Cir. 1988) . . . . . . . . . . . . . . . . . 6

*Taylor v. Perrin Landry, deLaunay & Durand*, 103 F.3d 1232 (5th Cir. 1997) . . . . . . . . . . . . 6, 8

*Terran v. Kaplan*, 109 F.3d 1428 (9th Cir. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Tolentino v. Friedman*, 46 F.3d 645 (7th Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Traverso v. Sharinn*, 1989 U.S. Dist. LEXIS 19100 (D. Conn. Sept. 15, 1989) . . . . . . . . . . . . . 8

*Turner v. Cook*, 362 F.3d 1219 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Ass'n,*
809 F.2d 626 (9th Cir. 1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*United States. v. National Financial Services*, 98 F.3d 131 (4th Cir. 1996) . . . . . . . . . . . . . . . . 6

*United States v. Trans Continental Affiliates,*
1997 U.S. Dist. LEXIS 388 (N.D. Cal. January 8, 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Wade v. Regional Credit Ass'n*, 87 F.3d 1098 (9th Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Zagorski v. Midwest Billing Services, Inc.*, 178 F.3d 116 (7th Cir. 1997) . . . . . . . . . . . . . . . . . . 10

## STATUTES

15 U.S.C. § 1692(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 7

15 U.S.C. § 1692d . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

15 U.S.C. § 1692c(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

15 U.S.C. § 1692e . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

15 U.S.C. § 1692f . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

15 U.S.C. § 1692g . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

## RULES

Fed. R. Civ. P. 56(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Fed. R. Civ. P. 56(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

## I.  INTRODUCTION

This case was brought by JO ANNE GRAFF (hereinafter "Plaintiff") against a debt collection law firm, HUNT & HENRIQUES, (hereinafter "H&H") and two of its partner attorneys, MICHAEL SCOTT HUNT, (hereinafter "HUNT") and JANALIE ANN HENRIQUES (hereinafter "HENRIQUES"), (hereinafter collectively referred to as "Defendants").  Plaintiff alleges various violations of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, *et seq.* (hereinafter "FDCPA"), which prohibits debt collectors from engaging in abusive, deceptive and unfair practices. Plaintiff seeks statutory damages, attorney fees and costs under the FDCPA.

This case arises out of communications sent from Defendants to Plaintiff in an attempt to collect a consumer debt.  The debt being collected was used for personal, family or household purposes.  In her complaint, Plaintiff alleges, among other claims, that Defendants continued to communicate directly with Plaintiff in an attempt to collect the debt after they knew that Plaintiff was represented by an attorney with respect to the debt being collected.  Plaintiff hereby moves for partial summary judgment on this claim for violation of 15 U.S.C. § 1692c(a)(2).

## II.  PROCEDURAL HISTORY

On February 12, 2008, Plaintiff filed a Complaint in this action against Defendants.[1] Thereafter, Defendants filed their Answer on April 5, 2008.[2]  On June 5, 2008, Plaintiff's Motion for Partial Summary Judgment was filed herein.  This Memorandum of Points and Authorities is submitted in support thereof.

## III.  FACTS OF THE CASE

Plaintiff, JO ANNE GRAFF, is a "consumer" within the meaning of 15 U.S.C. § 1692a(3).[3] Defendant, HUNT & HENRIQUES, is a general partnership engaged in the business of collecting

---

[1]  Doc. 1.

[2]  Doc. 4.

[3]  Complaint (Doc. 1) ¶¶ 7 and 47; Declaration of Jo Anne Graff in Support of Motion for Summary Judgment (hereinafter "Graff Declaration") ¶¶ 3 and 4.

---

1  consumer debts.[4]

2        On a date or dates unknown to Plaintiff, Plaintiff incurred a financial obligation for personal,

3  family or household purposes, namely a consumer credit card account issued by CitiBank (South

4  Dakota), N.A., which is therefore a "debt" as that term is defined by 15 U.S.C. § 1692a(5).[5]

5  Sometime thereafter, the debt was sold, assigned or otherwise transferred to Defendants for

6  collection from Plaintiff.[6]

7        Thereafter, Defendants sent a collection letter to Plaintiff which was dated February 12,

8  2007.[7] This was Defendants' first written notice initially addressed to Plaintiff in connection with

9  collecting the debt owed to CitiBank (South Dakota), N.A.[8]

10        On or about February 19, 2007, Plaintiff's counsel, Fred W. Schwinn of the Consumer Law

11  Center, Inc., sent a letter to Defendants via facsimile which stated in relevant part:

12       Please be advised that the consumer debtor in the matter referenced above has
13  retained the services of the Consumer Law Cente,r Inc., to assist in the matter of debt
relief. The purpose of this letter is two-fold. First, I wish to provide you with
14  written notice in your capacity as a creditor, collection agent, or collection attorney
that this consumer debtor, now our client, is in fact and in law **REPRESENTED BY
AN ATTORNEY.** As a result of this notice, and pursuant to Section 1692(b)(6) of
15  Title 15 of the United State Code and Section 1788.14(c) of the California Civil
Code, you are to immediately terminate any further direct or indirect contacts with
16  our client. Please note that such prohibited contacts include, but are not limited to,
all forms of communication by letter, phone, fax, email or any other means. This
17  also includes any contact directly or indirectly with any employer, family member,
friend, or other creditor of our client.[9]

18

19        Thereafter on March 26, 2007, Defendant, HUNT, sent a collection letter to Fred W.

20  _____

21  [4] <u>Complaint</u> (Doc. 1) ¶¶ 8 and 48; <u>Answer</u> (Doc. 4) ¶¶ 8 and 48.

22  [5] <u>Graff Declaration</u> ¶ 4.

23  [6] <u>Complaint</u> (Doc. 1) ¶ 13; <u>Answer</u> (Doc. 4) ¶ 13; <u>Graff Declaration</u> ¶ 5.

24  [7] <u>Complaint</u> (Doc. 1) ¶ 14; <u>Answer</u> (Doc. 4) ¶ 14; <u>Graff Declaration</u> ¶ 6.

25

26  [8] <u>Complaint</u> (Doc. 1) ¶ 16; <u>Answer</u> (Doc. 4) ¶ 16; <u>Graff Declaration</u> ¶ 7.

27  [9] <u>Complaint</u> (Doc. 1) ¶ 24; <u>Answer</u> (Doc. 4) ¶ 24; <u>Graff Declaration</u> ¶¶ 8, 9 and 10;
<u>Declaration of Fred W. Schwinn in Support of Motion for Summary Judgment</u> (hereinafter
28  "<u>Schwinn Declaration</u>") ¶ 3.

_____

1  Schwinn which acknowledged Plaintiff's Counsel's representation of Plaintiff with regard to the

2  debt owed to CitiBank (South Dakota), N.A.[10]    However, despite the fact that Defendants

3  acknowledged Plaintiff's counsel, they continued to communicate directly with Plaintiff in an

4  attempt to collect the debt.  On or about July 13, 2007, Defendants sent a collection letter directly

5  to Plaintiff in an attempt to collect the debt owed to CitiBank (South Dakota), N.A.[11]

6                            **IV.  STANDARD OF REVIEW**

7          The standard of review for a motion for summary judgment is that the moving party is

8  entitled to summary judgment when the evidence shows that there is no genuine issue of material

9  fact, and that the moving party is entitled to judgment as a matter of law.[12]   The Court must

10  determine "whether there is the need for a trial–whether, in other words, there are any genuine

11  factual issues that properly can be resolved only by a finder of fact because they may reasonably be

12  resolved in favor of either party."[13]  "Only disputes over facts that might affect the outcome of the

13  suit under governing law will . . . preclude summary judgment."[14]  When the record taken as a whole

14  would not persuade a rational trier of fact to find for the nonmoving party, there is no genuine issue

15  for trial.[15]   In some cases, the evidence of the opposing party is so weak as to "fail[] to raise a

16  material issue of fact.[16]

17

18          [10] Complaint (Doc. 1) ¶¶ 28, 30 and 31; Answer (Doc. 4) ¶¶ 28, 30 and 31; Graff Declaration

19  ¶¶ 12 and 13; Schwinn Declaration ¶ 4.

20          [11] Complaint (Doc. 1) ¶¶ 36 and 40; Answer (Doc. 4) ¶¶ 36 and 40; Graff Declaration ¶¶ 14

21  and 15..

22          [12] Fed. R. Civ. P. 56(c); *Stockton Wire Products, Inc. v. K-Lath Corp.,* 440 F.2d 782 (9th Cir.

      1971).

23
          [13] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2510, 91 L. Ed. 2d

24  202, 212 (1986).

25          [14] *Id*. at 248.

26          [15] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348,

27  1356, 89 L. Ed. 2d 538 (1986).

28          [16] *EEOC v. Farmer Bros. Co.,* 31 F.3d 891, 906 (9th Cir. 1994).

The movant must carry this burden of "identifying those parts of the record that indicate the absence of a genuine issue of material fact."[17]  Once this burden is met, the non-movant is required to "come forward with specific facts showing that there is a genuine issue for trial" as to elements essential to the non-movant's claim.[18]  The non-movant must show more than "some metaphysical doubt as to the material facts;"[19] he or she must "set forth specific facts showing that there is a genuine issue for trial."[20]

The Court must resolve all disputed facts and weigh all evidence "in the light most favorable to the nonmoving party."[21]  However, the nonmoving party may not rely upon mere allegations or denials contained in its pleadings or briefs, but must come forward with specific facts showing the presence of a genuine issue for trial.[22]  As noted above, the requirement that a "genuine" issue of fact must be present has been interpreted to mean that the evidence is such that a reasonable trier of fact could return a verdict for the nonmoving party.[23]  Summary judgment is more than a "disfavored procedural shortcut," it is an important procedure "designed to 'secure the just, speedy and inexpensive determination of every action.' Fed. R. Civ. P. 1."[24]  One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and the rule should be interpreted in a way that allows it to accomplish this purpose.[25]

---

[17]  *Brinson v. Linda Rose Joint Venture*, 53 F.3d 1044, 1048 (9th Cir. 1995).

[18]  *Schneider v. TRW, Inc.,* 938 F.3d 986, 991 (9th Cir. 1990).

[19]  *Matsushita Elec. Indus. Co.,* 475 U.S. at 586

[20]  Fed. R. Civ. P. 56(e).

[21]  *T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Ass'n,* 809 F.2d 626, 630-31 (9th Cir. 1987).

[22]  *Rieber v. Kovelman (In re Kovelman),* 1995 U.S. App. LEXIS 8487 at *2 (9th Cir. April 6, 1995).

[23]  *Anderson*, 477 U.S. at 248

[24]  *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

[25]  *Id.*, at 323-324.

---

MEMORANDUM OF POINTS AND AUTHORITIES   -4-                    Case No.  C08-00908-JF-PVT

**V. SUMMARY OF ARGUMENT**

A.      The "Least Sophisticated Consumer" Standard Is Used to Analyze Violations of the FDCPA.

B.      Under the Strict Liability Standard of the FDCPA, Plaintiff Has Pled Numerous Violations of the Act, as Seen from the Perspective of the "Least Sophisticated Consumer."

C.      Defendant, H&H, Continued to Communicate Directly with Plaintiff in an Attempt to Collect the Debt Despite Knowing That Plaintiff Was Represented by an Attorney, in Violation of 15 U.S.C. § 1692c(a)(2).

D.      This Court Should Award Plaintiff the Maximum Statutory Damage Amount of $1,000 Under the FDCPA.

E.      Plaintiff Has a Statutory Right to Attorney's Fees and Costs.

**VI. STATEMENT OF QUESTIONS PRESENTED**

Have Defendants violated the Fair Debt Collection Practices Act?  If so, what is the amount of statutory damages that should be awarded to Plaintiff?

**VII. ARGUMENT**

**A.      THE "LEAST SOPHISTICATED CONSUMER" STANDARD IS USED TO ANALYZE VIOLATIONS OF THE FDCPA**

The FDCPA states that its purpose, in part, is "to eliminate abusive debt collection practices by debt collectors."[26]  The statute is designed to protect consumers from unscrupulous collectors, whether or not there is a valid debt.[27]  The FDCPA broadly prohibits unfair or unconscionable collection methods; conduct which harasses, oppresses or abuses any debtor; and any false, deceptive or misleading statements, in connection with the collection of a debt.[28]  The FDCPA also requires the debt collector to provide the consumer with a notice of his or her validation rights.[29]

---

[26] 15 U.S.C. § 1692(e).

[27] *Baker v. G.C. Services*, 677 F.2d 775, 777 (9th Cir. 1982).

[28] 15 U.S.C. §§ 1692d, 1692e, and 1692f.

[29] 15 U.S.C. § 1692g.

---

MEMORANDUM OF POINTS AND AUTHORITIES   -5-                    Case No.  C08-00908-JF-PVT

The United States Court of Appeals for the Ninth Circuit has held that whether a communication or other conduct violates the FDCPA is to be determined by analyzing it from the perspective of the "least sophisticated consumer."[30]  The "least sophisticated consumer" standard is objective—not subjective.[31]  Courts determine whether the "least sophisticated consumer" would be misled or deceived by the statements made in a collection letter as a matter of law.[32]

"The basic purpose of the least sophisticated consumer standard is to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd."[33]  "While protecting naive consumers, the standard also prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness and presuming a basic level of understanding and willingness to read with care."[34]

"As the FDCPA is a strict liability statute, proof of one violation is sufficient to support summary judgment for the plaintiff."[35]  "Because the Act imposes strict liability, a consumer need not show intentional conduct by the debt collector to be entitled to damages."[36]  Furthermore, the

---

[30]  *Swanson v. Southern Oregon Credit Serv.*, 869 F.2d 1222, 1225 (9th Cir. 1988);  *Wade v. Regional Credit Ass'n*, 87 F.3d 1098, 1100 (9th Cir. 1996).

[31]  *Swanson*, 869 F.2d at 1227.

[32]  *Wade*, 87 F.3d at 1100;  *Terran v. Kaplan*, 109 F.3d 1428, 1432 (9th Cir. 1977);  *Swanson*, 896 F.2d at 1225-26.

[33]  *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2nd Cir. 1993).

[34]  *United States v. National Financial Services*, 98 F.3d 131, 136 (4th Cir. 1996) (citations omitted);  *see also Russell v. Equifax A.R.S.*, 74 F.3d 30 (2nd Cir. 1996);  *Bentley v. Great Lakes Collection Bureau*, 6 F.3d 60 (2nd Cir. 1993);  *Jeter v. Credit Bureau*, 760 F.2d 1168 (11th Cir. 1985);  *Graziano v. Harrison*, 950 F.2d 107, 111 (3rd Cir. 1991);  *Avila v. Rubin*, 84 F.3d 222, 226-27 (7th Cir. 1996) ("the standard is low, close to the bottom of the sophistication meter").

[35]  *Cacace v. Lucas*, 775 F. Supp. 502, 505 (D. Conn. 1990);  *see also Stojanovski v. Strobl & Manoogian, P.C.*, 783 F. Supp. 319, 323 (E.D. Mich. 1992);  *Riveria v. MAB Collections*, 682 F. Supp. 174, 178-9 (W.D.N.Y. 1988).

[36]  *Russell v. Equifax A.R.S.,* 74 F.3d 30, 33 (2nd Cir. 1996);  *see also Taylor v. Perrin Landry, deLaunay & Durand*, 103 F.3d 1232, 1236 (5th Cir. 1997);  *Bentley*, 6 F.3d at 62;  *Clomon*, 988 F.2d at 1318.

---

1   question of whether the consumer owes the alleged debt has no bearing on a suit brought pursuant

2   to the FDCPA.[37]

3       It is important to note that by protecting consumers from abusive, deceptive and unfair

4   collection practices, the FDCPA insures that those debt collectors who refrain from using abusive

5   debt collection practices are not competitively disadvantaged.[38]  Moreover, the FDCPA further

6   insures that regardless of whether a consumer owes a debt, he or she will be treated in a reasonable

7   and civil manner.[39]

8       Accordingly, Plaintiff asserts that whether or not Defendants violated the FDCPA must be

9   evaluated from the standpoint of the "least sophisticated consumer."

10  **B.    UNDER THE STRICT LIABILITY STANDARD OF THE FDCPA, PLAINTIFF HAS
        PLED NUMEROUS VIOLATIONS OF THE ACT, AS SEEN FROM THE
11      PERSPECTIVE OF THE "LEAST SOPHISTICATED CONSUMER"**

12      To establish a violation of the FDCPA, one need only show that: (1) Plaintiff is a consumer,

13  (2) Plaintiff has been the object of collection activity arising from a consumer debt, (3) Defendant

14  collecting the "debt" is a "debt collector" as defined in the FDCPA, and (4) Defendant has engaged

15  in any act or omission in violation of the prohibitions or requirements of the FDCPA.[40]  Plaintiff has

16  pleaded and Defendants have admitted that Defendant, H&H,  is a debt collector.  Further, Plaintiff

17  is able to show that she is a consumer and the debt which Defendants were attempting to collect is

18  a consumer debt.  The remainder of this memorandum will show that the last element is also

19  satisfied as a matter of law.

20      Because the FDCPA is a strict liability statute, proof of one violation is sufficient to defeat

21

22

23  [37]  *McCartney v. First City Bank*, 970 F.2d 45 (5th Cir. 1992);  *Baker*, 677 F.2d at 777.

24  [38]  15 U.S.C. § 1692(e).

25  [39]  *Baker*, 677 F.2d at 777.

26  [40]   *Turner v. Cook*, 362 F.3d 1219, 1227-1228 (9th Cir. 2004);  *Romine v. Diversified
    Collection Servs.*, 155 F.3d 1142, 1145 (9th Cir. 1998);  *De Coito v. Unifund Corp.*, 2004 U.S. Dist.
27  LEXIS 23729 at *8 (D. Haw. January 4, 2004);  *United States v. Trans Continental Affiliates*, 1997
    U.S. Dist. LEXIS 388 at *8 (N.D. Cal. January 8, 1997).
28

---

1   a motion to dismiss and support summary judgment for a Plaintiff.[41]  In light of this strict liability

2   standard, a consumer need not show intentional conduct by the debt collector in order to be entitled

3   to damages,[42] and there are no unimportant violations.[43]  Further, no proof of deception or actual

4   damages is required to obtain statutory remedies.[44]

5       **1.    DEFENDANT, H&H, CONTINUED TO COMMUNICATE DIRECTLY
             WITH PLAINTIFF IN AN ATTEMPT TO COLLECT THE DEBT
6            DESPITE KNOWING THAT PLAINTIFF WAS REPRESENTED BY
             AN ATTORNEY, IN VIOLATION OF 15 U.S.C. § 1692c(a)(2).**
7
        15 U.S.C. § 1692c(a)(2) provides:
8
        (a)  Without the prior consent of the consumer given directly to the debt collector or
9       the express permission of a court of competent jurisdiction, a debt collector may not
        communicate with a consumer in connection with the collection of any debt--
10                                              . . .
        (2)  if the debt collector knows the consumer is represented by an attorney with
11      respect to such debt and has knowledge of, or can readily ascertain, such attorney's
        name and address, unless the attorney fails to respond within a reasonable period of
12      time to a communication from the debt collector or unless the attorney consents to
        direct communication with the consumer . . .
13

14      As described above, Defendant, H&H, communicated directly with Plaintiff by sending her

15  a collection dunning letter after acknowledging that Plaintiff was represented by an attorney with

16  respect to the debt being collected.  H&H had "knowledge of" and was able to "readily ascertain"

17  Plaintiff's counsel's address, as evidenced by the communication sent to Plaintiff's counsel by

18  Defendants on March 26, 2007.  Further, Plaintiff's counsel did not fail to respond to any

19

20  _____

21  [41] *See Hartman v. Meridian Financial Services, Inc.*, 191 F. Supp. 2d 1031, 1046-47 (W.D.
    Wis. 2002) ("One false or misleading statement in a collection letter renders the entire
22  communication false or misleading and constitutes one violation"); *See also Cacace*, 775 F. Supp.
    at 505; *Traverso v. Sharinn*, 1989 U.S. Dist. LEXIS 19100, *4 (D. Conn. Sept. 15, 1989); *Picht v.
23  Jon R. Hawks, Ltd.*, 236 F.3d 446, 451 (8th Cir. 2001);  *Bentley*, 6 F.3d at 62.

24  [42] *See Pittman v. J.J. Mac Inttyre Co. of Nevada, Inc.*, 969 F. Supp. 609, 613 (D. Nev. 1997).
    *See also Russell*, 74 F.3d at 36 ("Because the Act imposes strict liability, a consumer need not show
25  intentional conduct by the debt collector to be entitled to damages.").

26  [43] *Bentley*, 6 F.3d at 63 (no non-actionable violations of FDCPA); *Taylor*, 103 F.3d at 1234
    (failure "to comply with any provision of the FDCPA" leads to liability).
27
28  [44] *Baker*, 677 F.2d at 780.

_____

communication from H&H and Plaintiff's counsel did not consent to Defendants' direct communication with Plaintiff.[45]  Therefore, Defendant, H&H, has violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692c(a)(2).[46]  As such, Plaintiff is entitled to summary judgment on this issue.

## C.   THIS COURT SHOULD AWARD PLAINTIFF THE MAXIMUM STATUTORY DAMAGE AMOUNT OF $1,000 UNDER THE FDCPA

The maximum statutory damage award available under the Federal FDCPA is a modest $1,000.  Courts have therefore awarded the maximum amount even when the violations found were less numerous and egregious than those herein.  For example, in *Riviera v. M.A.B.*,[47] the court awarded the maximum $1,000 because the validation notice appeared on the back of the letter, in relatively small print, with no reference to it on the front of the letter.  Thus, even though the notice was accurate, the court determined a $1,000 award was appropriate.  Furthermore, in *Tolentino v. Friedman*,[48] the Seventh Circuit upheld the maximum statutory award of $1,000 despite finding that only one provision of the FDCPA had been proven.  In that case the debt collector had included a disclosure required 15 U.S.C. § 1692e(11) in its initial notice, but had failed to include it in a subsequent notice.  The present case involves a more egregious violation of the FDCPA than either of these cases, as it involves direct attorney contact with a consumer known to be represented by counsel.  Thus, the violation herein is more meaningful than in those cases, and therefore the Court should award the maximum amount of statutory damages under 15 U.S.C. § 1692k(a)(2)(A), which is $1,000.

---

[45]  Schwinn Declaration ¶¶ 5, 6 and 7.

[46]  *Herbert v. Monterey Financial Services*, 863 F. Supp. 76, 79 (D. Conn. 1994) (Debt collector defendant violated 15 U.S.C. 1692c(a)(2) by sending a collection letter to the consumer-plaintiff 5 days after receiving learning the consumer was represented by an attorney.);  *Goins v. JBC & Associates, P.C.*, 352 F. Supp. 2d 262 (D. Conn. 2005) (Debt collector defendant violated 15 U.S.C. § 1692c(a)(2) by contacting consumer plaintiff regarding a debt despite having knowledge that plaintiff was represented with regard to the debt).

[47]  682 F. Supp. 174 (W.D.N.Y. 1988).

[48]  46 F.3d 645 (7th Cir. 1995).

---

MEMORANDUM OF POINTS AND AUTHORITIES  -9-                    Case No.  C08-00908-JF-PVT

**D.     PLAINTIFF HAS A STATUTORY RIGHT TO ATTORNEY'S FEES AND COSTS.**

The federal FDCPA directs the Court to award attorney's fees to a prevailing consumer. 15 U.S.C. § 1692k(a)(3).  A number of cases decided under 15 U.S.C. § 1692k have held that an award of attorney's fees and costs is required if the plaintiff prevails.[49]  The Court should award the Plaintiff her reasonable attorney's fees and costs incurred in this matter.

## VIII.  CONCLUSION

For the reasons set forth above, Plaintiff, as a matter of law, is entitled to partial summary judgment: 1) declaring that Defendant H&H's collection activities violated the Fair Debt Collection Practices Act,  15 U.S.C. § 1692c(a)(2);  2) awarding Plaintiff statutory damages in an amount not exceeding $1,000 pursuant to 15 U.S.C. § 1692k(a)(2)(A); 3) awarding Plaintiff the costs of this action and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3); and 4) awarding Plaintiff such other and further relief as may be just and proper.

This Motion for Partial Summary Judgment only addresses Plaintiff's claim for violation of 15 U.S.C. § 1692c(a)(2).  Plaintiff hereby reserves all other claims made in this case.

CONSUMER LAW CENTER, INC.


By: /s/ Fred W. Schwinn
     Fred W. Schwinn, Esq.
     Attorney for Plaintiff
     JO ANNE GRAFF

---

[49] *See, e.g. Zagorski v. Midwest Billing Services, Inc.*, 178 F.3d 116 (7th Cir. 1997) (holding it was an abuse of discretion not to award attorney's fees following a stipulated judgment in the amount of $100; and directing the court to award fees sufficient to compensate the attorney for the time spent on the case in order to encourage enforcement of the FDCPA); *Pipiles v. Credit Bureau*, Inc., 886 F.2d 22 (2d Cir. 1989) (directing trial court to award fees on remand despite the lack of actual or statutory damages because Plaintiff had demonstrated that Defendant violated the FDCPA); *Perez v. Perkiss*, 742 F. Supp. 883 (D. Del. 1990) (awarding Plaintiffs' legal services attorneys $10,110 after a half-day jury trial in which Plaintiff was awarded $1,200 in damages).

1   Fred W. Schwinn (SBN 225575)
    CONSUMER LAW CENTER, INC.
2   12 South First Street, Suite 1014
    San Jose, California  95113-2418
3   Telephone Number: (408) 294-6100
    Facsimile Number: (408) 294-6190
4   Email Address: fred.schwinn@sjconsumerlaw.com

5   Attorney for Plaintiff
    SUSAN RAE OWENS
6

7

8                    IN THE UNITED STATES DISTRICT COURT
                 FOR THE NORTHERN DISTRICT OF CALIFORNIA
9                           SAN JOSE DIVISION

10  SUSAN RAE OWENS,                      Case No.  07-04400-JF-PVT

11                      Plaintiff,        MEMORANDUM OF POINTS AND
                                          AUTHORITIES IN SUPPORT OF
12  v.                                    MOTION FOR SUMMARY
                                          JUDGMENT, OR IN THE
13  ERICA L. BRACHFELD, A                 ALTERNATIVE, PARTIAL
    PROFESSIONAL CORPORATION, D/B/A       SUMMARY ADJUDICATION
14  BRACHFELD & ASSOCIATES, P.C., D/B/A
    LAW OFFICES OF BRACHFELD &            [Fed. R. Civ. P. 56 ]
15  ASSOCIATES, P.C., a California corporation,
    and ERICA LYNN BRACHFELD,             Date:      February 1, 2008
16  individually and in her official capacity,   Time:      9:00 a.m.
                                          Judge:     Honorable Jeremy Fogel
17                      Defendants.       Courtroom: 3, 5th Floor
                                          Place:     280 South First Street
18                                                   San Jose, California

19

20         COMES NOW the Plaintiff, SUSAN RAE OWENS (hereinafter "Plaintiff"), by and through

21  her attorney Fred W. Schwinn of the Consumer Law Center, Inc., and pursuant to Fed. R. Civ. P.

22  56 and Civil L.R. 56-1, hereby submits her Memorandum of Points and Authorities in Support of

23  Motion for Summary Judgment filed herein.

24

25

26

27

28

MEMORANDUM OF POINTS AND AUTHORITIES                    Case No.  07-04400-JF-PVT

# TABLE OF CONTENTS

Table of Contents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

I.   INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.  PROCEDURAL HISTORY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

III. FACTS OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

IV.  STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

V.   ARGUMENTS AND AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

A.   THE "LEAST SOPHISTICATED CONSUMER" STANDARD IS USED TO ANALYZE VIOLATIONS OF THE FDCPA . . . . . . . . . . . . . . . . . . . . . . 4

B.   UNDER THE STRICT LIABILITY STANDARD OF THE FDCPA, DEFENDANTS HAVE COMMITTED NUMEROUS VIOLATIONS OF THE ACT, AS SEEN FROM THE PERSPECTIVE OF THE "LEAST SOPHISTICATED CONSUMER." . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

C.   PLAINTIFF IS A "CONSUMER" AS THAT TERM IS DEFINED BY 15 U.S.C. § 1692a(3); DEFENDANTS ARE EACH A "DEBT COLLECTOR" AS THAT TERM IS DEFINED BY 15 U.S.C. §1692a(6); THE DEBT BEING COLLECTED BY DEFENDANTS WAS A "DEBT" AS THAT TERM IS DEFINED BY 15 U.S.C. § 1692a(5) AND A "CONSUMER DEBT" AS THAT TERM IS DEFINED BY CAL. CIVIL CODE § 1788.2(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

D.   DEFENDANTS HAVE VIOLATED NUMEROUS PROVISIONS OF THE FDCPA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

1.   DEFENDANTS VIOLATED THE FDCPA BY SENDING A COLLECTION LETTER IN AN ENVELOPE WHICH DISPLAYED PLAINTIFF'S PERSONAL FINANCIAL INFORMATION . . . . . . . . . 8

2.   DEFENDANTS USED FALSE BUSINESS NAMES INSTEAD OF THEIR TRUE BUSINESS NAME WHILE ATTEMPTING TO COLLECT A CONSUMER DEBT FROM PLAINTIFF. . . . . . . . . . . . . . 9

E.   B&A HAS VIOLATED THE RFDCPA. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

1.   B&A IS A "DEBT COLLECTOR" WITHIN THE MEANING OF CALIFORNIA CIVIL CODE § 1788.2(c) . . . . . . . . . . . . . . . . . . . . . . . 11

2.   B&A HAS VIOLATED CAL. CIVIL CODE § 1788.17 . . . . . . . . . . . 12

3.   B&A HAS VIOLATED CAL. CIVIL CODE §§ 1788.12(c), 1788.12(d) AND 1788.13(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

F.   THIS COURT SHOULD AWARD PLAINTIFF THE MAXIMUM STATUTORY DAMAGE AMOUNT OF $1,000 UNDER THE FDCPA . . . . . 12

1

G.   PLAINTIFF SHOULD BE AWARDED $1,000 UNDER CAL. CIVIL
     CODE § 1788.30(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

2

3

H.   PLAINTIFF SHOULD BE AWARDED $1,000 UNDER CAL. CIVIL
     CODE § 1788.17 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

4

I.   BOTH CONGRESS AND THE CALIFORNIA LEGISLATURE HAVE
     EXPRESSED THEIR INTENT THAT THE REMEDIES FOR
     VIOLATIONS OF THE FDCPA AND RFDCPA BE CUMULATIVE . . . . . . . 14

5

6

J.   PLAINTIFF HAS A STATUTORY RIGHT TO ATTORNEY'S FEES AND
     COSTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

7

VI.   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**<u>TABLE OF AUTHORITIES</u>**

2

**<u>CASES</u>**

3    *Ables v. JBC Legal Group, P.C.*, 227 F.R.D. 541 (N.D. Cal. 2005) . . . . . . . . . . . . . . . . . . . . . . 11

4    *Adams v. CIR Law Offices, LLP*, 2007 U.S. Dist. LEXIS 63808
     (S.D. Cal. August 29, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

5

6    *Alkan v. Citimortgage, Inc.*, 336 F. Supp. 2d 1061 (N.D. Cal. 2004) . . . . . . . . . . . . . . . . . . . . 14

     *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
7

8    *Avila v. Rubin*, 84 F.3d 222 (7th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

9    *Baker v. G.C. Services*, 677 F.2d 775 (9th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 6

10   *Bentley v. Great Lakes Collection Bureau*, 6 F.3d 60 (2nd Cir. 1993) . . . . . . . . . . . . . . . . . . . 5, 8

11   *Brinson v. Linda Rose Joint Venture*, 53 F.3d 1044 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . 4

12   *Cacace v. Lucas*, 775 F. Supp. 502 (D. Conn. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 7

13   *Chapman v. ACB Business Services*, Inc., 1997 U.S. Dist. LEXIS 23743
     (S.D. W.V. February 13, 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

14   *Clomon v. Jackson*, 988 F.2d 1314 (2nd Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

15   *De Coito v. Unifund Corp.*, 2004 U.S. Dist. LEXIS 23729
     (D. HI January 4, 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
16

17   *Edstrom v. A.S.A.P. Collection Services*, 2005 U.S. Dist. LEXIS 2773
     (N.D. Cal. February 22, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

18   *EEOC v. Farmer Bros. Co.*, 31 F.3d 891 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

19   *Graziano v. Harrison*, 950 F.2d 107 (3rd Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

20   *Hartman v. Meridian Financial Services, Inc.*, 191 F. Supp. 2d 1031
     (W.D. Wis. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
21

22   *Hodges v. Armada (In re Hodges)*, 342 B.R. 616 (E.D. Bankr. Wash. 2006) . . . . . . . . . . . . . . 8

     *Jeter v. Credit Bureau*, 760 F.2d 1168 (11th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
23

24   *Lutge v. Eskanos & Adler, P.C.*, 2007 U.S. Dist. LEXIS 40570
     (N.D. Cal. May 23, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

25   *Mann v. Acclaim*, 348 F. Supp. 2d 923 (S.D. Ohio 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

26   *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) . . . . . . . . . . . . . . . 3, 4

27   *McCartney v. First City Bank*, 970 F.2d 45 (5th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

28

*Navarro v. Eskanos & Adler*, 2007 U.S. Dist. LEXIS 15046
(N.D. Cal. February 20, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Picht v. Jon R. Hawks, Ltd.*, 236 F.3d 446 (8th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

*Pipiles v. Credit Bureau*, Inc., 886 F.2d 22 (2nd Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Pittman v. J.J. Mac Intyre Co. of Nevada, Inc.*, 969 F. Supp. 609 (D. Nev. 1997) . . . . . . . . . . . 8

*Perez v. Perkiss*, 742 F.Supp. 883 (D. Del. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Riveria v. MAB Collections*, 682 F. Supp. 174 (W.D.N.Y. 1988) . . . . . . . . . . . . . . . . . . . . 5, 13

*Romine v. Diversified Collection Servs.*, 155 F.3d 1142 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . 6

*Russell v. Equifax A.R.S.*, 74 F.3d 30 (2nd Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 8

*Saucier v. Katz,* 533 U.S. 194 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Sakuma v. First National Credit Bureau*, 1989 U.S. Dist. LEXIS 19120
(D. HI. November 15, 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Schneider v. TRW, Inc.,* 938 F.3d 986 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Shulick v. Credit Bureau Collection Services*, 2004 U.S. Dist. LEXIS 1552
(E.D. Pa. February 3, 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Stockton Wire Products, Inc. v. K-Lath Corp.*, 440 F.2d 782 (9th Cir. 1971) . . . . . . . . . . . . . . 3

*Stojanovski v. Strobl & Manoogian, P.C.*, 783 F. Supp. 319 (E.D. Mich. 1992) . . . . . . . . . . . . 5

*Swanson v. Southern Oregon Credit Serv.*, 869 F.2d 1222 (9th Cir. 1988) . . . . . . . . . . . . . . . . 5

*T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Ass'n*
809 F.2d 626 (9th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Taylor v. Perrin Landry, deLaunay & Durand*, 103 F.3d 1232 (5th Cir. 1997) . . . . . . . . . . . 5, 8

*Terran v. Kaplan*, 109 F.3d 1428 (9th Cir. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Tolentino v. Friedman*, 46 F.3d 645 (7th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Traverso v. Sharinn*, 1989 U.S. Dist. LEXIS 19100 (D. Conn. Sept. 15, 1989) . . . . . . . . . . . . 7

*Turner v. Cook*, 362 F.3d 1219 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*United States v. National Financial Services*, 98 F.3d 131 (4th Cir. 1996) . . . . . . . . . . . . . . . . 5

*United States v. Trans Continental Affiliates*, 1997 U.S. Dist. LEXIS 388
(N.D. Cal. January 8, 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Zagorski v. Midwest Billing Services, Inc.*, 178 F.3d 116 (7th Cir. 1997) . . . . . . . . . . . . . . . . 15

1

**STATUTES**

2   15 U.S.C. § 1692(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 6

3   15 U.S.C. § 1692c(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

4   15 U.S.C. § 1692d . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 9

5   15 U.S.C. § 1692d(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

6   15 U.S.C. § 1692e . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

7   15 U.S.C. § 1692e(14) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

8   15 U.S.C. § 1692f . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 9

9   15 U.S.C. § 1692k(a)(2)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

10   15 U.S.C. § 1692k(a)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

11   15 U.S.C. § 1692n . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

12   Cal. Civil Code § 1788.12(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

13   Cal. Civil Code § 1788.13(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

14   Cal. Civil Code § 1788.17 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

15   Cal. Civil Code § 1788.2(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

16   Cal. Civil Code § 1788.30(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

17   Cal. Civil Code § 1788.32 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

18   Cal. Civil Code § 1788.30(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

19
**RULES**

20   Fed. R. Civ. P. 56(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

21   Fed. R. Civ. P. 56(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

22

23

24

25

26

27

28

1

## I.  INTRODUCTION

2      This case was brought by Plaintiff, Susan Rae Owens (hereinafter "Owens"), against

3   Defendant, Erica L. Brachfeld, A Professional Corporation, (hereinafter "B&A), and Defendant,

4   Erica Lynn Brachfeld (hereinafter "Brachfeld"), for various violations of the federal Fair Debt

5   Collection Practices Act, 15 U.S.C. § 1692, *et seq.* (hereinafter "FDCPA"), and the California

6   Rosenthal Fair Debt Collection Practices Act, California Civil Code § 1788 et seq. (hereinafter

7   "RFDCPA"), which prohibit debt collectors from engaging in abusive, deceptive and unfair

8   collection practices.  Generally, Plaintiff is alleged to have owed a consumer debt which was

9   consigned, placed or otherwise transferred to Defendants for collection from Plaintiff.  The debt

10  being collected stemmed from a consumer credit card account financed by Capital One Bank, which

11  was later sold, assigned or otherwise transferred to NCO Financial Systems, Inc.  Plaintiff contends

12  that the collection letter sent by Defendants was sent in an envelope which contained a window

13  through which information printed on the collection letter could be seen by anyone who handled the

14  collection letter.  Further, the collection letter and the envelope it was mailed in failed to state the

15  true legal name of Defendants' business entity, instead using false business names which are not

16  registered as California corporations or otherwise entitled to do business in the state of California.

17

## II.  PROCEDURAL HISTORY

18      On August 27, 2007, Owens filed a Complaint in this Fair Debt Collection Practices Act suit

19  against the Defendants.[1]  Defendants filed an Answer containing <u>only</u> a general denial and state law

20  affirmative defenses on September 21, 2007.[2]  On September 22, 2007, Plaintiff's counsel sent

21  Defendants' counsel a letter outlining the deficiencies in the filed Answer and suggesting that

22  Defendants avail themselves of the limited opportunity to file an Amended Answer provided by Fed.

23  R. Civ. P. 15(a).[3]

24

25      [1]  Doc. 1.

26      [2]  Doc. 5.

27

28      [3] <u>Declaration of Fred W. Schwinn in Support of Motion for Summary Judgment</u> (hereinafter "<u>Schwinn Declaration</u>") ¶3.

MEMORANDUM OF POINTS AND AUTHORITIES  -1-              Case No.  07-04400-JF-PVT

1    On December 28, 2007, Plaintiff's Motion for Summary Judgment was filed herein.

2                              **III.  FACTS OF THE CASE**

3    Plaintiff is a "consumer" within the meaning of 15 U.S.C. § 1692(a)(3) and a "debtor" within

4    the meaning of Cal. Civil Code § 1788.2(h).[4]  Plaintiff resides in Santa Clara County.[5]

5    On a date or dates unknown to Plaintiff, Plaintiff incurred a financial obligation, namely a

6    credit card account issued by Capital One Bank (hereinafter "the debt").[6]  The debt was incurred

7    primarily for personal, family or household purposes and is therefore a "debt" as that term is defined

8    by 15 U.S.C. § 1692a(5), and a "consumer debt" as that term is defined by Cal. Civil Code §

9    1788.2(f).[7]  The debt was sold, assigned or otherwise transferred to NCO Financial Systems, Inc.,

10   and, thereafter, was consigned, placed or otherwise transferred to Defendants for collection from

11   Plaintiff.[8]

12   Defendant, B&A, and Defendant, Brachfeld, are each a "debt collector" as that term is

13   defined by 15 U.S.C. § 1692a(6).[9]  Defendant, B&A, is a "debt collector" as that term is defined by

14   Cal. Civil Code § 1788.2(c).[10]  On or about September 18, 2006, Defendants mailed Plaintiff a

15   collection letter in an attempt to collect the debt.[11]  The collection letter was sent in an envelope

16   which contained a window through which information printed on the collection letter could be seen

17   by anyone who handled the envelope.[12]

18   _____

19   [4]  Complaint (Doc. 1) ¶¶ 6, 26 and 36; Declaration of Susan Rae Owens in Support of Motion
     for Summary Judgment (hereinafter "Owens Declaration") ¶4.

20
21   [5]  Complaint (Doc. 1) ¶6; Owens Declaration ¶3.

22   [6]  Complaint (Doc. 1) ¶10; Owens Declaration ¶4.

23   [7]  Complaint (Doc. 1) ¶¶10, 29 and 38; Owens Declaration ¶4.

24   [8]  Complaint (Doc. 1) ¶¶ 11 and 12; Owens Declaration ¶¶ 5 and 6.

25   [9]  Complaint (Doc. 1) ¶¶ 7 and 8; Schwinn Declaration ¶15, Exhibit "12."

26   [10]  Complaint (Doc. 1) ¶¶ 7 and 37; Schwinn Declaration ¶15, Exhibit "12."

27   [11]  Complaint (Doc. 1) ¶¶ 13, 14 and 15; Owens Declaration ¶¶ 7, 8 and 9; Exhibit "1."

28   [12]  Complaint (Doc. 1) ¶18; Owens Declaration ¶¶ 10 and 11.

1    The collection letter stated that the name of Defendants' business, company or organization

2    as "Law Offices of Brachfeld & Associates, P.C."[13]  However, the "Law Offices of Brachfeld &

3    Associates, P.C." is not a California corporation or a registered foreign corporation and is therefore

4    not authorized to conduct business in the state of California.[14]

5    Moreover, the collection letter and collection envelope stated the name of Defendants'

6    business, company or organization as "Brachfeld & Associates, P.C."[15]  However, "Brachfeld &

7    Associates, P.C." is not a California corporation or a registered foreign corporation and is therefore

8    not authorized to conduct business in the state of California.[16]

9    ## IV.  STANDARD OF REVIEW

10    The standard of review for a motion for summary judgment is that the moving party is

11    entitled to summary judgment when the evidence shows that there is no genuine issue of material

12    fact, and that the moving party is entitled to judgment as a matter of law.[17]  The Court must

13    determine "whether there is the need for a trial—whether, in other words, there are any genuine

14    factual issues that properly can be resolved only by a finder of fact because they may reasonably be

15    resolved in favor of either party."[18]  "Only disputes over facts that might affect the outcome of the

16    suit under governing law will . . . preclude summary judgment." *Id*. at 248.  When the record taken

17    as a whole would not persuade a rational trier of fact to find for the nonmoving party, there is no

18    genuine issue for trial.[19]  In some cases, the evidence of the opposing party is so weak as to "fail[]

19    _____

20    [13]  <u>Complaint</u> (Doc. 1) ¶20; <u>Owens Declaration</u> ¶12; Exhibit "1."

21    [14]  <u>Complaint</u> (Doc. 1) ¶21; <u>Schwinn Declaration</u> ¶¶ 7, 8, 9 and 13; Exhibit "10."

22    [15]  <u>Complaint</u> (Doc. 1) ¶ 22; <u>Owens Declaration</u> ¶13; Exhibit "2."

23    [16]  <u>Complaint</u> (Doc. 1) ¶23; <u>Schwinn Declaration</u> ¶¶ 10, 11 and 14; Exhibit "11."

24    [17]  Fed. R. Civ. P. 56(c);  *Stockton Wire Products, Inc. v. K-Lath Corp.,* 440 F.2d 782  (9th
25    Cir. 1971).

26    [18]  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 91 L. Ed. 2d 202
      (1986).

27
28    [19]  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348,
      89 L. Ed. 2d 538 (1986).

1   to raise a material issue of fact.[20]

2       The movant must carry this burden of "identifying those parts of the record that indicate the

3   absence of a genuine issue of material fact."[21]  Once this burden is met, the non-movant is required

4   to "come forward with specific facts showing that there is a genuine issue for trial" as to elements

5   essential to the movant's claim.[22]  The non-movant must show more than "some metaphysical doubt

6   as to the material facts;"[23] he or she must "set forth specific facts showing that there is a genuine

7   issue for trial."  Fed. R. Civ. P. 56(e).

8       The Court must resolve all disputed facts and weigh all evidence "in the light most favorable

9   to the nonmoving party."[24]  However, the nonmoving party may not rely upon mere allegations or

10  denials contained in its pleadings or briefs, but must come forward with specific facts showing the

11  presence of a genuine issue for trial.[25]  One of the principal purposes of the summary judgment rule

12  is to isolate and dispose of factually unsupported claims or defenses, and the rule should be

13  interpreted in a way that allows it to accomplish this purpose.  *Id*. at 323-324.

14                          **V.  ARGUMENTS AND AUTHORITIES**

15  **A.    THE "LEAST SOPHISTICATED CONSUMER" STANDARD IS USED TO
        ANALYZE VIOLATIONS OF THE FDCPA.**
16

17      The FDCPA states that its purpose, in part, is "to eliminate abusive debt collection practices

18  by debt collectors."  15 U.S.C. § 1692(e).  The statute is designed to protect consumers from

19  unscrupulous collectors, whether or not there is a valid debt.[26]  The FDCPA broadly prohibits unfair

20  _____

21      [20]  *EEOC v. Farmer Bros. Co.,* 31 F.3d 891, 906 (9th Cir. 1994).

22      [21]  *Brinson v. Linda Rose Joint Venture*, 53 F.3d 1044, 1048 (9th Cir. 1995).

23      [22]  *Schneider v. TRW, Inc.,* 938 F.3d 986, 991 (9th Cir. 1990).

24      [23]  *Matsushita Elec. Indus. Co.,* 475 U.S. at 586.

25      [24]  *T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Ass'n,* 809 F.2d 626, 630-31
26  (9th Cir. 1987).

27      [25]  *Saucier v. Katz,* 533 U.S. 194, 212, n.2, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001).

28      [26]  *Baker v. G.C. Services*, 677 F.2d 775, 777 (9th Cir. 1982).

1    or unconscionable collection methods; conduct which harasses, oppresses or abuses any debtor; and

2    any false, deceptive or misleading statements, in connection with the collection of a debt. 15 U.S.C.

3    §§ 1692d, 1692e, and 1692f.

4        The United States Court of Appeals for the Ninth Circuit has held that whether a

5    communication or other conduct violates the FDCPA is to be determined by analyzing it from the

6    perspective of the "least sophisticated consumer."[27] The "least sophisticated consumer" standard

7    is objective—not subjective. *Id.* at 1227. Courts determine whether the "least sophisticated

8    consumer" would be misled or deceived by the statements made as a matter of law.[28]

9        "The basic purpose of the least sophisticated consumer standard is to ensure that the FDCPA

10   protects all consumers, the gullible as well as the shrewd."[29] "While protecting naive consumers,

11   the standard also prevents liability for bizarre or idiosyncratic interpretations of collection notices

12   by preserving a quotient of reasonableness and presuming a basic level of understanding and

13   willingness to read with care."[30]

14       "As the FDCPA is a strict liability statute, proof of one violation is sufficient to support

15   summary judgment for the plaintiff."[31] "Because the Act imposes strict liability, a consumer need

16   not show intentional conduct by the debt collector to be entitled to damages."[32] Furthermore, the

17   question of whether the consumer owes the alleged debt has no bearing on a suit brought pursuant

18

19       [27] *Swanson v. Southern Oregon Credit Serv.*, 869 F.2d 1222, 1225 (9th Cir. 1988).

20       [28] *Terran v. Kaplan*, 109 F.3d 1428, 1432 (9th Cir. 1977); *Swanson*, 896 F.2d at 1225-26.

21       [29] *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2nd Cir. 1993).

22       [30] *United States v. National Financial Services*, 98 F.3d 131, 136 (4th Cir. 1996) (citations
     omitted); *See also Russell v. Equifax A.R.S.*, 74 F.3d 30 (2nd Cir. 1996); *Bentley v. Great Lakes

23   Collection Bureau*, 6 F.3d 60 (2nd Cir. 1993); *Jeter v. Credit Bureau*, 760 F.2d 1168 (11th Cir. 1985);
     *Graziano v. Harrison*, 950 F.2d 107, 111 (3rd Cir. 1991); *Avila v. Rubin*, 84 F.3d 222, 226-27 (7th

24   Cir. 1996) ("the standard is low, close to the bottom of the sophistication meter").

25       [31] *Cacace v. Lucas*, 775 F. Supp. 502, 505 (D. Conn. 1990); *See also Stojanovski v. Strobl

26   & Manoogian, P.C.*, 783 F. Supp. 319, 323 (E.D. Mich. 1992); *Riveria v. MAB Collections, Inc.*,
     682 F. Supp. 174, 178-9 (W.D.N.Y. 1988).

27

28       [32] *Russell*, 74 F.3d at 33; *See also Taylor v. Perrin Landry, deLaunay & Durand*, 103 F.3d
     1232, 1236 (5th Cir. 1997); *Bentley*, 6 F.3d at 62; *Clomon*, 988 F.2d at 1318.

1    to the FDCPA.[33]

2          It is important to note that by protecting consumers from abusive, deceptive and unfair

3    collection practices, the FDCPA insures that those debt collectors who refrain from using abusive

4    debt collection practices are not competitively disadvantaged.  15 U.S.C. § 1692(e).  Moreover, the

5    FDCPA further insures that regardless of whether a consumer owes a debt, he or she will be treated

6    in a reasonable and civil manner.[34]

7          Accordingly, Plaintiff asserts that whether or not Defendants violated the FDCPA must be

8    evaluated from the standpoint of the "least sophisticated consumer."

9  **B.    UNDER THE STRICT LIABILITY STANDARD OF THE FDCPA, DEFENDANTS
         HAVE COMMITTED NUMEROUS VIOLATIONS OF THE ACT, AS SEEN FROM**
10 **       THE PERSPECTIVE OF THE "LEAST SOPHISTICATED CONSUMER."**

11          To establish a violation of the FDCPA, Plaintiff must show that: (1) Plaintiff is a consumer,

12   (2) Plaintiff has been the object of collection activity arising from a consumer debt, (3) Defendant

13   collecting the "debt" is a "debt collector" as defined in the Act, and (4) Defendant has engaged in

14   any act or omission in violation of the prohibitions or requirements of the Act.[35]  The remainder of

15   this memorandum will show that all four (4) of these elements are satisfied as a matter of law.

16 **C.    PLAINTIFF IS A "CONSUMER" AS THAT TERM IS DEFINED BY 15 U.S.C. §
         1692a(3); DEFENDANTS ARE EACH A "DEBT COLLECTOR" AS THAT TERM**
17 **       IS DEFINED BY 15 U.S.C. §1692a(6); THE DEBT BEING COLLECTED BY
         DEFENDANTS WAS A "DEBT" AS THAT TERM IS DEFINED BY 15 U.S.C. §**
18 **       1692a(5) AND A "CONSUMER DEBT" AS THAT TERM IS DEFINED BY CAL.
         CIVIL CODE § 1788.2(f).**
19

20          To prove her claims under the FDCPA, Plaintiff must show that she is a "consumer" as that

21   term is defined by 15 U.S.C. § 1692a(3) and Defendant is a "debt collector" as that term is defined

22   by 15 U.S.C. § 1692a(6).  Plaintiff must also show that Defendants were attempting to collect a

23

24        [33]  *McCartney v. First City Bank*, 970 F.2d 45 (5th Cir. 1992);  *Baker*, 677 F.2d at 777.

25        [34]  *Baker*, 677 F.2d at 777.

26        [35]  *Turner v. Cook*, 362 F.3d 1219, 1227-1228 (9th Cir. 2004);  *Romine v. Diversified
27   Collection Servs.*, 155 F.3d 1142, 1145 (9th Cir. 1998);  *De Coito v. Unifund Corp.*, 2004 U.S. Dist.
     LEXIS 23729 at *8 (D. HI January 4, 2004);  *United States v. Trans Continental Affiliates*, 1997
28   U.S. Dist. LEXIS 388 at *8 (N.D. Cal. January 8, 1997).

"debt" as that term is defined by 15 U.S.C. § 1692a(5).  Finally, to prove her claims under the RFDCPA, Plaintiff must show that Defendants were attempting to collect a "consumer debt" as that term is defined by Cal. Civil Code § 1788.2(f).

Defendants' "primary business" is collecting or attempting to collect debts owed or alleged to be owed to third-parties.[36]  In fact, Defendants advertise on their website that they "specialize in subrogation, commercial and consumer collections" and Defendant, Brachfeld, purportedly "has over ten years of experience in the areas of Creditor's Rights and Debt Collections."[37]

In this case, Defendants were attempting to collect a consumer credit card debt originally owed to Capital One Bank, which was later assigned to NCO Financial Systems, Inc.[38]  The debt originally owed to Capital One Bank by Plaintiff was incurred for personal, family or household purposes.[39]  Defendants have no evidence to dispute that the debt originally owed to Capital One Bank was incurred for purposes other than for Plaintiff's "personal, family, or household purposes."  There is no factual dispute that Plaintiff is a "consumer", that Defendants are each a "debt collector" and that Defendants were attempting to collect a "debt" as that term is defined by the FDCPA and a "consumer debt" as that term is defined by the RFDCPA.  Therefore, Plaintiff is entitled to summary judgment or summary adjudication on these threshold elements pursuant to Fed. R. Civ. P. 56(d).

**D.    DEFENDANTS HAVE VIOLATED NUMEROUS PROVISIONS OF THE FDCPA.**

Because the FDCPA is a strict liability statute, proof of one violation is sufficient to support summary judgment for a Plaintiff.[40]  In light of this strict liability standard, a consumer need not

---

[36]  Schwinn Declaration ¶15, Exhibit "12."

[37]  *Id*.

[38]  Complaint (Doc. 1) ¶¶ 10 and 11; Owens Declaration ¶¶ 4, 5 and 6; Exhibit "1."

[39]  Complaint (Doc. 1) ¶¶10, 29 and 38; Owens Declaration ¶4.

[40]  *See Hartman v. Meridian Financial Services, Inc.*, 191 F. Supp. 2d 1031, 1046-47 (W.D. Wis. 2002) ("One false or misleading statement in a collection letter renders the entire communication false or misleading and constitutes one violation"); *See also, Cacace*, 775 F. Supp. at 505; *Traverso v. Sharinn*, 1989 U.S. Dist. LEXIS 19100 at *4 (D. Conn. Sept. 15, 1989); *Picht*

---

1   show intentional conduct by the debt collector in order to be entitled to damages,[41] and there are no

2   unimportant violations.[42]  Further, no proof of actual deception or actual damages is required to

3   obtain statutory remedies.[43]

4          **1.      DEFENDANTS VIOLATED THE FDCPA BY SENDING A COLLECTION LETTER IN AN ENVELOPE WHICH DISPLAYED PLAINTIFF'S PERSONAL FINANCIAL INFORMATION.**

5

6        On or about September 18, 2006, Defendants' deposited a collection letter in the United

7   States Mail addressed to Plaintiff.[44]  Defendants' collection letter was mailed in an envelope which

8   contained a window through which Plaintiff's original creditor, Capital One Bank, and Defendants'

9   file number "NCO06680," could be seen by anyone who handled the letter.[45]  The FTC has stated

10  that "[a] debt collector may not send a written message that is easily accessible to third parties.  For

11  example, he may not use a computerized billing statement that can be seen on the envelope itself."[46]

12  Further, courts have found violations of the FDCPA when information regarding the creditor or debt

13  being collected are disclosed through an envelope window.[47]

14

15  *v. Jon R. Hawks, Ltd.*, 236 F.3d 446, 451 (8th Cir. 2001);  *Bentley*, 6 F.3d at 62.

16  [41]  *See Pittman v. J.J. Mac Intyre Co. of Nevada, Inc.*, 969 F. Supp. 609, 613 (D. Nev. 1997);

17  *See also Russell*, 74 F.3d at 36 ("Because the Act imposes strict liability, a consumer need not show
    intentional conduct by the debt collector to be entitled to damages.").

18

19  [42]  *Bentley*, 6 F.3d at 63 (no non-actionable violations of FDCPA);  *Taylor*, 103 F.3d at 1234
    (failure "to comply with any provision of the FDCPA" leads to liability).

20

21  [43]  *Baker*, 677 F.2d at 780;  *Clomon*, 988 F.2d at 1319.

22  [44]  <u>Complaint</u>  (Doc. 1) ¶ 16; <u>Owens Declaration</u>  ¶¶ 7, 8 and 9; Exhibit "1."

23  [45]  <u>Complaint</u> (Doc. 1) ¶18; <u>Owens Declaration</u> ¶¶ 10 and 11; Exhibit "2."

24  [46]  FTC Official Staff Commentary on the Fair Debt Collection Practices Act, 53 Fed. Reg.
    50,104 (1988).

25  [47]  *Hodges v. Armada (In re Hodges)*, 342 B.R. 616, 625 (E.D. Bankr. Wash. 2006) (Debt

26  collector violated the FDCPA by sending an letter in an envelope which contained a window through
    which anyone could see "You have a total of $ 1,278.04 owing at this . . .");  *Shulick v. Credit*

27  *Bureau Collection Services*, 2004 U.S. Dist. LEXIS 1552 *3-4 (E.D. Pa. February 3, 2004) (Debt
    collector violated the FDCPA by sending a letter in an envelope which contained a window through

28  which the creditor "Verizon" could be seen.).

MEMORANDUM OF POINTS AND AUTHORITIES  **-8-**       Case No.  07-04400-JF-PVT

1    Defendants violated 15 U.S.C. § 1692c(b), which provides as follows:

2    Except as provided in section 804 [15 U.S.C. § 1692b], without the prior consent of
     the consumer given directly to the debt collector, or the express permission of a court
3    of competent jurisdiction, or as reasonably necessary to effectuate a postjudgment
     judicial remedy, a debt collector may not communicate, in connection with the
4    collection of any debt, with any person other than the consumer, his attorney, a
     consumer reporting agency if otherwise permitted by law, the creditor, the attorney
5    of the creditor, or the attorney of the debt collector.

6    Defendants mailed the collection letter in an envelope which contained a window through which

7    anyone could see the creditor and account number related to the consumer debt being collected,

8    thereby violating the FDCPA, 15 U.S.C. § 1692c(b).

9        Further, Defendants violated 15 U.S.C. §§ 1692d and 1692d(3).  15 U.S.C. § 1692d provides:

10   A debt collector may not engage in any conduct the natural consequence of which
     is to harass, oppress, or abuse any person in connection with the collection of a debt.
11   Without limiting the general application of the foregoing, the following conduct is
     a violation of this section:
12                                              . . .

13   (3)  The publication of a list of consumers who allegedly refuse to pay debts, except
     to a consumer reporting agency or to persons meeting the requirements of section
14   603(f) or 604(3) of this Act [15 U.S.C. §§ 1681a(f) or 1681b(3)].

15   Defendants violated 15 U.S.C. § 1692d by mailing a collection letter in an envelope which disclosed

16   information about the debt, as this is conduct the natural consequence of which is harassing,

17   oppressive and abusive.  Defendants violated 15 U.S.C. § 1692d(3) because the envelope published

18   Plaintiff's personal financial information to third parties, namely, Plaintiff's roommates.[48]

19       Finally, Defendants violated 15 U.S.C. § 1692f, which provides, "A debt collector may not

20   use unfair or unconscionable means to collect or attempt to collect any debt."  By displaying

21   Plaintiff's personal financial information to third parties, including her roommates, in connection

22   with the collection of a consumer debt, Defendants engaged in unfair and unconscionable means of

23   collection, thereby violating 15 U.S.C. § 1692f.

24   **2.    DEFENDANTS USED FALSE BUSINESS NAMES INSTEAD OF THEIR
             TRUE BUSINESS NAME WHILE ATTEMPTING TO COLLECT A
25           CONSUMER DEBT FROM PLAINTIFF.**

26       The collection letter dated September 18, 2006, states on the signature line that the name of

27

28   _____
     [48]  Owens Declaration ¶ 10.

---

MEMORANDUM OF POINTS AND AUTHORITIES   -9-                     Case No.  07-04400-JF-PVT

1  Defendants' business is "Law Offices of Brachfeld & Associates, P.C."[49]  The third paragraph of

2  the collection letter and the return address on the envelope in which it was mailed stated that

3  "Brachfeld & Associates, P.C.," was the name of Defendants' business.[50]  However, neither the

4  "Law Offices of Brachfeld & Associates, P.C." nor "Brachfeld & Associates, P.C.," are California

5  corporations or foreign corporations authorized to conduct business in the state of California.[51]  The

6  true legal name under which Defendants conduct business appears to be "Erica L. Brachfeld, A

7  Professional Corporation" as that is the only corporation with the word "Brachfeld" in its name in

8  the state of California.[52]

9        Defendants have violated 15 U.S.C. § 1692e(14) which provides:

10       A debt collector may not use any false, deceptive, or misleading representation or
         means in connection with the collection of any debt.  Without limiting the general
11       application of the foregoing, the following conduct is a violation of this section:
                                              . . .
12       (14)  The use of any business, company, or organization name other than the true
         name of the debt collector's business, company, or organization.
13

14  Defendants' September 18, 2006, collection letter violates the FDCPA because the business name

15  "Law Offices of Brachfeld & Associates, P.C." was falsely used instead of the true name of

16  Defendants' business entity, "Erica L. Brachfeld, A Professional Corporation."  Further, the

17  collection letter and envelope in which it was mailed violate the FDCPA because they falsely state

18  Defendants' business entity is named "Brachfeld & Associates, P.C.," instead of the true name of

19  the entity,  "Erica L. Brachfeld, A Professional Corporation."

20  **E.     B&A HAS VIOLATED THE RFDCPA.**

21       In addition to the violations of the federal Fair Debt Collection Practices Act alleged against

22  all Defendants, Plaintiff also alleges several violations of the California Rosenthal Fair Debt

23  Collection Practices Act against Defendant, ERICA L. BRACHFELD, A PROFESSIONAL

24  _____

25  [49]  Complaint (Doc. 1) ¶20; Owens Declaration ¶12; Exhibit "1."

26  [50]  Complaint (Doc. 1) ¶22; Owens Declaration ¶13; Exhibits "1" and "2."

27  [51]  Schwinn Declaration ¶¶ 7-14; Exhibits "4," "5," "6," "7," "8," "10" and "11."

28  [52]  Schwinn Declaration ¶12; Exhibit "9."

1  CORPORATION ("B&A").

2  **1.   B&A IS A "DEBT COLLECTOR" WITHIN THE MEANING OF CALIFORNIA CIVIL CODE § 1788.2(c).**

3

4  Cal. Civil Code § 1788.2(c) provides as follows:

5  The term "debt collector" means any person who, in the ordinary course of business, regularly, on behalf of himself or herself or others, engages in debt collection.  The
6  term includes any person who composes and sells, or offers to compose and sell, forms, letters, and other collection media used or intended to be used for debt
7  collection, but does not include an attorney or counselor at law.

8  This Court has stated in several cases that a law firm is a "debt collector" within the meaning

9  of the RFDCPA.

10  Interpreting the plain language of the statute, it appears clear on its face that CA FDCPA "does not include an attorney."  In fact, during oral argument, Plaintiff
11  conceded that the CA FDCPA does not apply to Defendant Boyajian, who is an attorney.  Thus, this Court denies Plaintiff's sub–class of the CA FDCPA as it
12  pertains to Defendant Boyajian.

13  However, giving section § 1788.2(c) the same reading does not yield the same result for Defendant JBC.  The statute merely states that it does not apply to "attorney" or
14  "counselor at law"; it does not outright exclude "law firms".  Since the legislature specifically excluded attorneys from the statute but was silent on law firms, this
15  Court presumes that the legislature did not intend to exclude law firms.  In addition, taken the allegations from Plaintiff's Complaint as true, Defendant JBC, in the
16  ordinary course of business, regularly, on behalf of itself or others, engages in debt collection using form letters sent through the United States Postal Office, Defendant
17  JBC is a "debt collector" as defined by CA FDCPA.[53]

18  As in *Ables v. JBC Legal Group*, Plaintiff is this case does not assert claims under the

19  RFDCPA against the individual attorney Defendant, Brachfeld, only the law firm, B&A.[54]  It is

20  undisputed that B&A is a California corporation engaged in the business of collecting debts in this

21  state, that the principal business of B&A is the collection of debts using the mails and telephone, and

22  ────────────────

23  [53] *Ables v. JBC Legal Group, P.C.*, 227 F.R.D. 541, 547-48 (N.D. Cal. 2005) (Ware), *see also, Navarro v. Eskanos & Adler*, 2007 U.S. Dist. LEXIS 15046 (N.D. Cal. February 20, 2007) (J.
24  Alsup) (Court granted Plaintiff summary judgment on the issue of whether the law firm Eskanos & Adler, APC, was a debt collector under the RFDCPA);  *Adams v. CIR Law Offices, LLP*, 2007 U.S.
25  Dist. LEXIS 63808 (S.D. Cal. August 29, 2007) (Court denied motion to dismiss RFDCPA claims against a law firm);  *Lutge v. Eskanos & Adler, P.C.*, 2007 U.S. Dist. LEXIS 40570 (N.D. Cal. May
26  23, 2007) (J. White) (RFDCPA claim against the attorney Eskanos was dismissed, but the RFDCPA
27  claim against the law firm Eskanos & Adler remained.).

28  [54] <u>Complaint</u> (Doc. 1) ¶¶ 34-45.

────────────────

MEMORANDUM OF POINTS AND AUTHORITIES -11-                     Case No.  07-04400-JF-PVT

1   that B&A regularly attempts to collect debts alleged to be due another.[55]

2       There is no factual dispute regarding B&A's corporate form or the principal business in

3   which it engages.  Whether B&A is a "debt collector" as that term is defined by Ca. Civil Code §

4   1788.2(c) is a question of law on which Plaintiff is entitled to summary adjudication pursuant to Fed.

5   R. Civ. P. 56(d).

6       **2.      B&A  HAS VIOLATED CAL. CIVIL CODE § 1788.17.**

7       Cal. Civil Code § 1788.17 provides as follows:

8       Notwithstanding any other provision of this title, every debt collector collecting or
        attempting to collect a consumer debt shall comply with the provisions of Sections
9       1692b to 1692j, inclusive, of, and shall be subject to the remedies in Section 1692k
        of, Title 15 of the United States Code.
10

11      As explained above, B&A has violated 15 U.S.C. §§ 1692c(b), 1692d, 1692d(3), 1692e(14),

12   and 1692f.  Each of these violations of the FDCPA state a separate violation under Cal. Civil Code

13   § 1788.17, which requires compliance with the FDCPA.

14      **3.      B&A HAS VIOLATED CAL. CIVIL CODE §§ 1788.12(c), 1788.12(d) AND
                1788.13(a).**
15

16      As explained above, B&A mailed Plaintiff a letter in an envelope which contained a window

17   through which information about Plaintiff's debt could be seen by anyone who handled the letter.

18   By doing so, B&A disclosed the nature or existence of a debt in violation of Cal. Civil Code §

19   1788.12(c).  B&A also communicated with Plaintiff "by means of a written communication that

20   display[ed] or convey[ed] any information about the consumer debt . . . which [was] intended both

21   to be seen by any other person and also to embarrass the debtor" in violation of Cal. Civil Code §

22   1788.12(d).  Finally, B&A used a false business name, thereby communicating "with the debtor

23   other than in the name . . . of the debt collector" in violation of Cal. Civil Code § 1788.13(a).

24   **F.      THIS COURT SHOULD AWARD PLAINTIFF THE MAXIMUM STATUTORY
            DAMAGE AMOUNT OF $1,000 UNDER THE FDCPA.**
25

26      The maximum statutory damage award available under the FDCPA is a modest $1,000.

27

28      [55]  Complaint (Doc. 1) ¶ 7; Schwinn Declaration ¶¶ 12 and 15; Exhibits "9" and "12."

Courts have, therefore, awarded the maximum amount even when the violations found were less numerous and egregious than those herein.  For example, in *Riviera v. M.A.B.*,[56] the court awarded the maximum $1,000 because the validation notice appeared on the back of the letter, in relatively small print, with no reference to it on the front of the letter.  Thus, even though the notice was accurate, the court determined a $1,000 award was appropriate.  Furthermore, in *Tolentino v. Friedman*,[57] the Seventh Circuit upheld the maximum statutory award of $1,000 despite finding that violation of only one provision of the FDCPA had been proven.  In that case the debt collector had included a disclosure required by 15 U.S.C. § 1692e(11) in its initial notice, but had failed to include it in a subsequent notice.  The present case involves at least 6 violations of the FDCPA, including disclosure of Plaintiff's private financial information to her roommates.  Thus, the violations herein are more numerous and meaningful than in those cases, and therefore the Court should award the maximum amount of statutory damages under 15 U.S.C. § 1692k(a)(2)(A), which is $1,000.

**G.    PLAINTIFF SHOULD BE AWARDED $1,000 UNDER CAL. CIVIL CODE § 1788.30(b).**

The Cal. Civil Code § 1788.30 states that any debt collector who fails to comply with any provision is liable to such debtor in an amount equal to his/her actual damages, and in the case of a debt collector who willfully and knowingly violates the RFDCPA, the Court may award a penalty in an amount not less than $100 nor greater than $1,000.  Cal. Civil Code § 1788.30(b).

In this case, B&A has willfully and knowingly violated Cal. Civil Code § 1788.13(a) by collecting consumer debts using a false name.  This statutory provision is remedied by the statutory penalty provisions of Cal. Civil Code § 1788.30(b).  Thus, Plaintiff should be awarded the full $1,000 statutory penalty under Cal. Civil Code § 1788.30(b).

**H.    PLAINTIFF SHOULD BE AWARDED $1,000 UNDER CAL. CIVIL CODE § 1788.17.**

In this case, B&A has violated Cal. Civil Code § 1788.17 which is remedied by the statutory damages provisions of 15 U.S.C. § 1692k(a)(2)(A).  Thus, Plaintiff should be awarded the full

[56] 682 F. Supp. 174 (W.D.N.Y. 1988).

[57] 46 F.3d 645 (7th Cir. 1995).

1   $1,000 in statutory damages under Cal. Civil Code § 1788.17.

2   **I.    BOTH CONGRESS AND THE CALIFORNIA LEGISLATURE HAVE EXPRESSED
        THEIR INTENT THAT THE REMEDIES FOR VIOLATIONS OF THE FDCPA AND
3       RFDCPA BE CUMULATIVE.**

4   Cal. Civil Code § 1788.32 states "The remedies provided herein are intended to be

5   cumulative and are in addition to any other procedures, rights, or remedies under any other provision

6   of law." Thus, a violation of the federal statute can lead to damages under the federal FDCPA and

7   a violation of the California statute leads to damages under the RFDCPA. Indeed, the FDCPA

8   expressly states:

9       [t]his subchapter does not annul, alter, or affect, or exempt any person subject to the
        provisions of this subchapter from complying with the law of any State with respect
10      to debt collection practices, except to the extent that those laws are inconsistent with
        any provision of this subchapter, and then only to the extent of the inconsistency.
11      15 U.S.C. § 1692n.

12  Moreover, courts both within and outside the Ninth Circuit, have allowed statutory damages

13  under both federal and state consumer protection statutes.[58] Thus, the Court should not be reluctant

14  to assess the maximum possible statutory damages under both federal and state law. As this Court

15  has noted, Cal. Civil Code § 1788 was amended to expand the remedies of the RFDCPA, including

16  an expansion of the statutory damages available under the state law.[59]

17  Additionally, this Court has concluded that rather than drafting new language to the

18  RFDCPA, the legislature simply incorporated entire sections of the FDCPA by reference.[60] Indeed,

19  this Court stated "California simply incorporated by reference the text of certain federal provisions

20  into the CFDCPA, rather than copying them verbatim into the California code. Any resulting

21  liability, however, remains a state claim." *Id.* In a separate case, this Court went on to hold that a

22

23  _____

24  [58] *Sakuma v. First National Credit Bureau*, 1989 U.S. Dist. LEXIS 19120 (D. HI. November
    15, 1989); *Mann v. Acclaim*, 348 F. Supp. 2d 923 (S.D. Ohio 2004); *Chapman v. ACB Business
25  Services*, Inc., 1997 U.S. Dist. LEXIS 23743 (S.D. W.V. February 13, 1997).

26  [59] *Abels*, 227 F.R.D. at 548 (The mandatory language in the amendment—" . . . shall be
    subject to the remedies in Section 1692k" leaves little doubt as to the intent of the legislature to
27  broaden the remedies for RFDCPA.)

28  [60] *Alkan v. Citimortgage, Inc.*, 336 F. Supp. 2d 1061, 1065 (N.D. Cal. 2004).

_____

1    violation of 15 U.S.C. § 1692g was also a violation of Cal. Civil Code § 1788.17.[61]  Thus, by

2    incorporating 15 U.S.C. § 1692k by reference (and its statutory damages of $1,000), the California

3    legislature chose to make the additional $1,000 available, as a matter of state law, when it enacted

4    Cal. Civil Code § 1788.17.

5    **J.    PLAINTIFF HAS A STATUTORY RIGHT TO ATTORNEY'S FEES AND COSTS.**

6            Both the federal FDCPA and California RFDCPA direct the Court to award attorney's fees

7    to a prevailing consumer.  15 U.S.C. § 1692k(a)(3) and Cal. Civil Code § 1788.30(c).  A number of

8    cases decided under 15 U.S.C. § 1692k have held that an award of attorney fees and costs is required

9    if the plaintiff prevails.[62]  Thus, the Court should award Plaintiff her reasonable attorney fees and

10   costs incurred in this matter.

11                                **VI.  CONCLUSION**

12          For the reasons set forth above, Plaintiff, as a matter of law, is entitled to summary judgment:

13   (1) declaring that Defendants' collection letter (Exhibit "1") violates the Fair Debt Collection

14   Practices Act,  15 U.S.C. §§ 1692c(b), 1692d, 1692d(3), 1692e(14), and 1692f;  (2) declaring that

15   the envelope Defendants' mailed the collection letter in (Exhibit "2") violates the Fair Debt

16   Collection Practices Act, 15 U.S.C. § 1692e(14);  (3) declaring that Defendants' collection letter

17   (Exhibit "1") violates the Rosenthal Fair Debt Collection Practices Act, Cal. Civil Code §§

18   1788.13(a) and 1788.17; (4) declaring that the envelope Defendants' mailed the collection letter in

19   (Exhibit "2") violates the Rosenthal Fair Debt Collection Practices Act, Cal. Civil Code §§

20   1788.12(c), 1788.12(d), 1788.13(a), and 1788.17;  (5) awarding Plaintiff statutory damages in an

21

22          [61]  *Edstrom v. A.S.A.P. Collection Services*, 2005 U.S. Dist. LEXIS 2773, *15 (N.D. Cal.
23   February 22, 2005).

24          [62]  *See, e.g. Zagorski v. Midwest Billing Services, Inc.*, 178 F.3d 116 (7th Cir. 1997) (holding
25   it was an abuse of discretion not to award attorney's fees following a stipulated judgment in the
     amount of $100; and directing the court to award fees sufficient to compensate the attorney for the
26   time spent on the case in order to encourage enforcement of the FDCPA);  *Pipiles v. Credit Bureau*,
     Inc., 886 F.2d 22 (2d Cir. 1989) (directing trial court to award fees on remand despite the lack of
27   actual or statutory damages because Plaintiff had demonstrated that Defendant violated the FDCPA);
     *Perez v. Perkiss*, 742 F. Supp. 883 (D. Del. 1990) (awarding Plaintiffs' legal services attorneys
28   $10,110 after a half-day jury trial in which Plaintiff was awarded $1,200 in damages).

1  amount not exceeding $1,000 pursuant to 15 U.S.C. § 1692k(a)(2)(A); (6) awarding Plaintiff

2  statutory damages in an amount not less than $100 nor greater than $1,000 pursuant to Cal. Civil

3  Code § 1788.30(b);  (7) awarding Plaintiff statutory damages in an amount not exceeding $1,000

4  pursuant to 15 U.S.C. § 1692k(a)(2)(A), as incorporated by Cal. Civil Code § 1788.17;  (8) awarding

5  Plaintiff the costs of this action and reasonable attorney's fees pursuant to 15 U.S.C.§ 1692k(a)(3)

6  and Cal. Civil Code §§ 1788.30(c) and 1788.17; and (9) awarding Plaintiff such other and further

7  relief as may be just and proper.

8         In the alternative, Plaintiff is entitled to partial summary adjudication pursuant to Fed. R.

9  Civ. P. 56(d) on the following factual issues:  (1) Plaintiff is a "consumer" as that term is defined

10  by 15 U.S.C. § 1692(a)(3) and a "debtor" as that term is defined by Cal. Civil Code § 1788.2(h);

11  (2) Defendants are each a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6);  (3)

12  Defendant, B&A, is a "debt collector" as that term is defined by Cal. Civil Code § 1788.2(c);  and

13  (4) the debt being collected by Defendants was a "debt" as that term is defined by 15 U.S.C. §

14  1692a(5) and a "consumer debt" as that term is defined by Cal. Civil Code § 1788.2(f).

15

16                                          CONSUMER LAW CENTER, INC.

17

18                                          By: /s/ Fred W. Schwinn
                                                Fred W. Schwinn, Esq.
                                                Attorney for Plaintiff
19                                              SUSAN RAE OWENS

20

21

22

23

24

25

26

27

28

1   Fred W. Schwinn (SBN 225575)
    CONSUMER LAW CENTER, INC.
2   12 South First Street, Suite 1014
    San Jose, California  95113-2418
3   Telephone Number: (408) 294-6100
    Facsimile Number: (408) 294-6190
4   Email Address: fred.schwinn@sjconsumerlaw.com

5   Attorney for Plaintiff
    PATRICIA CLAIRE BANKSTON
6

7

8            IN THE UNITED STATES DISTRICT COURT
           FOR THE NORTHERN DISTRICT OF CALIFORNIA
9                    SAN JOSE DIVISION

10  PATRICIA CLAIRE BANKSTON,              Case No.  C07-03396-JW-PVT

11                 Plaintiff,

12  v.                                     **MEMORANDUM OF POINTS AND
                                           AUTHORITIES IN SUPPORT OF
13  PATENAUDE & FELIX, A                   MOTION FOR SUMMARY
    PROFESSIONAL CORPORATION, a            JUDGMENT**
14  California corporation, and RAYMOND
    ALCIDE PATENAUDE, individually and in  Date:       January 14, 2008
15  his official capacity,                 Time:       9:00 a.m.
                                           Judge:      Honorable James Ware
16                 Defendants.             Courtroom:  Courtroom 8, 4th Floor
                                           Place:      280 South First Street
17                                                     San Jose, California

18         COMES NOW the Plaintiff, PATRICIA CLAIRE BANKSTON, by and through her attorney

19  Fred W. Schwinn of the Consumer Law Center, Inc., and hereby submits her Memorandum of Points

20  and Authorities in Support of Motion for Summary Judgment filed herein.

21

22

23

24

25

26

27

28

MEMORANDUM OF POINTS AND AUTHORITIES                    Case No.  C07-03396-JW-PVT

1

**TABLE OF CONTENTS**

2   TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

3   TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

4   INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

5   PROCEDURAL HISTORY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

6   FACTS OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

7   STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

8   SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

9   STATEMENT OF QUESTIONS PRESENTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

10  ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

11       A.   THE "LEAST SOPHISTICATED CONSUMER" STANDARD IS USED
             TO ANALYZE VIOLATIONS OF THE FDCPA  . . . . . . . . . . . . . . . . . . . . . . . 6

12

13       B.   UNDER THE STRICT LIABILITY STANDARD OF THE FDCPA,
             PLAINTIFF HAS PLED NUMEROUS VIOLATIONS OF THE ACT, AS
             SEEN FROM THE PERSPECTIVE OF THE "LEAST SOPHISTICATED

14             CONSUMER" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

15       C.   DEFENDANTS' DEBT COLLECTION LETTER VIOLATES 15 U.S.C. §
             1692g(a)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

16

17       D.   DEFENDANTS' DEBT COLLECTION LETTER VIOLATES 15 U.S.C. §
             1692g(a)(5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

18       E.   DEFENDANTS MISREPRESENTED PLAINTIFF'S RIGHT TO OBTAIN
             A COPY OF THE DEBT VERIFICATION OR JUDGMENT AGAINST

19             HER, IN VIOLATION OF 15 U.S.C. §§ 1692e AND 1692e(10) . . . . . . . . . . . 12

20       F.   DEFENDANTS MISREPRESENTED PLAINTIFF'S RIGHT TO OBTAIN
             THE NAME AND ADDRESS OF THE ORIGINAL CREDITOR, IF IT IS

21             DIFFERENT THAN THE CURRENT CREDITOR, IN VIOLATION OF 15
             U.S.C. §§ 1692e AND 1692e(10)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

22

23       G.   THIS COURT SHOULD AWARD PLAINTIFF THE MAXIMUM
             STATUTORY DAMAGE AMOUNT OF $1,000 UNDER THE FDCPA . . . . . 12

24       H.   PLAINTIFF HAS A STATUTORY RIGHT TO ATTORNEY'S FEES AND
             COSTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

25

26  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

27

28

1

**TABLE OF AUTHORITIES**

2

<u>CASES</u>

3   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 5

4   *Avila v. Rubin*, 84 F.3d 222 (7th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

5   *Baker v. G.C. Services*, 677 F.2d 775 (9th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . 6, 7, 8, 10, 11

6   *Bankston v. Phycom Corp.*, 2007 U.S. Dist. LEXIS 89284

7   (N.D. Cal. November 19, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

8   *Bentley v. Great Lakes Collection Bureau*, 6 F.3d 60 (2nd Cir. 1993) . . . . . . . . . . . . . . . . . . 7, 8

9   *Brinson v. Linda Rose Joint Venture*, 53 F.3d 1044 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . 4

10  *Cacace v. Lucas*, 775 F. Supp. 502 (D. Conn. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

11  *Camacho v. Bridgeport Fin., Inc.*, 430 F.3d 1078 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . 11

12  *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

13  *Chan v. North American Collectors, Inc.*, 2006 U.S. Dist. LEXIS 13353
(N.D. Cal. March 24, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

14  *Clomon v. Jackson*, 988 F.2d 1314 (2nd Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

15  *De Coito v. Unifund Corp.*, 2004 U.S. Dist. LEXIS 23729 (D. HI January 4, 2004) . . . . . . . . . 8

16  *EEOC v. Farmer Bros. Co.,* 31 F.3d 891 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

17  *Fasten v. Zager*, 49 F. Supp. 2d 144 (E.D.N.Y. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

18  *Graziano v. Harrison*, 950 F.2d 107 (3rd Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

19  *Hartman v. Meridian Financial Services, Inc.*, 191 F. Supp. 2d 1031

20  (W.D. Wis. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

21  *Jeter v. Credit Bureau*, 760 F.2d 1168 (11th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

22  *Kreek v. Phycom Corporation*, 2007 U.S. Dist. LEXIS 30652
(N.D. Cal. April 26, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

23  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) . . . . . . . . . . . . . . . . 4

24  *McCabe v. Crawford & Company*, 272 F. Supp. 2d 736 (N.D. Ill. 2003) . . . . . . . . . . . . . . . . 10

25  *McCartney v. First City Bank*, 970 F.2d 45 (5th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

26  *Perez v. Perkiss*, 742 F.Supp. 883 (D. Del. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

27  *Picht v. Jon R. Hawks, Ltd.*, 236 F.3d 446 (8th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

28

1   *Pipiles v. Credit Bureau*, Inc., 886 F.2d 22 (2nd Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

2   *Pittman v. J.J. Mac Inttyre Co. of Nevada, Inc.*, 969 F. Supp. 609 (D. Nev. 1997) . . . . . . . . . . . 8

3   *Reiter v. Sonotone Corp.*, 442 U.S. 330 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

4   *Rieber v. Kovelman (In re Kovelman),* 1995 U.S. App. LEXIS 8487 (9th Cir. 1995) . . . . . . . . . . 4

5   *Riveria v. MAB Collections*, 682 F. Supp. 174 (W.D.N.Y. 1988) . . . . . . . . . . . . . . . . . . . . . . 7, 13

6   *Romine v. Diversified Collection Servs.*, 155 F.3d 1142 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . 8

7   *Russell v. Equifax A.R.S.*, 74 F.3d 30 (2nd Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

8   *Schneider v. TRW, Inc.,* 938 F.3d 986 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

9   *Swanson v. Southern Oregon Credit Serv.*, 869 F.2d 1222 (9th Cir. 1988) . . . . . . . . . . . . . . . . . . 6

10  *Stockton Wire Products, Inc. v. K-Lath Corp.,* 440 F.2d 782  (9th Cir. 1971) . . . . . . . . . . . . . . . 3

11  *Stojanovski v. Strobl & Manoogian, P.C.*, 783 F. Supp. 319 (E.D. Mich. 1992) . . . . . . . . . . . . 7

12  *T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Ass'n*,
    809 F.2d 626 (9th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
13

14  *Taylor v. Perrin Landry, deLaunay & Durand*, 103 F.3d 1232 (5th Cir. 1997) . . . . . . . . . . . . 7, 8

15  *Terran v. Kaplan*, 109 F.3d 1428 (9th Cir. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

16  *Tolentino v. Friedman*, 46 F.3d 645 (7th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

17  *Traverso v. Sharinn*, 1989 U.S. Dist. LEXIS 19100 (D. Conn. Sept. 15, 1989) . . . . . . . . . . . . . 8

18  *Turner v. Cook*, 362 F.3d 1219 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

19  *U.S. v. Nat'l Fin. Servs.*, 98 F.3d 131 (4th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

20  *United States v. Trans Continental Affiliates*, 1997 U.S. Dist. LEXIS 388
    (N.D. Cal. January 8, 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

21  *Wade v. Regional Credit Ass'n*, 87 F.3d 1098 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

22  *Zagorski v. Midwest Billing Services, Inc.*, 178 F.3d 116 (7th Cir. 1997) . . . . . . . . . . . . . . . . . . 13

23                                          **<u>STATUTES</u>**

24  15 U.S.C. § 1692(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

25  15 U.S.C. § 1692d . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

26  15 U.S.C. § 1692e . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

27  15 U.S.C. § 1692f . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

28

15 U.S.C. § 1692g . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

15 U.S.C. § 1692g(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

15 U.S.C. § 1692k(a)(2)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

15 U.S.C. § 1692k(a)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

### <u>RULES</u>

Fed. R. Civ. P. 56(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Fed. R. Civ. P. 56(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

# I. INTRODUCTION

This case was brought by PATRICIA CLAIRE BANKSTON (hereinafter "Plaintiff") against a debt collection agency, PATENAUDE & FELIX, A PROFESSIONAL CORPORATION, and RAYMOND ALCIDE PATENAUDE, an individual who operates and manages the collection agency (hereinafter collectively referred to as "Defendants"). The Plaintiff alleges various violations of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, *et seq.* (hereinafter "FDCPA"), which prohibits debt collectors from engaging in abusive, deceptive and unfair practices. Plaintiff seeks statutory damages, attorney fees and costs under the FDCPA.

This case arises out of the initial debt collection letter that was sent to Plaintiff by Defendants. The debt being collected stemmed from a disputed credit card account issued by Capital One Bank that was used for personal, family or household purposes. Plaintiff alleges that Defendants failed to send Plaintiff a written notice containing a statement that if Plaintiff notifies Defendants *in writing* within the thirty day period that the debt, or any portion thereof, is disputed, Defendants would obtain verification of the debt and that a copy of the verification would be mailed to Plaintiff. Plaintiff alleges that Defendants failed to send Plaintiff a written notice containing a statement that upon Plaintiff's *written request*, Defendants would provide Plaintiff with the name and address of the original creditor if different from the current creditor. Plaintiff also alleges that the initial debt collection letter violates the FDCPA by misrepresenting Plaintiff's right to obtain a copy of the debt verification or judgment against her. Finally, Plaintiff alleges that the collection letter misrepresented Plaintiff's right to obtain the name and address of the original creditor, if it is different than the current creditor.

Plaintiff hereby moves for summary judgment on her claims for violation of 15 U.S.C. §§ 1692e, 1692e(10), 1692g(a)(4) and 1692g(a)(5).

# II. PROCEDURAL HISTORY

On June 28, 2007, Plaintiff filed a Complaint in this action against Defendants.[1]  Thereafter,

---

[1] Doc. 1.

1    Defendants filed their Answer on July 25, 2007.[2]  On October 12, 2007, Plaintiff propounded

2    Requests for Admission to Defendant, Patenaude & Felix, A Professional Corporation.[3]  On

3    November 12, 2007, Defendant served its responses to Plaintiff's Requests for Admission[4].

4         On December 10, 2007, Plaintiff's Motion for Summary Judgment was filed herein.  This

5    Memorandum of Points and Authorities is submitted in support thereof.

6                        **III.  FACTS OF THE CASE**

7         Plaintiff, Patricia Claire Bankston, is a "consumer" within the meaning of 15 U.S.C. §

8    1692(a)(3).[5] Defendant, Patenaude & Felix, A Professional Corporation, is a California corporation

9    engaged in the business of collecting consumer debts.[6]  Defendant, Raymond Alcide Patenaude, is

10   a "debt collector" as defined by 15 U.S.C. § 1692a(6).[7]

11        On a date or dates unknown to Plaintiff, Plaintiff incurred a financial obligation, namely a

12   credit account issued by Capital One Bank.[8]  The debt was incurred primarily for personal, family

13   or household purposes and is therefore a "debt" as that term is defined by 15 U.S.C. § 1692a(5).[9]

14   Sometime thereafter, the debt was sold, assigned or otherwise transferred to Defendants for

15

16

17        [2] Doc. 5.

18        [3] Doc. 13;  Declaration of Fred Schwinn in Support of Motion for Summary Judgment ¶ 3

19   and Exhibit "2."

20        [4] Declaration of Fred Schwinn in Support of Motion for Summary Judgment ¶ 4 and Exhibit

21   "3."

22        [5] Complaint (Doc. 1) ¶¶ 6 and 18; Answer (Doc. 5) ¶¶ 6 and 18; Exhibits "2" and "3",
     Admission No. 1.

23        [6] Complaint (Doc. 1) ¶¶ 7 and 19; Answer (Doc. 5) ¶¶ 7 and 19; Exhibits "2" and "3",

24   Admission Nos. 2, 3 and 4.

25        [7] Complaint (Doc. 1) ¶¶ 8 and 20; Answer (Doc. 5) ¶¶ 8 and 20.

26        [8] Complaint (Doc. 1) ¶ 10; Answer (Doc. 5) ¶ 10.

27        [9] Declaration of Patricia Claire Bankston in Support of Motion for Summary Judgment

28   (hereinafter "Plaintiff's Declaration") ¶ 4; Exhibits "2" and "3",  Admission No. 5.

1  collection from Plaintiff.[10]

2  Thereafter, Defendants mailed Plaintiff a collection letter, dated June 4, 2007, in an attempt

3  to collect the debt.[11]  The collection letter was the first written communication from Defendants to

4  Plaintiff in connection with the collection of the debt owed to Capital One Bank.[12]  The collection

5  letter states:

6  Unless you notify us within THIRTY (30) days after receiving this notice that you
   dispute the validity of this debt or any portion thereof, this office will assume this
7  debt is valid.  If you notify this office within THIRTY (30) days from receiving this
   notice, this office will: obtain verification of the debt or obtain a copy of a judgment
8  and mail you a copy of such judgment or verification.  If you request this office
   within THIRTY (30) days after receiving this notice, this office will provide you
9  with the name and address of the original creditor, if different from the current
   creditor.[13]

10

11  ## IV.  STANDARD OF REVIEW

12  The standard of review for a motion for summary judgment is that the moving party is

13  entitled to summary judgment when the evidence shows that there is no genuine issue of material

14  fact, and that the moving party is entitled to judgment as a matter of law.[14]  The Court must

15  determine "whether there is the need for a trial–whether, in other words, there are any genuine

16  factual issues that properly can be resolved only by a finder of fact because they may reasonably be

17  resolved in favor of either party."[15]  "Only disputes over facts that might affect the outcome of the

18

19

20

21  [10]  <u>Complaint</u> (Doc. 1) ¶ 11 ; <u>Answer</u> (Doc. 5) ¶ 11.

22  [11]  <u>Complaint</u> (Doc. 1) ¶¶ 12 and 13; <u>Answer</u> (Doc. 5) ¶¶ 12 and 13;  Plaintiff's Declaration
    ¶ 5; Exhibits "2" and "3",  Admission Nos. 6 and 7.

23  [12]  <u>Plaintiff's Declaration</u> ¶ 7.

24

25  [13]  <u>Plaintiff's Declaration</u>, Exhibit "1"; Exhibits "2" and "3",  Admission Nos. 6 and 7.

26  [14]  Fed. R. Civ. P. 56(c); *Stockton Wire Products, Inc. v. K-Lath Corp.,* 440 F.2d 782 (9th Cir.
    1971).

27  [15]  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2510, 91 L. Ed. 2d
28  202, 212 (1986).

suit under governing law will . . . preclude summary judgment."[16]  When the record taken as a whole

would not persuade a rational trier of fact to find for the nonmoving party, there is no genuine issue

for trial.[17]   In some cases, the evidence of the opposing party is so weak as to "fail[] to raise a

material issue of fact.[18]

     The movant must carry this burden of  "identifying those parts of the record that indicate the

absence of a genuine issue of material fact."[19]  Once this burden is met, the non-movant is required

to "come forward with specific facts showing that there is a genuine issue for trial" as to elements

essential to the non-movant's claim.[20]  The non-movant must show more than "some metaphysical

doubt as to the material facts;"[21] he or she must "set forth specific facts showing that there is a

genuine issue for trial." [22]

     The Court must resolve all disputed facts and weigh all evidence "in the light most favorable

to the nonmoving party."[23]   However, the nonmoving party may not rely upon mere allegations or

denials contained in its pleadings or briefs, but must come forward with specific facts showing the

presence of a genuine issue for trial.[24] As noted above, the requirement that a "genuine" issue of fact

must be present has been interpreted to mean that the evidence is such that a reasonable trier of fact

---

[16] *Id*. at 248.

[17] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986).

[18] *EEOC v. Farmer Bros. Co.,* 31 F.3d 891, 906 (9th Cir. 1994).

[19] *Brinson v. Linda Rose Joint Venture*, 53 F.3d 1044, 1048 (9th Cir. 1995).

[20] *Schneider v. TRW, Inc.,* 938 F.3d 986, 991 (9th Cir. 1990).

[21] *Matsushita Elec. Indus. Co.,* 475 U.S. at 586

[22] Fed. R. Civ. P. 56(e).

[23] *T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Ass'n,* 809 F.2d 626, 630-31 (9th Cir. 1987).

[24] *Rieber v. Kovelman (In re Kovelman),* 1995 U.S. App. LEXIS 8487 at *2 (9th Cir. 1995).

---

could return a verdict for the nonmoving party.[25]  Summary judgment is more than a "disfavored procedural shortcut," it is an important procedure "designed to 'secure the just, speedy and inexpensive determination of every action.' Fed. R. Civ. P. 1."[26]  One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and the rule should be interpreted in a way that allows it to accomplish this purpose.[27]

## V.  SUMMARY OF ARGUMENT

A.    The "Least Sophisticated Consumer" Standard Is Used to Analyze Violations of the FDCPA.

B.    Under the Strict Liability Standard of the FDCPA, Plaintiff Has Pled Numerous Violations of the Act, as Seen from the Perspective of the "Least Sophisticated Consumer."

C.    Defendants' Debt Collection Letter Violates 15 U.S.C. § 1692g(a)(4).

D.    Defendants' Debt Collection Letter Violates 15 U.S.C. §1692g(a)(5).

E.    Defendants Misrepresented Plaintiff's Right to Obtain a Copy of the Debt Verification or Judgment Against Her, in Violation of 15 U.S.C. §§ 1692e and 1692e(10).

F.    Defendants Misrepresented Plaintiff's Right to Obtain the Name and Address of the Original Creditor, If it Is Different than the Current Creditor, in Violation of 15 U.S.C. §§ 1692e and 1692e(10).

G.    This Court should award Plaintiff the maximum statutory damage amount of $1,000 under the FDCPA.

H.    Plaintiff Has a Statutory Right to Attorney's Fees and Costs.

## VI.  STATEMENT OF QUESTIONS PRESENTED

Have Defendants violated the Fair Debt Collection Practices Act?  If so, what is the amount of statutory damages that should be awarded to Plaintiff?

/ / /

/ / /

---

[25] *Anderson*, 477 U.S. at 248

[26] *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

[27] *Id.*, at 323-324.

---

**VII. ARGUMENT**

**A.    THE "LEAST SOPHISTICATED CONSUMER" STANDARD IS USED TO ANALYZE VIOLATIONS OF THE FDCPA**

The FDCPA states that its purpose, in part, is "to eliminate abusive debt collection practices by debt collectors."[28]  The statute is designed to protect consumers from unscrupulous collectors, whether or not there is a valid debt.[29]  The FDCPA broadly prohibits unfair or unconscionable collection methods; conduct which harasses, oppresses or abuses any debtor; and any false, deceptive or misleading statements, in connection with the collection of a debt.[30]  The FDCPA also requires the debt collector to provide the consumer with a notice of his or her validation rights.[31]

The United States Court of Appeals for the Ninth Circuit has held that whether a communication or other conduct violates the FDCPA is to be determined by analyzing it from the perspective of the "least sophisticated consumer."[32]  The "least sophisticated consumer" standard is objective—not subjective.[33]  Courts determine whether the "least sophisticated consumer" would be misled or deceived by the statements made in a collection letter as a matter of law.[34]

"The basic purpose of the least sophisticated consumer standard is to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd."[35]  "While protecting naive consumers, the standard also prevents liability for bizarre or idiosyncratic interpretations of collection notices

---

[28]  15 U.S.C. § 1692(e).

[29]  *Baker v. G.C. Services*, 677 F.2d 775, 777 (9th Cir. 1982).

[30]  15 U.S.C. §§ 1692d, 1692e, and 1692f.

[31]  15 U.S.C. § 1692g.

[32]  *Swanson v. Southern Oregon Credit Serv.*, 869 F.2d 1222, 1225 (9th Cir. 1988);  *Wade v. Regional Credit Ass'n*, 87 F.3d 1098, 1100 (9th Cir. 1996).

[33]  *Swanson*, 869 F.2d at 1227.

[34]  *Wade*, 87 F.3d at 1100;  *Terran v. Kaplan*, 109 F.3d 1428, 1432 (9th Cir. 1977);  *Swanson*, 896 F.2d at 1225-26.

[35]  *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2nd Cir. 1993).

1   by preserving a quotient of reasonableness and presuming a basic level of understanding and

2   willingness to read with care."[36]

3   　　　　"As the FDCPA is a strict liability statute, proof of one violation is sufficient to support

4   summary judgment for the plaintiff."[37]  "Because the Act imposes strict liability, a consumer need

5   not show intentional conduct by the debt collector to be entitled to damages."[38]  Furthermore, the

6   question of whether the consumer owes the alleged debt has no bearing on a suit brought pursuant

7   to the FDCPA.[39]

8   　　　　It is important to note that by protecting consumers from abusive, deceptive and unfair

9   collection practices, the FDCPA insures that those debt collectors who refrain from using abusive

10  debt collection practices are not competitively disadvantaged.[40]  Moreover, the FDCPA further

11  insures that regardless of whether a consumer owes a debt, he or she will be treated in a reasonable

12  and civil manner.[41]

13  　　　　Accordingly, Plaintiff asserts that whether or not Defendants violated the FDCPA must be

14  evaluated from the standpoint of the "least sophisticated consumer."

15  / / /

16  / / /

17

18  [36] *U.S. v. Nat'l Fin. Servs.*, 98 F.3d 131, 136 (4th Cir. 1996) (citations omitted);  *see also*

19  *Russell v. Equifax A.R.S.*, 74 F.3d 30 (2nd Cir. 1996);  *Bentley v. Great Lakes Collection Bureau*, 6
    F.3d 60 (2nd Cir. 1993);  *Jeter v. Credit Bureau*, 760 F.2d 1168 (11th Cir. 1985);  *Graziano v.*

20  *Harrison*, 950 F.2d 107, 111 (3rd Cir. 1991);  *Avila v. Rubin*, 84 F.3d 222, 226-27 (7th Cir. 1996)
    ("the standard is low, close to the bottom of the sophistication meter").

21

22  [37] *Cacace v. Lucas*, 775 F. Supp. 502, 505 (D. Conn. 1990);  *see also Stojanovski v. Strobl*
    *& Manoogian, P.C.*, 783 F. Supp. 319, 323 (E.D. Mich. 1992);  *Riveria v. MAB Collections*, 682 F.

23  Supp. 174, 178-9 (W.D.N.Y. 1988).

24  [38] *Russell*, 74 F.3d at 33;  *see also Taylor v. Perrin Landry, deLaunay & Durand*, 103 F.3d
    1232, 1236 (5th Cir. 1997);  *Bentley*, 6 F.3d at 62;  *Clomon*, 988 F.2d at 1318.

25

26  [39] *McCartney v. First City Bank*, 970 F.2d 45 (5th Cir. 1992);  *Baker*, 677 F.2d at 777.

27  [40] 15 U.S.C. § 1692(e).

28  [41] *Baker*, 677 F.2d at 777.

---

**B.  UNDER THE STRICT LIABILITY STANDARD OF THE FDCPA, PLAINTIFF HAS PLED NUMEROUS VIOLATIONS OF THE ACT, AS SEEN FROM THE PERSPECTIVE OF THE "LEAST SOPHISTICATED CONSUMER"**

To establish a violation of the FDCPA, one need only show that: (1) Plaintiff is a consumer, (2) Plaintiff has been the object of collection activity arising from a consumer debt, (3) Defendant collecting the "debt" is a "debt collector" as defined in the Act, and (4) Defendant has engaged in any act or omission in violation of the prohibitions or requirements of the Act.[42]  Plaintiff has pleaded and Defendants have admitted that: (1) Plaintiff is a consumer, (2) Defendants are debt collectors, and (3) Defendants were attempting to collect a consumer debt.  The remainder of this memorandum will show that the last element is also satisfied as a matter of law.

Because the FDCPA is a strict liability statute, proof of one violation is sufficient to defeat a motion to dismiss and support summary judgment for a Plaintiff.[43]  In light of this strict liability standard, a consumer need not show intentional conduct by the debt collector in order to be entitled to damages,[44] and there are no unimportant violations.[45]  Further, no proof of deception or actual damages is required to obtain statutory remedies.[46]

/ / /

----

[42]  *Turner v. Cook*, 362 F.3d 1219, 1227-1228 (9th Cir. 2004);  *Romine v. Diversified Collection Servs.*, 155 F.3d 1142, 1145 (9th Cir. 1998);  *De Coito v. Unifund Corp.*, 2004 U.S. Dist. LEXIS 23729 at *8 (D. HI January 4, 2004);  *United States v. Trans Continental Affiliates*, 1997 U.S. Dist. LEXIS 388 at *8 (N.D. Cal. January 8, 1997).

[43]  *See Hartman v. Meridian Financial Services, Inc.*, 191 F. Supp. 2d 1031, 1046-47 (W.D. Wis. 2002) ("One false or misleading statement in a collection letter renders the entire communication false or misleading and constitutes one violation");  *See also Cacace*, 775 F. Supp. at 505;  *Traverso v. Sharinn*, 1989 U.S. Dist. LEXIS 19100, *4 (D. Conn. Sept. 15, 1989);  *Picht v. Jon R. Hawks, Ltd.*, 236 F.3d 446, 451 (8th Cir. 2001);  *Bentley*, 6 F.3d at 62.

[44]  *See Pittman v. J.J. Mac Inttyre Co. of Nevada, Inc.*, 969 F. Supp. 609, 613 (D. Nev. 1997).  *See also Russell*, 74 F.3d at 36 ("Because the Act imposes strict liability, a consumer need not show intentional conduct by the debt collector to be entitled to damages.").

[45]  *Bentley*, 6 F.3d at 63 (no non-actionable violations of FDCPA);  *Taylor*, 103 F.3d at 1234 (failure "to comply with any provision of the FDCPA" leads to liability).

[46]  *Baker*, 677 F.2d at 780.

----

**C.     DEFENDANTS' DEBT COLLECTION LETTER VIOLATES 15 U.S.C. § 1692g(a)(4)**

15 U.S.C. § 1692g(a) sets forth requirements that a debt collector must comply with when providing notice of a debt to a consumer.  These requirements state:

> (a) Notice of debt; contents. Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing--
>
> > (1) the amount of the debt;
> >
> > (2) the name of the creditor to whom the debt is owed;
> >
> > (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
> >
> > (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
> >
> > (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.[47]

Defendants' initial collection letter to Plaintiff reads in relevant part as follows:

> Unless you notify us within THIRTY (30) days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid.  If you notify this office within THIRTY (30) days from receiving this notice, this office will: obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification.  If you request this office within THIRTY (30) days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

The second sentence above appears intended to provide the notice required by 15 U.S.C. § 1692g(a)(4), however, it fails for two reasons.  First, this sentence fails to inform the consumer that they must dispute the debt *in writing* to preserve her right to receive verification of the debt.  Second, the sentence fails to notify the consumer that any portion of the debt can be disputed to trigger the right to receive a verification.

---

[47] 15 U.S.C. § 1692g(a).

1    As to the first violation, the court in *McCabe v. Crawford & Company*,[48] found a violation

2  of § 1692g(a)(4) in a collection letter that read in relevant part:

3       Unless we hear from you within thirty (30) days after the receipt of this letter
        disputing this claim, Federal Law provides that this debt will be assumed to be valid
4       and owing. In the event you contact us and dispute the charges owed, we will
        promptly furnish you with any and all documentation to substantiate the claim.
5
6    The court held that:

7       Section 1692g(a) dictates that the debt collector shall send the consumer a written
        notice stating that upon *written* notification of a dispute, verification *must* be
8       provided by the debt collector. 15 U.S.C. § 1692g(a)(4). [Debt collector] correctly
        asserts that § 1692g(a)(4) does not expressly prevent the debt collector from
9       providing verification of the debt upon *oral* notification of the dispute. However,
        [debt collector] misses the point of the protection found in § 1692g(a)(4). Although
10      a debt collector *may* provide verification upon *oral* notification, the debt collector
        *must* provide verification upon *written* notification. If the debtor gives only *oral*
11      notification of the dispute, the FDCPA imposes no requirement on the debt collector
        to obtain verification of the debt. See *Fasten v. Zager*, 49 F. Supp. 2d 144, 149
12      (E.D.N.Y. 1999) (holding that the debt collector was not required to obtain
        verification upon oral notification of the dispute). Thus, by omitting the words "in
13      writing," [debt collector] did not effectively convey to the consumer his rights under
        the FDCPA and thus violated the Act.[49]

14   As to the second violation, the Ninth Circuit in *Baker v. G.C. Servs. Corp.*,[50] found a

15 violation of § 1692g(a)(4) in a collection letter that read in relevant part:

16      Verification of this debt, a copy of judgment or the name and address of the original
        creditor, if different from the current creditor, will be provided if requested in writing
17      within 30 days. Otherwise, the debt will be assumed to be valid.[51]

18   The court held that:

19      The clear language of the statute explicitly requires that a debtor shall be given
        notice that he may "dispute the validity of the debt, or any portion thereof . . . ." 15
20      U.S.C. § 1692g(a)(3). "In construing a statute we are obliged to give effect, if
        possible, to every word Congress used." *Reiter v. Sonotone Corp.*, 442 U.S. 330,
21      339, 99 S. Ct. 2326, 2331, 60 L. Ed. 2d 931 (1979). Congress clearly required the

22

23      [48] 272 F. Supp. 2d 736 (N.D. Ill. 2003).

24      [49] *Id.* at 738 (emphasis in original); *see also Bankston v. Phycom Corp.*, 2007 U.S. Dist.
   LEXIS 89284 (N.D. Cal. November 19, 2007) (J. Fogel); *Kreek v. Phycom Corporation*, 2007 U.S.
25 Dist. LEXIS 30652 at *7-8 (N.D. Cal. April 26, 2007) (J. Ware); *Chan v. North American
   Collectors, Inc.*, 2006 U.S. Dist. LEXIS 13353 at *13-20 (N.D. Cal. March 24, 2006) (J. Larson).
26
27      [50] 677 F.2d 775.

28      [51] *Id.* at 778.

1  notice to inform the debtor that he could dispute any portion of the debt.[52]

2  Because Defendants' initial collection letter contains two separate violations of 15 U.S.C.

3  § 1692g(a)(4), Plaintiff should be granted summary judgment on this issue.

4  **D.  DEFENDANTS' DEBT COLLECTION LETTER VIOLATES 15 U.S.C. §1692g(a)(5)**

5  As stated above, §1692(g)(a)(5) states that the debt collector must send the consumer a

6  written notice containing:

7  a statement that, upon the consumer's written request within the thirty-day period,
   the debt collector will provide the consumer with the name and address of the
8  original creditor, if different from the current creditor.

9  Defendants' initial collection letter to Plaintiff reads in relevant part as follows:

10  Unless you notify us within THIRTY (30) days after receiving this notice that you
   dispute the validity of this debt or any portion thereof, this office will assume this
11  debt is valid.  If you notify this office within THIRTY (30) days from receiving this
   notice, this office will: obtain verification of the debt or obtain a copy of a judgment
12  and mail you a copy of such judgment or verification. If you request this office
   within THIRTY (30) days after receiving this notice, this office will provide you
13  with the name and address of the original creditor, if different from the current
   creditor[53].

14

15  The last sentence in this paragraph appears intended to provide the notice required by 15

16  U.S.C. § 1692g(a)(5).  However, it fails because it does not inform the consumer that they must

17  make the request in writing.  In *Camacho v. Bridgeport Financial Inc.*, the Ninth Circuit Court of

18  Appeals recently held that "[t]he plain meaning of § 1692g is that debtors can trigger the rights . .

19  . under subsections (a)(4) and (a)(5) only through written dispute."[54]  Therefore, by omitting the

20  words "in writing," Defendants did not effectively convey to Plaintiff her rights under the FDCPA

21  and thus violated the Act.  Because of Defendants' clear violation of § 1692g(a)(5), Plaintiff should

22  be granted summary judgment on this issue.

23  / / /

24  / / /

25
26  [52] *Id.*

27  [53] Plaintiff's Declaration, Exhibit "1."

28  [54] *Camacho v. Bridgeport Fin., Inc.*, 430 F.3d 1078, 1081 (9th Cir. 2005)

1  **E.  DEFENDANTS MISREPRESENTED PLAINTIFF'S RIGHT TO OBTAIN A COPY**
2      **OF THE DEBT VERIFICATION OR JUDGMENT AGAINST HER, IN VIOLATION**
    **OF 15 U.S.C. §§ 1692e AND 1692e(10)**

3      15 U.S.C. § 1692e provides as follows:

4      A debt collector may not use any false, deceptive, or misleading representation or
    means in connection with the collection of any debt. Without limiting the general
5      application of the foregoing, the following conduct is a violation of this section:
    . . .
6          (10)  The use of any false representation or deceptive means to collect or
        attempt to collect any debt or to obtain information concerning a consumer.
7

8      As explained above, the June 4, 2007 collection letter from Defendants misrepresented

9  Plaintiff's right to request verification of the debt being collected, or any portion thereof.

10  Defendants' debt collection letter did not inform Plaintiff that she was required by the FDCPA to

11  request validation of the debt *in writing* to preserve her rights under the Act. This omission from

12  the required disclosures misrepresented Plaintiff's right to obtain a copy of the debt verification, and

13  thus violated 15 U.S.C. §§ 1692e and 1692e(10).

14  **F.  DEFENDANTS MISREPRESENTED PLAINTIFF'S RIGHT TO OBTAIN THE**
    **NAME AND ADDRESS OF THE ORIGINAL CREDITOR, IF IT IS DIFFERENT**
15      **THAN THE CURRENT CREDITOR, IN VIOLATION OF 15 U.S.C. §§ 1692e AND**
    **1692e(10)**
16

17      As shown above, Defendants' debt collection letter Defendants misrepresented Plaintiff's

18  right to request the name and address of the original creditor, is different from the current creditor.

19  Defendants' debt collection letter did not inform Plaintiff that she was required by the FDCPA to

20  request this information *in writing* to preserve her rights under the Act. This omission from the

21  required disclosures misrepresented Plaintiff's right to obtain the name and address of the original

22  creditor, and thus violated 15 U.S.C. §§ 1692e and 1692e(10).

23  **G.  THIS COURT SHOULD AWARD PLAINTIFF THE MAXIMUM STATUTORY**
    **DAMAGE AMOUNT OF $1,000 UNDER THE FDCPA**
24

25      The maximum statutory damage award available under the Federal FDCPA is a modest

26  $1,000. Courts have therefore awarded the maximum amount even when the violations found were

27

28

---

MEMORANDUM OF POINTS AND AUTHORITIES -12-      Case No. C07-03396-JW-PVT

less numerous and egregious than those herein.  For example, in *Riviera v. M.A.B.*,[55] the court awarded the maximum $1,000 because the validation notice appeared on the back of the letter, in relatively small print, with no reference to it on the front of the letter.  Thus, even though the notice was accurate, the court determined a $1,000 award was appropriate.  Here the notice is inaccurate in at least four (4) respects.  Furthermore, in *Tolentino v. Friedman*,[56] the Seventh Circuit upheld the maximum statutory award of $1,000 despite finding that only one provision of the FDCPA had been proven.  In that case the debt collector had included a disclosure required 15 U.S.C. § 1692e(11) in its initial notice, but had failed to include it in a subsequent notice.  The present case involves at least 4 violations of the federal FDCPA.  Thus, the violations herein are more numerous and meaningful than in those cases, and therefore the Court should award the maximum amount of statutory damages under 15 U.S.C. § 1692k(a)(2)(A), which is $1,000.

**H.    PLAINTIFF HAS A STATUTORY RIGHT TO ATTORNEY'S FEES AND COSTS**

The federal FDCPA directs a court to award attorney's fees to a prevailing consumer.[57]  A number of cases decided under 15 U.S.C. § 1692k have held that an award of attorney fees and costs is required if the plaintiff prevails.[58]  The Court should award the Plaintiff her reasonable attorney fees and costs incurred in this matter.

### VIII.  CONCLUSION

For the reasons set forth above, the Plaintiff, as a matter of law, is entitled to summary

---

[55]  682 F. Supp. 174 (W.D.N.Y. 1988).

[56]  46 F.3d 645 (7th Cir. 1995).

[57]  15 U.S.C. § 1692k(a)(3).

[58]  *See, e.g. Zagorski v. Midwest Billing Services, Inc.*, 178 F.3d 116 (7th Cir. 1997) (holding it was an abuse of discretion not to award attorney's fees following a stipulated judgment in the amount of $100; and directing the court to award fees sufficient to compensate the attorney for the time spent on the case in order to encourage enforcement of the FDCPA); *Pipiles v. Credit Bureau*, Inc., 886 F.2d 22 (2nd Cir. 1989) (directing trial court to award fees on remand despite the lack of actual or statutory damages because Plaintiff had demonstrated that Defendant violated the FDCPA); *Perez v. Perkiss*, 742 F.Supp. 883 (D.Del. 1990) (awarding Plaintiffs' legal services attorneys $10,110 after a half-day jury trial in which Plaintiff was awarded $1,200 in damages).

---

1  judgment: 1) declaring that Defendants' collection letter (Exhibit "1") violates the Fair Debt

2  Collection Practices Act,  15 U.S.C. §§ 1692e and 1692e(10), 1692g(a)(4) and 1692g(a)(5);  2)

3  awarding Plaintiff statutory damages in an amount not exceeding $1,000 pursuant to 15 U.S.C. §

4  1692k(a)(2)(A); 3) awarding Plaintiff the costs of this action and reasonable attorneys fees pursuant

5  to 15 U.S.C. § 1692k(a)(3);  and 4) awarding Plaintiff such other and further relief as may be just

6  and proper.

7                                                                CONSUMER LAW CENTER, INC.

8

9                                                                By: /s/ Fred W. Schwinn
                                                                      Fred W. Schwinn, Esq.
                                                                      Attorney for Plaintiff
10                                                                   PATRICIA CLAIRE BANKSTON

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    Fred W. Schwinn (SBN 225575)
     CONSUMER LAW CENTER, INC.
2    12 South First Street, Suite 1014
     San Jose, California  95113-2403
3    Telephone Number: (408) 294-6100
     Facsimile Number: (408) 294-6190
4    Email Address: fred.schwinn@sjconsumerlaw.com

5    Attorney for Plaintiff
     MANUEL LOPEZ REYES
6

7

8                  IN THE UNITED STATES DISTRICT COURT
                 FOR THE NORTHERN DISTRICT OF CALIFORNIA
9                       SAN FRANCISCO DIVISION

10   MANUEL LOPEZ REYES,                    Case No.  C07-00253-MJJ

11                         Plaintiff,       **MEMORANDUM OF POINTS AND**
                                            **AUTHORITIES IN SUPPORT OF**
12   v.                                     **MOTION FOR SUMMARY**
                                            **JUDGMENT, OR IN THE**
13   KENOSIAN & MIELE, LLP, a California    **ALTERNATIVE, PARTIAL**
     limited liability partnership, KENNETH JOHN  **SUMMARY ADJUDICATION**
14   MIELE, individually and in his official
     capacity,                             [Fed. R. Civ. P. 56 ]
15
                          Defendants.       Date:        December 4, 2007
16                                          Time:        9:30 a.m.
                                            Judge:       Honorable Martin J.
17                                                       Jenkins
                                            Courtroom:   11, 19th Floor
18                                          Place:       450 Golden Gate Avenue
                                                         San Francisco, California
19

20          COMES NOW the Plaintiff, MANUEL LOPEZ REYES (hereinafter "Plaintiff"), by and

21   through his attorney Fred W. Schwinn of the Consumer Law Center, Inc., and pursuant to Fed. R.

22   Civ. P. 56 and Civil L.R. 56-1, hereby submits his Memorandum of Points and Authorities in

23   Support of Motion for Summary Judgment filed herein.

24

25

26

27

28

# **TABLE OF CONTENTS**

Table of Contents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

I.     INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.    PROCEDURAL HISTORY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

III.   FACTS OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

IV.    STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

V.     STATEMENT OF QUESTIONS PRESENTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

VI.    ARGUMENTS AND AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

       A.     THE "LEAST SOPHISTICATED CONSUMER" STANDARD IS USED
              TO ANALYZE VIOLATIONS OF THE FDCPA . . . . . . . . . . . . . . . . . . . . . . 5

       B.     UNDER THE STRICT LIABILITY STANDARD OF THE FDCPA,
              DEFENDANTS HAVE COMMITTED NUMEROUS VIOLATIONS OF
              THE ACT, AS SEEN FROM THE PERSPECTIVE OF THE "LEAST
              SOPHISTICATED CONSUMER." . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

       C.     PLAINTIFF IS A "CONSUMER" AS THAT TERM IS DEFINED BY 15
              U.S.C. § 1692a(3); AND THE DEBT BEING COLLECTED BY
              DEFENDANTS WAS A "DEBT" AS THAT TERM IS DEFINED BY 15
              U.S.C. § 1692a(5) AND A "CONSUMER DEBT" AS THAT TERM IS
              DEFINED BY CAL. CIVIL CODE § 1788.2(f). . . . . . . . . . . . . . . . . . . . . . 8

       D.     DEFENDANTS HAVE VIOLATED NUMEROUS PROVISIONS OF THE
              FDCPA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

              1.     K&M MISREPRESENTED THE AMOUNT OF THE DEBT OWED
                     BY PLAINTIFF, VIOLATING 15 U.S.C. §§ 1692e, 1692e(2)(A),
                     1692e(5), 1692e(10) and 1692f(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

              2.     K&M  ATTEMPTED  TO  COLLECT  ATTORNEY  FEES
                     PURSUANT TO CAL. CIVIL CODE § 1717.5, VIOLATING 15
                     U.S.C. §§ 1692e, 1692e(2)(B), 1692e(5), 1692e(10), and 1692f(1). . . . 12

                     a.     K&M Could Not Lawfully Demand Attorney Fees
                            Pursuant to Cal. Civil Code § 1717.5 . . . . . . . . . . . . . . . . . . . . 12

                     b.     K&M Violated the FDCPA By Demanding Attorney
                            Fees Pursuant to Cal. Civil Code § 1717.5 . . . . . . . . . . . . . . . . 14

              3.     K&M  ATTEMPTED  TO  COLLECT  A  CONSUMER  DEBT
                     WHICH WAS NOT ASSIGNED TO THEIR CLIENT, UNIFUND
                     CCR PARTNERS, VIOLATING 15 U.S.C. §§ 1692e, 1692e(2)(A),
                     1692e(10), and 1692f(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

       E.     K&M HAS VIOLATED NUMEROUS PROVISIONS OF THE RFDCPA . . . 20

1              1.    KENOSIAN & MIELE IS A "DEBT COLLECTOR" WITHIN THE
                     MEANING OF CALIFORNIA CIVIL CODE § 1788.2(c)  . . . . . . . . . 20
2
              2.    KENOSIAN & MIELE HAS VIOLATED CAL. CIVIL CODE §
3                    1788.17 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

4              3.    KENOSIAN & MIELE HAS VIOLATED CAL. CIVIL CODE §§
                     1788.13(e) AND 1788.3(l) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
5
       F.    THIS COURT SHOULD AWARD PLAINTIFF THE MAXIMUM
6            STATUTORY DAMAGE AMOUNT OF $1,000 UNDER THE FDCPA . . . . . 22

7      G.    PLAINTIFF SHOULD BE AWARDED $1,000 UNDER CAL. CIVIL
             CODE § 1788.30(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
8
       H.    PLAINTIFF SHOULD BE AWARDED $1,000 UNDER CAL. CIVIL
9            CODE § 1788.17 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

10     I.    BOTH CONGRESS AND THE CALIFORNIA LEGISLATURE HAVE
             EXPRESSED THEIR INTENT THAT THE REMEDIES FOR
11           VIOLATIONS OF THE FDCPA AND RFDCPA BE CUMULATIVE . . . . . . . 23

12     J.    PLAINTIFF HAS A STATUTORY RIGHT TO ATTORNEY'S FEES AND
             COSTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
13
III.   CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>TABLE OF AUTHORITIES</u>**

**<u>Cases</u>**

*Ables v. JBC Legal Group, P.C.*, 227 F.R.D. 541 (N.D. Cal. 2005) . . . . . . . . . . . . . . . . . . 21, 24

*Alkan v. Citimortgage, Inc.*, 336 F. Supp. 2d 1061 (N.D. Cal. 2004) . . . . . . . . . . . . . . . . . . . . . 24

*American Nat. Bank of San Francisco v. A.G. Sommerville,* 191 Cal. 364 (1923) . . . . . . . . . . 14

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) . . . . . 4

*Aronow v. LaCroix et al.,* 219 Cal. App. 3d 1039 (Cal. Ct. App. 1990) . . . . . . . . . . . . . . . 18, 19

*Arp v. Blake,* 63 C.A. 362 (Cal. Ct. App. 1923) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Asch v. Teller, Levit & Silvertrust, P.C.*, 2003 U.S. Dist. LEXIS 16747
(N.D. Ill. September 23, 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

*Avila v. Rubin*, 84 F.3d 222 (7th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Baker v. G.C. Services*, 677 F.2d 775 (9th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 9

*Bank of America v. Pacific Ready-Cut Homes,* 122 C.A. 554 (Cal. Ct. App. 1932) . . . . . . . . . . 14

*Bentley v. Great Lakes Collection Bureau*, 6 F.3d 60 (2nd Cir. 1993) . . . . . . . . . . . . . . . . . . 6, 7, 9

*Berrington v. Williams,* 244 C.A.2d 130 (Cal. Ct. App. 1966) . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Brinson v. Linda Rose Joint Venture*, 53 F.3d 1044 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . 4

*Cacace v. Lucas*, 775 F. Supp. 502 (D. Conn. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 9

*Ceresino v. Fire Insurance Exchange*, 215 Cal. App. 3d 814 (Cal. Ct. App 1989) . . . . . . . . . 18

*Chapman v. ACB Business Services*, Inc., 1997 U.S. Dist. LEXIS 23743
(S.D. W.V. February 13, 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Clomon v. Jackson*, 988 F.2d 1314 (2nd Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 9

*De Coito v. Unifund Corp.*, 2004 U.S. Dist. LEXIS 23729 (D. HI January 4, 2004) . . . . . . . . . 7

*Dowling v. Litton Loan Servicing, LP.*, 2006 U.S. Dist. LEXIS 87098
(S.D. Ohio December 1, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

*Edstrom v. A.S.A.P. Collection Services*, 2005 U.S. Dist. LEXIS 2773
(N.D. Cal. February 22, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*EEOC v. Farmer Bros. Co.,* 31 F.3d 891 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Exxon Mobil Corporation, v. Saudi Basic Industries Corporation*, 544 U.S. 280,
125 S. Ct. 1517, 161 L. Ed. 2d 454 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20

*Francisco v. Aguirre*, 94 Cal. 180 (1892) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Garner v. Acad. Collection Serv.*, 2005 U.S. Dist. LEXIS 43266
(N.D. Ga. March 11, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Graziano v. Harrison*, 950 F.2d 107 (3rd Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Hartman v. Meridian Financial Services, Inc.*, 191 F. Supp. 2d 1031 (W.D. Wis. 2002) . . . . . . 9

*Jeter v. Credit Bureau*, 760 F.2d 1168 (11th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Johnson v. Fresno,* 111 C.A. 4th 1087 (Cal. Ct. App. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Lewis v. County of Sacramento*, 218 Cal. App. 3d 214 (Cal. Ct. App. 1990) . . . . . . . . . . . . . . 18

*Lowell Staats Mining Co. v. Philadelphia Electric Co.*, 878 F.2d 1271 (10th Cir. 1989) . . . . . . 17

*Lynch v. Glass*, 44 Cal. App. 3d. 943 (Cal. Ct. App. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Mann v. Acclaim*, 348 F. Supp. 2d 923 (S.D. Ohio 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Maracalin v. U.S.*, 52 Fed. Cl. 736 (2002), aff'd, 63 Fed. Appx. 494 (Fed. Cir. 2003),
*cert. denied*, 540 U.S. 868, 124 S. Ct. 189, 157 L. Ed. 2d 124 (2003) . . . . . . . . . . . . . . . . . . . . 16

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S. Ct. 1348,
89 L. Ed. 2d 538 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*McCartney v. First City Bank*, 970 F.2d 45 (5th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Menard, Inc. v. Liteway Lighting Products*, 2005 WI 98, 282 Wis. 2d 582,
698 N.W.2d 738 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Music Acceptance Corp. v. Lofing,* 32 C.A.4th 610 (Cal. Ct. App. 1995) . . . . . . . . . . . . . . . . 14

*Parker v. Funk,* 185 Cal. 347 (1921) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Perez v. Perkiss*, 742 F. Supp. 883 (D. Del. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Petromanagement Corp. v. Acme-Thomas Joint Venture*, 835 F.2d 1329 (10th Cir. 1988) . . . . 17

*Picht v. Jon R. Hawks, Ltd.*, 236 F.3d 446 (8th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Pipiles v. Credit Bureau*, Inc., 886 F.2d 22 (2d Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Pittman v. J.J. Mac Inttyre Co. of Nevada, Inc.*, 969 F. Supp. 609 (D. Nev. 1997) . . . . . . . . . . 9

*Reios v. Mardis,* 18 C.A. 276 (Cal. Ct. App.1912) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Riveria v. MAB Collections, Inc.*, 682 F. Supp. 174 (W.D.N.Y. 1988) . . . . . . . . . . . . . . . . . . 6, 22

*Ripley v. Storer*, 309 N.Y. 506, 132 N.E.2d 87 (1956) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Romine v. Diversified Collection Servs.*, 155 F.3d 1142 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . 7

*Royal Bank Export Finance Co. v. Bestways Distr. Co.,*
229 C.A.3d 764 (Cal. Ct. App. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

1    *Russell v. Equifax A.R.S.*, 74 F.3d 30 (2nd Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 9

2    *Sakuma v. First National Credit Bureau*, 1989 U.S. Dist. LEXIS 19120
     (D. HI. November 15, 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

3
     *Saucier v. Katz,* 533 U.S. 194, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001) . . . . . . . . . . . . . . . . 5
4
     *Schneider v. TRW, Inc.,* 938 F.3d 986 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
5
     *Stern v. Sunset Road Oil Co.,* 47 C.A. 334 (Cal. Ct. App. 1920) . . . . . . . . . . . . . . . . . . . . . . . 14
6
     *Stockton Wire Products, Inc. v. K-Lath Corp.,* 440 F.2d 782 (9th Cir. 1971) . . . . . . . . . . . . . . . 4
7
     *Stojanovski v. Strobl & Manoogian, P.C.*, 783 F. Supp. 319 (E.D. Mich. 1992) . . . . . . . . . . . . . 6
8
     *Swanson v. Southern Oregon Credit Serv.*, 869 F.2d 1222 (9th Cir. 1988) . . . . . . . . . . . . . . . . . 6
9
     *Taylor v. Perrin Landry, deLaunay & Durand*, 103 F.3d 1232 (5th Cir. 1997) . . . . . . . . . . . . 7, 9
10
     *Terran v. Kaplan*, 109 F.3d 1428 (9th Cir. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
11
     *Tolentino v. Friedman*, 46 F.3d 645 (7th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
12
     *Traverso v. Sharinn*, 1989 U.S. Dist. LEXIS 19100 at *4 (D. Conn. Sept. 15, 1989) . . . . . . . . 9
13
     *Turner v. Cook*, 362 F.3d 1219 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
14
     *T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Ass'n,*
15   809 F.2d 626 (9th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

16   *United States v. National Financial Services*, 98 F.3d 131 (4th Cir. 1996) . . . . . . . . . . . . . . . . . 6

17   *United States v. Trans Continental Affiliates*, 1997 U.S. Dist. LEXIS 388
     (N.D. Cal. January 8, 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
18
     *Zagorski v. Midwest Billing Services, Inc.*, 178 F.3d 116 (7th Cir. 1997) . . . . . . . . . . . . . . . . . 24
19
                                          **Statutes**
20
     15 U.S.C. § 1692(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7
21
     15 U.S.C. § 1692a(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
22
     15 U.S.C. § 1692a(5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
23
     15 U.S.C. § 1692d . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
24
     15 U.S.C. § 1692e . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 10, 14, 15, 22
25
     15 U.S.C. § 1692e(2)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11, 15, 22
26
     15 U.S.C. § 1692e(2)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 22
27
     11, 14, 15, 2215 U.S.C. § 1692e(5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 14, 15, 22
28

15 U.S.C. § 1692e(10) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12, 15, 16, 22

15 U.S.C. § 1692e(11) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

15 U.S.C. § 1692f . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

15 U.S.C. § 1692f(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 15, 16, 22

15 U.S.C. § 1692k(a)(2)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

15 U.S.C. § 1692k(a)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

15 U.S.C. § 1692n . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Cal. Civil Code § 1459 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Cal. Civil Code § 1717.5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13, 14, 15

Cal. Civil Code § 1717.5(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Cal. Civil Code § 1717.5(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Cal. Civil Code § 1788 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Cal. Civil Code § 1788.2(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 24

Cal. Civil Code § 1788.2(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Cal. Civil Code § 1788.13(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 23

Cal. Civil Code § 1788.13(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 22, 23

Cal. Civil Code § 1788.17 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 22, 23

Cal. Civil Code § 1788.30 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Cal. Civil Code § 1788.30(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Cal. Civil Code § 1788.30(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Cal. Civil Code § 1788.32 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Cal. Civil Pro. § 368 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

## Rules

Fed. R. Civ. P. 56(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Fed. R. Civ. P. 56(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 21, 25

Fed. R. Civ. P. 56(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

## Misc

6 Am. Jur. 2d *Assignments* §144 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

6 Am. Jur. 2d *Assignments* § 148 *et seq*. (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

7 Witkin Cal. Proc. *Judgment* § 392 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

29 Williston 4th, §74:47 *et seq*.. (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

47 Am. Jur. 2d *Judgments* § 464 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

47 Am. Jur. 2d *Judgments* § 474 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

47 Am. Jur. 2d *Judgments* § 478 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Corbin's Text on Contracts §892 *et seq*. (1952) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Restatement (Second) of Contracts §336 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

## I.  INTRODUCTION

This action was brought to redress Defendants, KENOSIAN & MIELE, LLP, and KENNETH JOHN MIELE, (hereinafter collectively referred to as "K&M") false, misleading and deceptive attempts to collect a consumer debt.  K&M violated the Federal Fair Debt Collection Practices Act (hereinafter "FDCPA") which prohibits debt collectors from engaging in unfair and deceptive practices.  Plaintiff contends that K&M violated the FDCPA by: (1) falsely representing the amount of the debt; (2) falsely representing compensation which may be lawfully received by K&M for the collection of the debt; (3) threatening to collect attorney's fees pursuant to Cal. Civil Code § 1717.5, an action that cannot legally be taken or that was not intended to be taken; (4) misrepresenting that Unifund CCR Partners was lawfully entitled to attorney's fees pursuant to Cal. Civil Code § 1717.5; (5) misrepresenting that Unifund CCR Partners was lawfully entitled to collect the debt owed to First USA Bank, N.A.; and (6) attempting to collect fees or other charges from Plaintiff that are not permitted by law.  Additionally, Plaintiff contends that K&M violated the California Rosenthal Fair Debt Collection Practices Act (hereinafter "RFDCPA").  For these violations of the FDCPA and RFDCPA, Plaintiff seeks an award of statutory damages and his reasonable attorney fees and costs incurred in this case.

## II.  PROCEDURAL HISTORY

On January 16, 2007, Plaintiff filed his Complaint in this case alleging violations of the FDCPA and RFDCPA.  (Doc. 1)  On March 2, 2007, Defendants filed their Answer to the Complaint.  (Doc. 5)  The discovery in this case closed on September 30, 2007.  (Doc. 20)

On October 24, 2007, Plaintiff filed his Motion for Summary Judgment in this case.

## III.  FACTS OF THE CASE

On a date in 1995 unknown to Plaintiff, Plaintiff opened a consumer credit card account issued by First USA Bank, N.A.  (Reyes Dec. ¶ 3)  Plaintiff used the First USA Bank credit card for a cash advance in the amount of $3,000 for the down payment on his home.  (Reyes Dec. ¶ 3; Schwinn Dec., Ex. "9" at 36:11-23)  The debt to First USA Bank was incurred primarily for personal, family or household purposes and is therefore a "debt" as that term is defined by 15 U.S.C. § 1692a(5) and a "consumer debt" as that term is defined by Cal. Civil Code § 1788.2(f).

1   In 2001, Plaintiff's father died and his mother became ill.  (Reyes Dec. ¶ 4)  Plaintiff was

2   required to travel to Mexico for his father's funeral and to care for his sick mother.  (Reyes Dec. ¶

3   4)  Without health insurance, the medical expenses associated with Plaintiff patents' medical care

4   were considerable.  (Reyes Dec. ¶ 4)  Plaintiff was no longer able to make payments on the debt

5   owed to First USA Bank after 2001 due to the cost of travel to Mexico and the payment of his

6   parent's medical expenses.  (Reyes Dec. ¶ 4)

7   Thereafter, Unifund CCR Partners allegedly purchased the debt and assigned it to Defendants

8   K&M for collection.  (Schwinn Dec., Ex. "8" at 43:12 to 44:12)  K&M sent a collection letter dated

9   July 26, 2005, to Plaintiff in an attempt to collect the debt owed to First USA Bank.  (Reyes Dec.

10  ¶ 5, Ex. "1")  The July 26, 2005, letter represented that Plaintiff owed $3,190.43 in accrued interest

11  and $3,985.85 in principle for a total amount of $7,176.28.  (Reyes Dec. ¶ 5, Ex. "1")  The July 26,

12  2005, letter was K&M's first written notice initially addressed to Plaintiff in connection with

13  collecting the debt owed to First USA Bank.  (Reyes Dec. ¶ 5, Ex. "1")

14  Thereafter, K&M sent a collection letter dated September 8, 2005, to Plaintiff in an attempt

15  to collect the debt owed to First USA Bank.  (Reyes Dec. ¶ 7, Ex. "2")   The collection letter dated

16  September 8, 2005, represented that Plaintiff owed $3,296.13 in accrued interest and principle in the

17  amount of $3,985.85 for a total amount of $7,281.98.  (Reyes Dec. ¶ 7, Ex. "2")

18  In September 2005, K&M communicated with Plaintiff's wife in an attempt to collect the

19  debt owed to First USA Bank.  (Reyes Dec. ¶ 9)  In response to this communication, Plaintiff's wife

20  made a $600 payment on the debt.  (Reyes Dec. ¶ 9;  Schwinn Dec., Ex "8" at 51:11 to 53:10, Ex.

21  "9" at 36:11-23)  In return, K&M agreed to freeze the accrual of interest on the debt.  (Reyes Dec.

22  ¶ 9; Schwinn Dec., Ex. "8" at 51:11 to 53:10)

23  Thereafter, K&M sent a collection letter to Plaintiff dated December 13, 2005, in an attempt

24  to collect the debt owed to First USA Bank.  (Reyes Dec. ¶ 10, Ex. "3")  The collection letter

25  represented that Plaintiff owed $3,295.43 in accrued interest and principle in the amount of

26  $3,385.85 for a total amount of $6,681.28.  (Reyes Dec. ¶ 10, Ex. "3")  The collection letter reflected

27  the $600 payment made by Plaintiff's wife and K&M's agreement to freeze the accrual of interest

28  on the debt.  (Reyes Dec. ¶ 9, Ex. "3"; Schwinn Dec., Ex. "8" at 51:11 to 53:10)

---

1    On or about January 25, 2006, K&M filed a lawsuit against Plaintiff in the Superior Court

2    of California, San Mateo County entitled *Unifund CCR Partners v. Manuel L. Reyes, et al.*, Case No.

3    CLJ-452482 (hereinafter "*Unifund v. Reyes*"). (Reyes Dec. ¶ 12, Ex "4")  The *Unifund v. Reyes*

4    complaint sought to collect $3,985.85 in damages, despite the fact that K&M had already received

5    a $600 payment from Plaintiff's wife.  (Reyes Dec., Ex. "4" at 3:24)  The *Unifund v. Reyes*

6    complaint also sought to collect pre-judgment interest at the rate of 22% per year from September

7    23, 2005, and "Attorney's fees of at least $293.15 and additional reasonable attorney's fees for

8    motions and/or if this case goes to mediation, arbitration or trial."  (Reyes Dec., Ex. "4" at 3:24 to

9    4:4)  The *Unifund v. Reyes* complaint was signed by Defendant, MIELE.  (Reyes Dec., Ex. "4" at

10   4:11)

11         The *Unifund v. Reyes* complaint stated as follows:

12         OWNERSHIP:  Before filing this lawsuit, plaintiff purchased all rights, title and
          interest in the obligation upon which this suit is brought and is the sole owner of the
13        account. <u>Reyes Dec.</u> Ex. "4" at 2:7-8; <u>Complaint</u> ¶ 14 (Doc. 1); <u>Answer</u> ¶ 14 (Doc.
          5).
14

15   The *Unifund v. Reyes* complaint alleged a cause of action based on Common Counts and an

16   entitlement to attorney's fees pursuant to Cal. Civil Code § 1717.5. (Reyes Dec., Ex. "4" at 3:3-5,

17   19-21; <u>Complaint</u> (Doc. 1) ¶ 18; <u>Answer</u> (Doc. 5) ¶ 18)

18         The *Unifund v. Reyes* parties exchanged discovery, and the matter was set for trial on January

19   3, 2007. (Schwinn Dec. ¶¶ 3 & 5)  At Trial, REYES defended the lawsuit by arguing that Unifund

20   was not assigned the debt owed to First USA Bank.  (Reyes Dec., Ex. "5" at 6:24-26)  The Court

21   reviewed the evidence presented and the law then ruled that Unifund CCR Partners had not shown

22   assignment of the debt owed to First USA Bank and could, therefore, take nothing on the *Unifund*

23   *v. Reyes* Complaint. (Schwinn Dec., Ex. "6" at 2:1-4, 2:16)  The San Mateo Court further ruled that

24   by attempting to collect a consumer debt without an assignment, Unifund CCR Partners had violated

25   15 U.S.C. § 1692e(2)(A) by mischaracterizing the legal status of the debt and Cal. Civil Code §

26   1788.13(l) for attempt to collect a debt that had not assigned to the debt collector.  (Schwinn Dec.,

27   Ex. "6" at 2:5-14; Reyes Dec., Ex. "5" at 20:8 to 21:3)

28         On January 16, 2007, Plaintiff filed the <u>Complaint</u> in the instant case against K&M, the

1    collection agency that was attempting to collect for Unifund CCR Partners the debt actually owed

2    to First USA Bank, alleging violations of the FDCPA and the RFDCPA.  <u>Complaint</u> (Doc. 1).

3    **IV.  STANDARD OF REVIEW**

4        The standard of review for a motion for summary judgment is that the moving party is

5    entitled to summary judgment when the evidence shows that there is no genuine issue of material

6    fact, and that the moving party is entitled to judgment as a matter of law.[1]  The Court must determine

7    "whether there is the need for a trial—whether, in other words, there are any genuine factual issues

8    that properly can be resolved only by a finder of fact because they may reasonably be resolved in

9    favor of either party."[2]  "Only disputes over facts that might affect the outcome of the suit under

10   governing law will . . . preclude summary judgment."  *Id*. at 248.  When the record taken as a whole

11   would not persuade a rational trier of fact to find for the nonmoving party, there is no genuine issue

12   for trial.[3]  In some cases, the evidence of the opposing party is so weak as to "fail[] to raise a

13   material issue of fact.[4]

14       The movant must carry this burden of "identifying those parts of the record that indicate the

15   absence of a genuine issue of material fact."[5]  Once this burden is met, the non-movant is required

16   to "come forward with specific facts showing that there is a genuine issue for trial" as to elements

17   essential to the movant's claim.[6]  The non-movant must show more than "some metaphysical doubt

18   as to the material facts;"[7] he or she must "set forth specific facts showing that there is a genuine

19   

_____

20       [1] Fed. R. Civ. P. 56(c);  *Stockton Wire Products, Inc. v. K-Lath Corp.,* 440 F.2d 782  (9th Cir.
     1971).

21   

22       [2] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 91 L. Ed. 2d 202
     (1986).

23       [3] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89

24   L. Ed. 2d 538 (1986).

25       [4] *EEOC v. Farmer Bros. Co.,* 31 F.3d 891, 906 (9th Cir. 1994).

26       [5] *Brinson v. Linda Rose Joint Venture*, 53 F.3d 1044, 1048 (9th Cir. 1995).

27       [6] *Schneider v. TRW, Inc.,* 938 F.3d 986, 991 (9th Cir. 1990).

28       [7] *Matsushita Elec. Indus. Co.,* 475 U.S. at 586.

_____

1    issue for trial." Fed. R. Civ. P. 56(e).

2        The Court must resolve all disputed facts and weigh all evidence "in the light most favorable

3    to the nonmoving party."[8]  However, the nonmoving party may not rely upon mere allegations or

4    denials contained in its pleadings or briefs, but must come forward with specific facts showing the

5    presence of a genuine issue for trial.[9]  One of the principal purposes of the summary judgment rule

6    is to isolate and dispose of factually unsupported claims or defenses, and the rule should be

7    interpreted in a way that allows it to accomplish this purpose.  *Id*. at 323-324.

8                    **V.  STATEMENT OF QUESTIONS PRESENTED**

9        1.    Did K&M falsely represent the amount of the debt in the *Unifund v. Reyes*

10             Complaint?

11       2.    Did K&M falsely represent the compensation which could be lawfully received for

12             collection of the debt owed to First USA Bank, N.A.?

13       3.    Did K&M threaten to take an action that cannot legally be taken or that was not

14             intended to be taken by attempting to collect attorney's fees pursuant to Cal. Civil

15             Code § 1717.5?

16       4.    Did K&M misrepresent that Unifund CCR Partners was lawfully entitled to

17             attorney's fees pursuant to Cal. Civil Code § 1717.5?

18       5.    Did K&M misrepresent that Unifund CCR Partners was lawfully entitled to collect

19             the debt owed to First USA Bank, N.A.?

20       6.    Did K&M attempt to collect fees or other charges from Plaintiff that are not

21             permitted by law?

22                    **VI.  ARGUMENTS AND AUTHORITIES**

23   **A.    THE "LEAST SOPHISTICATED CONSUMER" STANDARD IS USED TO
         ANALYZE VIOLATIONS OF THE FDCPA.**

24

25

26   _____

27   [8] *T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Ass'n,* 809 F.2d 626, 630-31
     (9th Cir. 1987).

28       [9] *Saucier v. Katz,* 533 U.S. 194, 212, n.2, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001).

_____

1    The FDCPA states that its purpose, in part, is "to eliminate abusive debt collection practices

2    by debt collectors."  15 U.S.C. § 1692(e).  The statute is designed to protect consumers from

3    unscrupulous collectors, whether or not there is a valid debt.[10]  The FDCPA broadly prohibits unfair

4    or unconscionable collection methods; conduct which harasses, oppresses or abuses any debtor; and

5    any false, deceptive or misleading statements, in connection with the collection of a debt.  15 U.S.C.

6    §§ 1692d, 1692e, and 1692f.

7    The United States Court of Appeals for the Ninth Circuit has held that whether a

8    communication or other conduct violates the FDCPA is to be determined by analyzing it from the

9    perspective of the "least sophisticated consumer."[11]  The "least sophisticated consumer" standard

10    is objective—not subjective.  *Id.* at 1227.  Courts determine whether the "least sophisticated

11    consumer" would be misled or deceived by the statements made as a matter of law.[12]

12    "The basic purpose of the least sophisticated consumer standard is to ensure that the FDCPA

13    protects all consumers, the gullible as well as the shrewd."[13]  "While protecting naive consumers,

14    the standard also prevents liability for bizarre or idiosyncratic interpretations of collection notices

15    by preserving a quotient of reasonableness and presuming a basic level of understanding and

16    willingness to read with care."[14]

17    "As the FDCPA is a strict liability statute, proof of one violation is sufficient to support

18    summary judgment for the plaintiff."[15]  "Because the Act imposes strict liability, a consumer need

19    ──────────────

20    [10]  *Baker v. G.C. Services*, 677 F.2d 775, 777 (9th Cir. 1982).

21    [11]  *Swanson v. Southern Oregon Credit Serv.*, 869 F.2d 1222, 1225 (9th Cir. 1988).

22    [12]  *Terran v. Kaplan*, 109 F.3d 1428, 1432 (9th Cir. 1977);  *Swanson*, 896 F.2d at 1225-26.

23    [13]  *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2nd Cir. 1993).

24    [14]  *United States v. National Financial Services*, 98 F.3d 131, 136 (4th Cir. 1996) (citations

25    omitted);  *See also Russell v. Equifax A.R.S.*, 74 F.3d 30 (2nd Cir. 1996);  *Bentley v. Great Lakes
Collection Bureau*, 6 F.3d 60 (2nd Cir. 1993);  *Jeter v. Credit Bureau*, 760 F.2d 1168 (11th Cir. 1985);

26    *Graziano v. Harrison*, 950 F.2d 107, 111 (3rd Cir. 1991);  *Avila v. Rubin*, 84 F.3d 222, 226-27 (7th
Cir. 1996) ("the standard is low, close to the bottom of the sophistication meter").

27

28    [15]  *Cacace v. Lucas*, 775 F. Supp. 502, 505 (D. Conn. 1990);  *See also Stojanovski v. Strobl
& Manoogian, P.C.*, 783 F. Supp. 319, 323 (E.D. Mich. 1992);  *Riveria v. MAB Collections, Inc.*,

1    not show intentional conduct by the debt collector to be entitled to damages."[16]  Furthermore, the

2    question of whether the consumer owes the alleged debt has no bearing on a suit brought pursuant

3    to the FDCPA.[17]

4           It is important to note that by protecting consumers from abusive, deceptive and unfair

5    collection practices, the FDCPA insures that those debt collectors who refrain from using abusive

6    debt collection practices are not competitively disadvantaged.  15 U.S.C. § 1692(e).  Moreover, the

7    FDCPA further insures that regardless of whether a consumer owes a debt, he or she will be treated

8    in a reasonable and civil manner.[18]

9           Accordingly, Plaintiff asserts that whether or not K&M violated the FDCPA must be

10   evaluated from the standpoint of the "least sophisticated consumer."

11   **B.    UNDER THE STRICT LIABILITY STANDARD OF THE FDCPA, DEFENDANTS
         HAVE COMMITTED NUMEROUS VIOLATIONS OF THE ACT, AS SEEN FROM**
12       **THE PERSPECTIVE OF THE "LEAST SOPHISTICATED CONSUMER."**

13          To establish a violation of the FDCPA, one need only show that: (1) Plaintiff is a consumer,

14   (2) Plaintiff has been the object of collection activity arising from a consumer debt, (3) Defendant

15   collecting the "debt" is a "debt collector" as defined in the Act, and (4) Defendant has engaged in

16   any act or omission in violation of the prohibitions or requirements of the Act.[19]  Plaintiff has

17   pleaded and Defendants have admitted that the law firm K&M and Defendant MIELE are debt

18   collectors.[20]  The remainder of this memorandum will show that the other three elements are also

19

20   682 F. Supp. 174, 178-9 (W.D.N.Y. 1988).

21          [16] *Russell*, 74 F.3d at 33;  *See also Taylor v. Perrin Landry, deLaunay & Durand*, 103 F.3d
22   1232, 1236 (5th Cir. 1997);  *Bentley*, 6 F.3d at 62;  *Clomon*, 988 F.2d at 1318.

23          [17] *McCartney v. First City Bank*, 970 F.2d 45 (5th Cir. 1992);  *Baker*, 677 F.2d at 777.

24          [18] *Baker*, 677 F.2d at 777.

25          [19]  *Turner v. Cook*, 362 F.3d 1219, 1227-1228 (9th Cir. 2004);  *Romine v. Diversified
26   Collection Servs.*, 155 F.3d 1142, 1145 (9th Cir. 1998); *De Coito v. Unifund Corp.*, 2004 U.S. Dist.
27   LEXIS 23729 at *8 (D. HI January 4, 2004);  *United States v. Trans Continental Affiliates*, 1997
     U.S. Dist. LEXIS 388 at *8 (N.D. Cal. January 8, 1997).

28          [20]  <u>Complaint</u> (Doc. 1) ¶¶ 7, 8, 23 & 24; <u>Answer</u> (Doc. 5) ¶¶ 7, 8, 23 & 24.

1   satisfied as a matter of law.

2   **C.    PLAINTIFF IS A "CONSUMER" AS THAT TERM IS DEFINED BY 15 U.S.C. §
         1692a(3); AND THE DEBT BEING COLLECTED BY DEFENDANTS WAS A
3         "DEBT" AS THAT TERM IS DEFINED BY 15 U.S.C. § 1692a(5) AND A
         "CONSUMER DEBT" AS THAT TERM IS DEFINED BY CAL. CIVIL CODE §
4         1788.2(f).**

5       To prove his claims under the FDCPA, Plaintiff must show that he is a "consumer" as that

6   term is defined by 15 U.S.C. § 1692a(3).  Plaintiff must also show that Defendants were attempting

7   to collect a "debt" as that term is defined by 15 U.S.C. § 1692a(5).  Finally, to prove his claims

8   under the RFDCPA, Plaintiff must show that Defendants were attempting to collect a "consumer

9   debt" as that term is defined by Cal. Civil Code § 1788.2(f).

10      In the *Unifund v. Reyes* case, K&M were attempting to collect a debt owed to First USA

11  Bank, N.A., which was assigned the account number 4266-8599-9753-2049.  (Reyes Dec., Exhibit

12  "4" at 2:11-15)  On September 27, 2007, Defendants took the deposition of Plaintiff.  (Schwinn Dec.

13  ¶ 7, Ex. "9")  At his deposition, Plaintiff testified that he incurred the debt to First USA Bank, N.A.,

14  in the form of a cash advance which was used for the down-payment toward the purchase of his

15  home.  (Schwinn Dec., Ex. "9" at 36:11-23)  K&M has no evidence to dispute that the debt owed

16  to First USA Bank, N.A., was incurred for purposes other than for Plaintiff's "personal, family, or

17  household purposes."  Defendant MIELE admitted in his deposition that he is collecting consumer

18  credit card receivables on behalf of Unifund CCR Partners in the overwhelming majority of lawsuits

19  filed by K&M for Unifund CCR Partners.  (Schwinn Dec., Ex. "8" at 72:23 to 73:13)  In fact,

20  Defendant MIELE testified that the Plaintiff's debt owed to First USA Bank, N.A., "was a consumer

21  credit card account.  (Schwinn Dec., Ex "8" at 73:14-16)  There is no factual dispute that Plaintiff

22  is a "consumer" and that K&M was attempting to collect a "debt" as that term is defined by the

23  FDCPA and a "consumer debt" as that term is defined by the RFDCPA.  Therefore, Plaintiff is

24  entitled to summary judgment or summary adjudication on these threshold elements pursuant to Fed.

25  R. Civ. P. 56(d).

26  **D.    DEFENDANTS HAVE VIOLATED NUMEROUS PROVISIONS OF THE FDCPA.**

27      Because the FDCPA is a strict liability statute, proof of one violation is sufficient to support

28

1    summary judgment for a Plaintiff.[21]  In light of this strict liability standard, a consumer need not

2    show intentional conduct by the debt collector in order to be entitled to damages,[22] and there are no

3    unimportant violations.[23]  Further, no proof of actual deception or actual damages is required to

4    obtain statutory remedies.[24]

5    **1.    K&M MISREPRESENTED THE AMOUNT OF THE DEBT OWED BY PLAINTIFF, VIOLATING 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(5), 1692e(10) and 1692f(1)**

6

7        K&M's initial collection letter to Plaintiff dated July 26, 2005, stated that the total amount

8    owed on the First USA Bank, N.A. ("Bank One"), account was $7,176.28 of which $3,190.43 was

9    accrued interest, thus the principle amount was $3,985.85.  (Reyes Dec. ¶ 5, Ex. "1")  As interest

10   accrued on the account, the total amount alleged to be due increased to $7,281.98 by September 8,

11   2005.  (Reyes Dec. ¶ 7, Ex. "2")  Thereafter, Plaintiff's wife made a $600 payment on the debt and

12   K&M agreed to freeze the interest on the account.  (Reyes Dec. ¶ 9; Schwinn Dec., Exhibit "8" at

13   52:20 to 53:1, Ex. "9" at 34:10-25)  The $600 payment is evidenced in the December 13, 2006,

14   collection letter K&M sent to Plaintiff.  (Reyes Dec. ¶ 10, Ex. "3")  This collection letter shows the

15   total balance was is reduced to $6,681.28—exactly $600 less than the previous balance alleged of

16   $7,281.98.  (Reyes Dec. ¶ 10, Ex. "3"; Schwinn Dec., Ex. "8" at 53:6-10)  This letter also shows that

17   the accrued interest had decreased to by $.70 to $3,295.43—evidence of the interest freeze promised

18   by K&M—therefore, the remaining $599.30 of the $600 payment was applied to principal.  (Reyes

19   Dec. ¶¶ 9 & 10, Ex "3")

20

21       [21] *See Hartman v. Meridian Financial Services, Inc.*, 191 F. Supp. 2d 1031, 1046-47 (W.D. Wis. 2002) ("One false or misleading statement in a collection letter renders the entire

22   communication false or misleading and constitutes one violation"); *See also, Cacace*, 775 F. Supp. at 505; *Traverso v. Sharinn*, 1989 U.S. Dist. LEXIS 19100 at *4 (D. Conn. Sept. 15, 1989); *Picht

23   v. Jon R. Hawks, Ltd.*, 236 F.3d 446, 451 (8th Cir. 2001); *Bentley*, 6 F.3d at 62.

24       [22] *See Pittman v. J.J. Mac Inttyre Co. of Nevada, Inc.*, 969 F. Supp. 609, 613 (D. Nev. 1997);

25   *See also Russell*, 74 F.3d at 36 ("Because the Act imposes strict liability, a consumer need not show intentional conduct by the debt collector to be entitled to damages.").

26       [23] *Bentley*, 6 F.3d at 63 (no non-actionable violations of FDCPA); *Taylor*, 103 F.3d at 1234

27   (failure "to comply with any provision of the FDCPA" leads to liability).

28       [24] *Baker*, 677 F.2d at 780;  *Clomon*, 988 F.2d at 1319.

MEMORANDUM OF POINTS AND AUTHORITIES   -9-                Case No.  C07-00253-MJJ

1    Thereafter, on January 25, 2006, K&M filed the *Unifund v. Reyes* Complaint against Plaintiff

2    in the Superior Court of California, County of San Mateo, in an attempt to collect the debt owed to

3    First USA Bank, N.A.  (Reyes Dec., Ex. "4")  In the *Unifund v. Reyes* Complaint, K&M sought

4    damages in the amount of $3,985.85.  (Reyes Dec., Ex. "4" at 3:24)  The amount sought by K&M

5    does not reflect the $600 payment made by Plaintiff's wife in September 2005.  In fact, Defendant

6    MIELE testified at his deposition that the amount he sought in the *Unifund v. Reyes* Complaint came

7    directly from the data he received from Unifund CCR Partners, therefore, the amount sought could

8    not have been reduced by a subsequent payment by Plaintiff's wife to K&M.  (Schwinn Dec., Ex

9    "8" at 112: 22 to 113:17)  By falsely stating the amount owed by Plaintiff in the *Unifund v. Reyes*

10   Complaint, K&M violated the FDCPA.

11   <u>K&M Violated 15 U.S.C. § 1692e</u>

12   15 U.S.C. § 1692e states "A debt collector may not use any false, deceptive, or misleading

13   representation or means in connection with the collection of any debt."  By demanding an inflated

14   principal amount in the *Unifund v. Reyes* Complaint, K&M used a "false, deceptive, or misleading

15   representation" in connection with the collection of the debt originally owed to First USA Bank.

16   Therefore, K&M violated 15 U.S.C. 1692e.

17   <u>K&M violated 15 U.S.C. 1692e(2)(A)</u>

18   The Federal District Court for the Southern District of Ohio found a violation of 1692e(2)(A)

19   under similar circumstances in *Dowling v. Litton Loan Servicing, LP*.[25]  In *Dowling*, the defendant

20   sent the consumer plaintiff a letter on April 22, 2004, which stated that the consumer was delinquent

21   on mortgage loan payments for March and April 2004 and owed a total of $1,659.34 in back

22   payments.  *Id* at 20.  However, "[b]y Defendant's own admission, it had received a loan payment

23   from Plaintiff on April 6, 2004, which it applied to the March 2004 payment period."  *Id.*  Therefore,

24   the debt collector's April 22, 2004, letter should have indicated that the consumer's account  was

25   only one month past due.  *Id.*  "Correspondingly, the amount of money Plaintiff allegedly owed

26   Defendant should have been half of the amount provided in the April 22, 2004 letter."  *Id* at 20-21.

27   ───────────────

28   [25] 2006 U.S. Dist. LEXIS 87098 (S.D. Ohio December 1, 2006).

1   The court ruled in favor of the consumer on summary judgment because "[w]hen Defendant

2   mischaracterized the amount Plaintiff owed it in its April 22, 2004 letter, Defendant violated 15

3   U.S.C. § 1692e(2)(A)."[26]

4   Similarly, K&M misrepresented the principal amount of the debt in the *Unifund v. Reyes*

5   Complaint by failing to credit the account $600 for the payment made in September 2005 by

6   Plaintiff's wife.  Therefore, K&M has violated 15 U.S.C. § 1692e(2)(A).

7   <u>K&M violated 15 U.S.C. § 1692e(5)</u>

8   By falsely representing the principal amount of the debt, K&M attempted to collect a

9   principal amount larger than that which could legally be collected, in violation of 15 U.S.C. §

10   1692e(5).  This is supported by the holding of the Federal District Court for the Southern District

11   of Ohio's decision in *Dowling v. Litton Loan Servicing, LP,* discussed above.  The Court in *Dowling*

12   held that the defendant's actions had not only violated 15 U.S.C. § 1692e(2)(A), but also 15 U.S.C.

13   § 1692e(5):

14   > Similarly, Defendant violated 15 U.S.C. § 1692e(5) when it served Plaintiff directly
15   > with two formal notices, dated May 4, 2004 and May 24, 2004, titled "NOTICE OF
16   > DEFAULT AND INTENT TO ACCELERATE."  Those notices represented that
16   > Plaintiff's loan was in default, and they threatened to accelerate her loan and
     > commence foreclosure if Plaintiff did not pay Defendant immediately the $1,659.34
17   > it claimed it was entitled to in the April 22, 2004 letter.  Because the Court finds that
     > the amount Defendant claimed Plaintiff owed is inaccurate, even under Defendant's
18   > own version of the facts, Defendant's formal notices, dated May 4, 2004 and May
     > 24, 2004, constitute violations of 15 U.S.C. § 1692e(5).  *Id* at 21.

19   K&M attempted to collect principal amounts which legally could not be collected, thereby

20   violating 15 U.S.C. § 1692e(5).

21   <u>K&M Violated 15 U.S.C. § 1692e(10)</u>

22   K&M falsely represented the principal amount of the debt in the *Unifund v. Reyes* Complaint

23   _____

24   [26] *Id.* at 21, *see also, Asch v. Teller, Levit & Silvertrust, P.C.*, 2003 U.S. Dist. LEXIS 16747
     at *16 (N.D. Ill. September 23, 2003) (Debt Collector purposefully delayed crediting accounts when
25   payments were received in order to collect additional interest, the court determined that this false
     representation violated 15 U.S.C. §§ 1692e(2) and 1692e(10).); *Garner v. Acad. Collection Serv.*,
26   2005 U.S. Dist. LEXIS 43266 at *2-3 (N.D. Ga. March 11, 2005) (Debt collector misrepresented
27   the character amount or legal status of consumers debt in violation of 15 U.S.C. § 1692e(2)(A) by
     reporting a balance as owing to the original creditor and subsequent collector, despite receiving
28   payment in full.)

1  and failed to apply the $600 payment made on the account.  This constitutes a false representation

2  in an attempt to collect a consumer debt in violation of 15 U.S.C. § 1692e(10).[27]

3  K&M violated 15 U.S.C. § 1692f(1)

4       K&M attempted to collect $599.30 in principal that they knew was not owed.  In doing so,

5  K&M used unfair and unconscionable means to attempt to collect a consumer debt—attempting to

6  collect an amount that was not owed, in violation of 15 U.S.C. § 1692f(1).

7       **2.    K&M ATTEMPTED TO COLLECT ATTORNEY FEES PURSUANT TO CAL. CIVIL CODE § 1717.5, VIOLATING 15 U.S.C. §§ 1692e, 1692e(2)(B), 1692e(5), 1692e(10), and 1692f(1).**

8

9       K&M demanded attorney fees pursuant to Cal. Civil Code § 1717.5 in the *Unifund v. Reyes*

10  Complaint filed on January 25, 2005.  However, the plain language of Cal. Civil Code § 1717.5

11  provides that attorney fees are not available to Unifund CCR Partners or K&M under this provision.

12  K&M violated the FDCPA by demanding and falsely representing entitlement to attorney fees

13  pursuant to Cal. Civil Code § 1717.5.

14       **a.    K&M Could Not Lawfully Demand Attorney Fees Pursuant to Cal. Civil Code § 1717.5**

15       First, K&M could not lawfully demand attorney fees pursuant to Cal. Civil Code § 1717.5

16  because the debt was based on a contract which otherwise provided for attorney fees.  Cal. Civil

17  Code § 1717.5(a) states:

18       (a)  Except as otherwise provided by law or where waived by the parties to an agreement, in any action on a contract based on a book account . . . *which does not provide for attorney's fees and costs* . . . the party who is determined to be the party prevailing on the contract shall be entitled to reasonable attorney's fees, as provided below, in addition to other costs. . . . (Emphasis added)

19

20

21       During discovery in the *Unifund v. Reyes* case, a Cardmember Agreement for Plaintiff's debt

22  was produced.  This agreement specifically states:

23       Default/Collection Costs: As permitted by applicable law, you agree to pay all collection expenses actually incurred by us in the collection of amounts you owe under this Agreement (including court costs and the fees of any collection agency to which we refer your Account) and, in the event we refer your Account after your default to an attorney who is not our regularly salaried employee, you agree to pay

24

25

26

27       [27] *Asch*, 2003 U.S. Dist. LEXIS 16747 at *16 (Debt Collector purposefully delayed crediting accounts when payments were received in order to collect additional interest, the court determined that this false representation violated 15 U.S.C. §§ 1692e(2) and 1692e(10)).

28

the reasonable fees of such attorney.

…

Assignment: We may at any time assign your Account, any sums due on your Account, this Agreement or our rights or obligations under the Agreement.  The person(s) to whom we make any such assignment shall be entitled to all of our rights under this Agreement, to the extent assigned.  Schwinn Reyes Ex. "7."

Because the agreement which created the debt provided for attorney fees, Cal. Civil Code § 1717.5 was not an available remedy in the *Unifund v. Reyes* case.

Secondly, an assignee does not obtain greater rights than its assignor.  Therefore, Unifund CCR Partners and its attorney K&M were barred from lawfully demanding attorney fees under Cal. Civil Code § 1717.5, just as Unifund CCR Partners' assignor, First USA Bank, N.A., would have been.  Cal. Civil Code § 1717.5(c) states:

(c)  This section does not apply to any action in which a bank, a savings association, a federal association, a state or federal credit union, or a subsidiary, affiliate, or holding company of any of those entities, or an authorized industrial loan company, a licensed consumer finance lender, or a licensed commercial finance lender, is a party.

It would be unlawful for First USA Bank, N.A., (a national banking association)[28] to demand attorney fees pursuant to Cal. Civil Code § 1717.5.  Therefore, any assignee of First USA Bank, N.A., is similarly limited.  The black letter law principle states that "an assignor cannot confer upon his assignee any greater right than he himself had in the property . . ."[29]  Because Unifund CCR Partners' rights were purportedly assigned to it by First USA Bank, N.A., neither Unifund CCR Partners or K&M could lawfully demand attorney fees pursuant to Cal. Civil Code § 1717.5.

Finally, Unifund CCR Partners and K&M could not lawfully demand attorney fees pursuant to Cal. Civil Code § 1717.5 because, as a purported assignee, Unifund CCR Partners was subject to all claims or defenses which could have been brought against its assignor, First USA Bank, N.A.  The common law principle of assignments is that "[t]he assignment merely transfers the interest of the assignor.  The assignee 'stands in the shoes' of the assignor, taking his or her rights and remedies, subject to any defenses that the obligor has against the assignor prior to notice of the

---

[28]  Complaint (Doc. 1) ¶ 16; Answer (Doc. 5) ¶ 16.

[29]  *Francisco v. Aguirre*, 94 Cal. 180, 182 (1892).

1    assignment."[30]

2         Accordingly, K&M could not demand attorney fees pursuant to Cal. Civil Code § 1717.5

3    because, as an assignee of First USA Bank, N.A., Unifund CCR Partners was subject to the claims

4    and defenses which could be asserted against First USA Bank, N.A., by Plaintiff.  If Unifund CCR

5    Partners "stands in the shoes" of First USA Bank, N.A., Plaintiff has a valid defense to a claim of

6    attorney fees pursuant to Cal. Civil Code § 1717.5 as that provision does not apply to banks or to

7    actions based on contracts with attorney fee provisions.

8              **b.    K&M Violated the FDCPA By Demanding Attorney Fees Pursuant to
                      Cal. Civil Code § 1717.5**

9    K&M Violated 15 U.S.C. § 1692e

10        15 U.S.C. § 1692e states "A debt collector may not use any false, deceptive, or misleading

11   representation or means in connection with the collection of any debt."  K&M falsely represented

12   that they could lawfully demand attorney fees pursuant to Cal. Civil Code § 1717.5, thereby using

13   a "false, deceptive, or misleading representation" in connection with the collection of the consumer

14   debt originally owed to First USA Bank, N.A.  This states a violation of 15 U.S.C. 1692e.

15   K&M violated 15 U.S.C. 1692e(2)(B)

16        K&M falsely represented that they could lawfully demand attorney fees pursuant to Cal.

17   Civil Code § 1717.5.  By doing so, K&M made a "false representation of . . . compensation which

18   may be lawfully received" for the collection of the debt originally owed to First USA Bank, N.A.,

19   thereby violating 15 U.S.C. § 1692e(2)(B).

20   K&M violated 15 U.S.C. § 1692e(5)

21        K&M falsely represented that they could lawfully demand attorney fees pursuant to Cal.

22

23        [30] Cal. Civil Code § 1459; Cal. Civil Pro. § 368;  *Parker v. Funk,* 185 Cal. 347, 352 (1921);
     *American Nat. Bank of San Francisco v. A.G. Sommerville,* 191 Cal. 364, 370 (1923);  *Reios v.*
24   *Mardis,* 18 C.A. 276, 279 (Cal. Ct. App.1912);  *Stern v. Sunset Road Oil Co.,* 47 C.A. 334, 341
     (Cal. Ct. App. 1920); *Arp v. Blake,* 63 C.A. 362, 366 (Cal. Ct. App. 1923);  *Bank of America v.*
25   *Pacific Ready-Cut Homes,* 122 C.A. 554, 560 (Cal. Ct. App. 1932);  *Berrington v. Williams,* 244
     C.A.2d 130, 135 (Cal. Ct. App. 1966);  *Royal Bank Export Finance Co. v. Bestways Distr. Co.,* 229
26   C.A.3d 764, 768, (Cal. Ct. App. 1991);  *Music Acceptance Corp. v. Lofing,* 32 C.A.4th 610, 622
     (Cal. Ct. App. 1995);  *Johnson v. Fresno,* 111 C.A. 4th 1087, 1096 (Cal. Ct. App. 2003);
27   Restatement (Second) of Contracts §336 (1981);  Corbin's Text on Contracts §892 *et seq.* (1952);
     29 Williston 4th, §74:47 *et seq.*. (1990); 6 Am. Jur. 2d *Assignments* §§144, 148 *et seq.* (1999).
28

1  Civil Code § 1717.5.  By doing so, K&M threatened to collect attorney fees which could not legally

2  be collected, thereby violating 15 U.S.C. § 1692e(5).

3  K&M Violated 15 U.S.C. § 1692e(10)

4        K&M falsely represented that they could lawfully demand attorney fees pursuant to Cal.

5  Civil Code § 1717.5.  By doing so, K&M violated 15 U.S.C. § 1692e(10).

6  K&M violated 15 U.S.C. § 1692f(1)

7        K&M demanded attorney fees which could not be lawfully demanded.  By doing so, K&M

8  used unfair and unconscionable means to attempt to collect a debt and attempted to collect fees

9  which were not permitted by law, in violation of 15 U.S.C. § 1692f(1).

10      **3.**    **K&M ATTEMPTED TO COLLECT A CONSUMER DEBT WHICH WAS NOT ASSIGNED TO THEIR CLIENT, UNIFUND CCR PARTNERS, VIOLATING 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(10), and 1692f(1).**

12        The *Unifund v. Reyes* case went to trial on January 3, 2007.  (Reyes Dec. ¶ 14, Ex. "5")  At

13  that trial, the Honorable Carol L. Mittlesteadt found that Unifund CCR Partners was attempting to

14  collect a debt which had not been assigned to it.  The court stated on the record at trial the following:

15      Based on the evidence that has been submitted both by way of the declaration of Dave Johnson filed on behalf of the plaintiff and by way of the offers of proof that I have received, the offer of proof that I have received here in open court on the record by stipulation of counsel, it appears to me that the evidence does not establish that Unifund CCR Partners, the plaintiff in this action, is the legal owner of this account.  (Reyes Dec., Ex. "5" at 21:15-22)

19        K&M attempted to collect a debt on behalf of Unifund CCR Partners, even though Unifund

20  CCR Partners had not been assigned rights to the debt.  By doing so, K&M violated several sections

21  of the FDCPA.

22  K&M Violated 15 U.S.C. § 1692e

23        15 U.S.C. § 1692e states "A debt collector may not use any false, deceptive, or misleading

24  representation or means in connection with the collection of any debt."  By filing a lawsuit and

25  attempting to collect a debt which was not assigned to its client, K&M used "false, deceptive or

26  misleading" means to collect a debt, violating 1692e.

27  K&M violated 15 U.S.C. 1692e(2)(A)

28        K&M falsely represented in the *Unifund v. Reyes* Complaint that the debt was assigned to

1  Unifund CCR Partners when the debt had not been.  By doing so, K&M misrepresented the "legal

2  status" of the debt, in violation of 15 U.S.C. § 1692e(2)(A).

3  <u>K&M Violated 15 U.S.C. § 1692e(10)</u>

4      K&M falsely represented that Unifund CCR Partners was the lawful owner of the debt in the

5  *Unifund v. Reyes* Complaint, in violation of 15 U.S.C. § 1692e(10).

6  <u>K&M violated 15 U.S.C. § 1692f(1)</u>

7      K&M falsely represented that Unifund CCR Partners was the lawful owner of the debt in the

8  *Unifund v. Reyes* Complaint.  By attempting to collect a debt that was not lawfully due to its client,

9  K&M attempted to collect amounts that were expressly authorized or permitted by law, in violation

10  of 15 U.S.C. § 1692f(1).

11  <u>The Principals of Res Judicata Apply in the Case</u>

12      K&M will attempt to argue that the San Mateo Court's decision in the *Unifund v. Reyes* case

13  does not bind K&M in this case.  K&M will also attempt to show that Unifund CCR Partners was

14  actually assigned the debt.  However, any attempt by K&M to relitigate the issue of Unifund CCR

15  Partners' assignment is barred by the principle of res judicata.

16      "'[R]es judicata' or 'claim preclusion' refers to the effect of a prior judgment in preventing

17  a litigant from reasserting or relitigating a claim that has already been decided on the merits by a

18  court of competent jurisdiction, whether relitigation of the claim raises the same issues as the earlier

19  suit."[31]  In order for a prior judgment to act as a bar in a subsequent lawsuit, three requirements must

20  be met: (1) the causes of action in two suits must be identical or be based on the same set of

21  operative facts; (2) there must have been a final judgment on the merits in a court of competent

22  jurisdiction; and (3) the parties or their privies in prior and present suits must be identical.[32]

23      The causes of action in the *Unifund v. Reyes* case and in the present case are based on the

24

25      [31] 47 Am. Jur. 2d *Judgments* § 464 (2007).

26      [32] 47 Am. Jur. 2d *Judgments* § 474 (2007), *citing*, *Menard, Inc. v. Liteway Lighting

27  Products*, 2005 WI 98, 282 Wis. 2d 582, 698 N.W.2d 738 (2005); *Maracalin v. U.S.*, 52 Fed. Cl.
736 (2002), aff'd, 63 Fed. Appx. 494 (Fed. Cir. 2003), *cert. denied*, 540 U.S. 868, 124 S. Ct. 189,

28  157 L. Ed. 2d 124 (2003).

1   same set of operative facts and, therefore, meet the first requirement for res judicata.  In both cases

2   Plaintiff has alleged that there was no assignment which gave Unifund CCR Partners the right to

3   collect the debt owed to First USA Bank, N.A.  "Two actions have [] been regarded as being based

4   on the same cause of action for res judicata purposes where . . . the two actions have such a measure

5   of identity that a different judgment in the second would destroy or impair rights or interests

6   established by the judgment in the first."[33]   Because the State Court case was based on the same

7   operative facts as the case at bar, the first element required for res judicata is established.

8          The second element, that there was a final judgment on the merits, is also met.  A trial in the

9   *Unifund v. Reyes* case was held on January 3, 2007, as evidenced in the <u>Reporter's Transcript of</u>

10  <u>Proceedings</u> taken at the trial and the <u>Judgment After Court Trial</u> which was subsequently filed in

11  the case.  (Reyes Dec., Ex. "5"; Schwinn Dec., Ex. "6")  Further, at trial the Honorable Carol L.

12  Mittlesteadt ruled that Unifund CCR Partners had violated Cal. Civil Code § 1788.13(l)—a factual

13  finding that Unifund CCR Partners was not assigned the debt owed to First USA Bank, N.A.  (Reyes

14  Dec., Ex. "5" at 20:8-21)  Cal. Civil Code § 1788.13(1) states:

15          No debt collector shall collect or attempt to collect a consumer debt by means of the
            following practices:
16                                                    …
            (l) Any communication by a licensed collection agency to a debtor demanding
17          money unless the claim is actually assigned to the collection agency.

18  Because the issue of whether Unifund CCR Partners was assigned the debt was adjudicated in the

19  *Unifund v. Reyes* case to a final judgment on the merits, the second element necessary for res

20  judicata is present.

21          The third element necessary for res judicata is privity between Unifund CCR Partners and

22  K&M.  "As a general rule . . . federal law will incorporate state law when the issue is more distinctly

23  substantive, as with the concept of 'privity'."[34]   In California, "[w]ho are privies requires careful

24

25          [33]  47 Am. Jur. 2d *Judgments* § 478 (2007), *citing*, *Ripley v. Storer*, 309 N.Y. 506, 132
26  N.E.2d 87 (1956).

27          [34]  *Lowell Staats Mining Co. v. Philadelphia Electric Co.*, 878 F.2d 1271, 1274 (10th Cir.
    1989), *citing, Petromanagement Corp. v. Acme-Thomas Joint Venture*, 835 F.2d 1329, 1333 (10th
28  Cir. 1988).

1  examination into the circumstances of each case as it arises."[35]

2      The general rule . . . is that one who has a proprietary or financial interest in and
3  controls the conduct of a lawsuit should expect to be, and can be, bound by the result
   reached in that lawsuit, even though not a party.  Such control, however, need not be
   complete.  And, preclusion can apply even in the absence of such control, as in
4  *People ex rel. State of Cal v. Drinkhouse, supra*, 4 Cal.App.3d 931, where two out
   of three civil defendants suffering the preclusive effect of a criminal judgment of
5  conviction were not parties to the criminal case, had not proprietary or financial
   interest in the criminal case, and had no control over the prosecution or defense of
6  the criminal case.[36]

7      As counsel for Unifund CCR Partners in the *Unifund v. Reyes* case, K&M "should expect

8  to be and can be bound by the result reached in that lawsuit, even though not a party."  Additional

9  support for this position can be found in California law.

10      The Court of Appeal of California, First Appellate District, determined that an attorney was

11  barred by the claim-preclusive effect of res judicata in the malicious prosecution case *Aronow v.*

12  *LaCroix*.[37]  *Aronow* was before the Court of Appeals on a question of whether the trial court

13  judgment in favor of the plaintiff attorney, Aronow, should be overturned because of an appellate

14  decision in a case referred to as *Fitsimmons II*, which was decided after the trial court's judgment

15  was entered in *Aronow*.  The defendants argued that plaintiff, Aronow, who was also co-counsel on

16  *Fitsimmons II*, should be barred from litigating a case which raised the same issues as *Fitsimmions*

17  *II*.  The court determined that all three elements necessary for claim preclusion were present.  In

18  deciding the issue of privity, the court held that:

19      During the time the two cases were consolidated Aronow was both a coplaintiff with
    Dr. Ann [the plaintiff in *Fitsimmons II*] and cocounsel with Dr. Ann's attorney.
20  Aronow at least had the power to suggest courses of action which she believed would
    be to the mutual benefit of both herself and Dr. Ann.  *Id*. at 1050-51.
21      …

22      Aronow obviously enjoyed something significantly less than the power to control
    *Fitsimmons II*.  On the other hand, she was far from a stranger to the case.  We
23

24      [35]  7 Witkin Cal. Proc. *Judgment* § 392 (2006).

25      [36]  *Aronow v. LaCroix, et al.,* 219 Cal. App. 3d 1039 (Cal. Ct. App. 1990) (internal citations

26  omitted), *citing, Lynch v. Glass*, 44 Cal. App. 3d. 943, 949 (Cal. Ct. App. 1975); *Ceresino v. Fire*

27  *Insurance Exchange*, 215 Cal. App. 3d 814, 821 (Cal. Ct. App 1989); *Lewis v. County of*
   *Sacramento*, 218 Cal. App. 3d 214, 218-219 (Cal. Ct. App. 1990).

28      [37]  219 Cal. App. 3d 1039 (Cal. Ct. App. 1990).

1    conclude that if strong reasons exist to give *Fitsimmons II* claim-preclusive effect, Aronow's connection with the case, though falling short of the power to control, was
2    so close that she should reasonably expect to be bound by the result in that case. *Id.* at 1052.
3

4    The Court then evaluated the policy considerations behind res judicata and claim preclusion,

5    including the promotion of judicial economy by minimizing repetitive litigation and the prevention

6    of inconsistent judgments which undermine the integrity of the judicial systems holding preclusion

7    in this instance:

8    we conclude that policy considerations strongly support application of the doctrine of claim preclusion in the present case. . . . Most important among these
9    considerations is the elimination of inconsistent judgments. Such judgments constitute "the very situation sought to be avoided by the expanded definitions of
10   privity' currently in effect." "It would be anomalous to deny recovery to [Dr. Ann] but to award damages to [Aronow] based on the same set of facts and legal issues."
11   *Id.*

12   Like the situation before the Court of Appeals in *Aronow*, the facts of the case at bar favor

13   preclusion of any re-litigation regarding Unifund CCR Partners' purported assignment of the debt

14   owed to First USA Bank, N.A. K&M enjoyed exclusive control over the *Unifund v. Reyes* case,

15   greater than the amount of control enjoyed by the attorney in *Aronow*. K&M therefore should

16   reasonably be expect to be bound by the San Mateo court's judgment. Further, binding K&M to the

17   court's decision in the *Unifund v. Reyes* case promotes the public policy behind res judicata,

18   including judicial efficiency and preventing inconsistent judgments.

19   <u>The Rooker-Feldman-Exxon Doctrine Also Applies in this Case</u>

20   Res judicata is not the only legal principle which bars re-litigation regarding the purported

21   assignment of the debt to Unifund CCR Partners, the *Rooker-Feldman* doctrine also precludes K&M

22   from re-litigating this issue. As explained in the recent U.S. Supreme Court Case, *Exxon Mobil*

23   *Corporation, v. Saudi Basic Industries Corporation*, 544 U.S. 280, 125 S. Ct. 1517, 161 L. Ed. 2d

24   454 (2005).

25   The *Rooker-Feldman* doctrine, we hold today, is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers
26   complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of
27   those judgments. *Id.* at 284.

28

---

1     By asking this Court to reconsider whether or not Unifund CCR Partners was assigned the

2 debt that K&M attempted to collect, K&M (a state-court loser) is asking this Court review and reject

3 the San Mateo court's judgment in the *Unifund v. Reyes* case.  This clearly runs afoul of the Rooker-

4 Feldman-Exxon doctrine by requiring this Court to impermissibly act as an appellate court.  *Id*. at

5 283.

6     K&M violated several provisions of the FDCPA by attempting to collect a debt which was

7 not assigned to its client, Unifund CCR Partners.  K&M will argue that it did not violate the FDCPA

8 because there was an assignment to its client.  However, the principles of res judicata preclude K&M

9 from remaking this argument because the San Mateo court already heard this issue and determined

10 that there was no assignment to Unifund CCR Partners.  As counsel for Unifund CCR Partners in

11 the underlying case, K&M was in privity with the state-court loser and is bound by the decision on

12 the merits in that case under the principles of res judicata and claim preclusion.  Moreover, any

13 request by K&M for this Court to reconsider whether Unifund CCR Partners was actually assigned

14 the debt owed to First USA Bank, N.A., runs afoul of the Rooker-Feldman-Exxon doctrine as this

15 Court is not a California appellate court.  Because the issue of assignment has been actually litigated

16 and necessarily decided on the merits in Plaintiff's favor, this Court should find that K&M has

17 violated the FDCPA by attempting to collect a debt that was not assigned to its client.

18 **E.    K&M HAS VIOLATED NUMEROUS PROVISIONS OF THE RFDCPA.**

19     In addition to the violations of the federal Fair Debt Collection Practices Act alleged against

20 all Defendants, Plaintiff also alleges several violations of the California Rosenthal Fair Debt

21 Collection Practices Act against Defendant, KENOSIAN & MIELE.

22     **1.    KENOSIAN & MIELE IS A "DEBT COLLECTOR" WITHIN THE MEANING OF CALIFORNIA CIVIL CODE § 1788.2(c).**

23

24 Cal. Civil Code § 1788.2(c) provides as follows:

25 The term "debt collector" means any person who, in the ordinary course of business, regularly, on behalf of himself or herself or others, engages in debt collection.  The

26 term includes any person who composes and sells, or offers to compose and sell, forms, letters, and other collection media used or intended to be used for debt

27 collection, but does not include an attorney or counselor at law.

28

1    In the <u>Answer of Defendants to Complaint</u> (Doc. 5), Defendants deny that K&M is a "debt

2    collector" as that term is defined by the Rosenthal Fair Debt Collection Practices Act, Cal. Civil

3    Code § 1788.2(c).  (<u>Complaint</u> (Doc. 1) ¶32; <u>Answer</u> (Doc. 5) ¶32)

4    Defendants will likely argue that the exclusion of an individual who is an "attorney or

5    counselor at law" is sufficiently broad to also include law firms like KENOSIAN & MIELE.

6    However, this Court has rejected this argument in several cases.

7    Interpreting the plain language of the statute, it appears clear on its face that CA
     FDCPA "does not include an attorney."  In fact, during oral argument, Plaintiff
8    conceded that the CA FDCPA does not apply to Defendant Boyajian, who is an
     attorney.  Thus, this Court denies Plaintiff's sub–class of the CA FDCPA as it
9    pertains to Defendant Boyajian.

10   However, giving section § 1788.2(c) the same reading does not yield the same result
     for Defendant JBC.  The statute merely states that it does not apply to "attorney" or
11   "counselor at law"; it does not outright exclude "law firms".  Since the legislature
     specifically excluded attorneys from the statute but was silent on law firms, this
12   Court presumes that the legislature did not intend to exclude law firms.  In addition,
     taken the allegations from Plaintiff's Complaint as true, Defendant JBC, in the
13   ordinary course of business, regularly, on behalf of itself or others, engages in debt
     collection using form letters sent through the United States Postal Office, Defendant
14   JBC is a "debt collector" as defined by CA FDCPA.  *Ables v. JBC Legal Group,
     P.C.*, 227 F.R.D. 541, 547-48 (N.D. Cal. 2005) (Ware).

15

16   As in *Ables v. JBC Legal Group*, the Plaintiff is this case does not assert claims under the

17   RFDCPA against the individual attorney Defendant, MIELE, only the law firm, KENOSIAN &

18   MIELE. (<u>Complaint</u> (Doc. 1) ¶¶ 27-39)  It is undisputed that KENOSIAN & MIELE is a California

19   limited liability partnership engaged in the business of collecting debts in this state, that the principal

20   business of KENOSIAN & MIELE is the collection of debts using the mails and telephone, and that

21   KENOSIAN & MIELE regularly attempts to collect debts alleged to be due another.  (<u>Complaint</u>

22   (Doc. 1) ¶ 7; <u>Answer</u> (Doc. 5) ¶ 7)

23   There is no factual dispute regarding KENOSIAN & MIELE's partnership form or the

24   principal business in which it engages.  Whether KENOSIAN & MIELE is a "debt collector" as that

25   term is defined by Ca. Civil Code § 1788.2(c) is a question of law on which the Plaintiff is entitled

26   to summary adjudication pursuant to Fed. R. Civ. P. 56(d).

27   **2.    KENOSIAN & MIELE HAS VIOLATED CAL. CIVIL CODE § 1788.17.**

28   Cal. Civil Code § 1788.17 provides as follows:

---

MEMORANDUM OF POINTS AND AUTHORITIES -21-                    Case No.  C07-00253-MJJ

1  Notwithstanding any other provision of this title, every debt collector collecting or
   attempting to collect a consumer debt shall comply with the provisions of Sections
2  1692b to 1692j, inclusive, of, and shall be subject to the remedies in Section 1692k
   of, Title 15 of the United States Code.
3

4  As explained above, KENOSIAN & MIELE has violated 15 U.S.C. §§ 1692e, 1692e(2)(A),

5  1692e(2)(B), 1692e(5), 1692e(10) and 1692f(1) in 6 different and distinct ways.  Each of these

6  violations of the FDCPA state a separate violation under Cal. Civil Code § 1788.17, which requires

7  compliance with the FDCPA.

8      **3.    KENOSIAN & MIELE HAS VIOLATED CAL. CIVIL CODE §§ 1788.13(e)
               AND 1788.3(l).**
9          As explained above, KENOSIAN & MIELE filed a lawsuit in San Mateo County against

10 Plaintiff on January 25, 2006, which falsely represented amount which could be lawfully collected,

11 falsely represented the attorney fees which could be collected and falsely represented that the debt

12 was assigned to KENOSIAN & MIELE's client.  Therefore, KENOSIAN & MIELE has falsely

13 represented that the debt could "be increased by the addition of attorney's fees or other charges

14 [when], in fact, such fees or charges [could] not legally be added to the existing obligation" in

15 violation of Cal. Civil Code § 1788.13(e).  KENOSIAN & MIELE also communicated with Plaintiff

16 in an attempt to collect a debt when the claim wasn't "actually assigned" to KENOSIAN & MIELE

17 for collection, in violation of Cal. Civil Code § 1788.13(l).

18 **F.    THIS COURT SHOULD AWARD PLAINTIFF THE MAXIMUM STATUTORY
           DAMAGE AMOUNT OF $1,000 UNDER THE FDCPA.**
19         The maximum statutory damage award available under the FDCPA is a modest $1,000.

20 Courts have therefore awarded the maximum amount even when the violations found were less

21 numerous and egregious than those herein.  For example, in *Riviera v. M.A.B.*,[38] the court awarded

22 the maximum $1,000 because the validation notice appeared on the back of the letter, in relatively

23 small print, with no reference to it on the front of the letter.  Thus, even though the notice was

24 accurate, the court determined a $1,000 award was appropriate.  Furthermore, in *Tolentino v.*

25 *Friedman*,[39] the Seventh Circuit upheld the maximum statutory award of $1,000 despite finding that

26

27     [38] 682 F. Supp. 174 (W.D.N.Y. 1988).

28     [39] 46 F.3d 645 (7th Cir. 1995).

only one provision of the FDCPA had been proven.  In that case the debt collector had included a disclosure required 15 U.S.C. § 1692e(11) in its initial notice, but had failed to include it in a subsequent notice.  The present case involves at least 7 violations of the FDCPA.  Thus, the violations herein are more numerous and meaningful than in those cases, and therefore the Court should award the maximum amount of statutory damages under 15 U.S.C. § 1692k(a)(2)(A), which is $1,000.

**G.      PLAINTIFF SHOULD BE AWARDED $1,000 UNDER CAL. CIVIL CODE § 1788.30(b).**

The Cal. Civil Code § 1788.30 states that any debt collector who fails to comply with any provision is liable to such debtor in an amount equal to his/her actual damages, and in the case of a debt collector who willfully and knowingly violates the RFDCPA, the Court may award a penalty in an amount not less than $100 nor greater than $1,000.  Cal. Civil Code § 1788.30(b).

In this case KENOSIAN & MIELE has violated Cal. Civil Code §§ 1788.13(e) and 1788.13(l) which are remedied by the statutory penalty provisions of Cal. Civil Code § 1788.30.  Thus, the Plaintiff is entitled to the full $1,000 statutory award under Cal. Civil Code § 1788.30.

**H.      PLAINTIFF SHOULD BE AWARDED $1,000 UNDER CAL. CIVIL CODE § 1788.17.**

In this case KENOSIAN & MIELE has violated Cal. Civil Code § 1788.17 which is remedied by the statutory damages provisions of 15 U.S.C. § 1692k(a)(2)(A).  Thus, the Plaintiff is entitled to the full $1,000 statutory award under Cal. Civil Code § 1788.17.

**I.      BOTH CONGRESS AND THE CALIFORNIA LEGISLATURE HAVE EXPRESSED THEIR INTENT THAT THE REMEDIES FOR VIOLATIONS OF THE FDCPA AND RFDCPA BE CUMULATIVE.**

Cal. Civil Code § 1788.32 states "The remedies provided herein are intended to be cumulative and are in addition to any other procedures, rights, or remedies under any other provision of law."  Thus, a violation of the federal statute can lead to damages under the federal FDCPA and a violation of the California statute leads to damages under the RFDCPA.  Indeed, the FDCPA expressly states:

> [t]his subchapter does not annul, alter, or affect, or exempt any person subject to the provisions of this subchapter from complying with the law of any State with respect to debt collection practices, except to the extent that those laws are in consistent with any provision of this subchapter, and then only to the extent of the inconsistency. 15 U.S.C. § 1692n.

1    Moreover, courts both within and outside the Ninth Circuit, have allowed statutory damages

2    under both federal and state consumer protection statutes.[40]  Thus, the Court should not be reluctant

3    to assess the maximum possible statutory damages under both federal and state law.  As this  Court

4    has noted, Cal. Civil Code § 1788 was amended to expand the remedies of the RFDCPA, including

5    an expansion of the statutory damages available under the state law.[41]

6         Additionally, this Court has concluded that rather than drafting new language to the

7    RFDCPA, the legislature simply incorporated entire sections of the FDCPA by reference.[42]  Indeed,

8    this Court stated "California simply incorporated by reference the text of certain federal provisions

9    into the CFDCPA, rather than copying them verbatim into the California code.  Any resulting

10   liability, however, remains a state claim."  *Id*.  In a separate case, this Court went on to hold that a

11   violation of 15 U.S.C. § 1692g was also a violation of Cal. Civil Code § 1788.17.[43]  Thus, by

12   incorporating 15 U.S.C. § 1692k by reference (and its statutory damages of $1,000), the California

13   legislature chose to make the additional $1,000 available, as a matter of state law, when it enacted

14   Cal. Civil Code § 1788.17.

15   **J.    PLAINTIFF HAS A STATUTORY RIGHT TO ATTORNEY'S FEES AND COSTS.**

16        Both the federal FDCPA and California RFDCPA direct the Court to award attorney's fees

17   to a prevailing consumer.  15 U.S.C. § 1692k(a)(3) & Cal. Civil Code § 1788.30(c).  A number of

18   cases decided under 15 U.S.C. § 1692k have held that an award of attorney fees and costs is required

19

20

21
_____

22    [40]  *Sakuma v. First National Credit Bureau*, 1989 U.S. Dist. LEXIS 19120 (D. HI. November
23   15, 1989);  *Mann v. Acclaim*, 348 F. Supp. 2d 923 (S.D. Ohio 2004);  *Chapman v. ACB Business
     Services*, Inc., 1997 U.S. Dist. LEXIS 23743 (S.D. W.V. February 13, 1997).

24    [41]  *Abels*, 227 F.R.D. at 548 (The mandatory language in the amendment—" . . . shall be
25   subject to the remedies in Section 1692k" leaves little doubt as to the intent of the legislature to
     broaden the remedies for RFDCPA.)

26    [42]  *Alkan v. Citimortgage, Inc.*, 336 F. Supp. 2d 1061, 1065 (N.D. Cal. 2004).

27    [43]  *Edstrom v. A.S.A.P. Collection Services*, 2005 U.S. Dist. LEXIS 2773, *15 (N.D. Cal.
28   February 22, 2005).

if the plaintiff prevails.[44] The Court should award the Plaintiff his reasonable attorney fees and costs incurred in this matter.

## VII.  CONCLUSION

For the reasons set forth above, Plaintiff is entitled to summary judgment as a matter of law: (1) falsely representing the amount of the debt; (2) falsely representing compensation which may be lawfully received by K&M for the collection of the debt; (3) threatening to collect attorney's fees pursuant to Cal. Civil Code § 1717.5, an action that cannot legally be taken or that was not intended to be taken; (4) misrepresenting that Unifund CCR Partners was lawfully entitled to attorney's fees pursuant to Cal. Civil Code § 1717.5; (5) misrepresenting that Unifund CCR Partners was lawfully entitled to collect the debt owed to First USA Bank, N.A.; and (6) attempting to collect fees or other charges from Plaintiff that are not expressly authorized by the agreement creating the debt or otherwise permitted by law.

In the alternative, Plaintiff is entitled to partial summary adjudication pursuant to Fed. R. Civ. P. 56(d) on the following factual issues: 1) Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3); 2) the debt being collected by Defendants was a "debt" as that term is defined by 15 U.S.C. § 1692a(5) and a "consumer debt" as that term is defined by Cal. Civil Code § 1788.2(f); and 3) Defendant, KENOSIAN & MIELE is a "debt collector" within the meaning of Cal. Civil Code § 1788.2(c).

Dated:  October 30, 2007                          CONSUMER LAW CENTER, INC.


                                                  By: /s/ Fred W. Schwinn
                                                      Fred W. Schwinn, Esq.
                                                      Attorney for Plaintiff
                                                      MANUEL LOPEZ REYES

---

[44] *See, e.g. Zagorski v. Midwest Billing Services, Inc.*, 178 F.3d 116 (7th Cir. 1997) (holding it was an abuse of discretion not to award attorney's fees following a stipulated judgment in the amount of $100; and directing the court to award fees sufficient to compensate the attorney for the time spent on the case in order to encourage enforcement of the FDCPA); *Pipiles v. Credit Bureau*, Inc., 886 F.2d 22 (2d Cir. 1989) (directing trial court to award fees on remand despite the lack of actual or statutory damages because Plaintiff had demonstrated that Defendant violated the FDCPA); *Perez v. Perkiss*, 742 F. Supp. 883 (D. Del. 1990) (awarding Plaintiffs' legal services attorneys $10,110 after a half-day jury trial in which Plaintiff was awarded $1,200 in damages).

1  Fred W. Schwinn (SBN 225575)
   CONSUMER LAW CENTER, INC.
2  12 South First Street, Suite 416
   San Jose, California  95113-2404
3  Telephone Number: (408) 294-6100
   Facsimile Number: (408) 294-6190
4  Email Address: fred.schwinn@sjconsumerlaw.com

5  Attorney for Plaintiff
   YORK GEE AU CHAN
6

7

8          IN THE UNITED STATES DISTRICT COURT
          FOR THE NORTHERN DISTRICT OF CALIFORNIA
9                 SAN FRANCISCO DIVISION

10 YORK GEE AU CHAN,                    Case No.  C06-00016-JL

11                    Plaintiff,

12 v.                                   MEMORANDUM OF POINTS AND
                                        AUTHORITIES IN SUPPORT OF
13 NORTH AMERICAN COLLECTORS, INC.,     MOTION FOR PARTIAL SUMMARY
   a California corporation, DAVID A. SIMON, JUDGMENT
14 individually and in his official capacity,
   LARRY EDWARD LAWSON, individually   Date:        August 23, 2006
15 and in his official capacity, and DAVID R. Time:        9:30 a.m.
   SEMEL, individually and in his official Judge:       Honorable James Larson
16 capacity,                            Courtroom:   Courtroom F, 15th Floor
                                        Place:       450 Golden Gate Avenue
17                    Defendants.                    San Francisco, California

18

19        COMES NOW the Plaintiff, YORK GEE AU CHAN, by and through her attorney Fred W.

20 Schwinn of the Consumer Law Center, Inc., and hereby submits her Memorandum of Points and

21 Authorities in Support of Motion for Partial Summary Judgment filed herein.

22

23

24

25

26

27

28

MEMORANDUM OF POINTS AND AUTHORITIES                    Case No.  C06-00016-JL

1    **TABLE OF CONTENTS**

2    TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

3    TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

4    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

5    PROCEDURAL HISTORY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

6    FACTS OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

7    STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

8    SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

9    STATEMENT OF QUESTIONS PRESENTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

10   ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

11   A.    THE "LEAST SOPHISTICATED CONSUMER" STANDARD IS USED
           TO ANALYZE VIOLATIONS OF THE FDCPA . . . . . . . . . . . . . . . . . . . . . . . 6
12
     B.    UNDER THE STRICT LIABILITY STANDARD OF THE FDCPA,
13         PLAINTIFF HAS PLED NUMEROUS VIOLATIONS OF THE ACT, AS
           SEEN FROM THE PERSPECTIVE OF THE "LEAST SOPHISTICATED
14         CONSUMER" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

15   C.    DEFENDANTS FAILED TO SEND THE PLAINTIFF A WRITTEN
           NOTICE CONTAINING THE NAME OF THE CURRENT CREDITOR TO
16         WHOM THE ALLEGED DEBT WAS OWED, IN VIOLATION OF 15
           U.S.C. § 1692g(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
17
     D.    DEFENDANTS FAILED TO SEND THE PLAINTIFF A WRITTEN
18         NOTICE CONTAINING A STATEMENT THAT IF THE PLAINTIFF
           NOTIFIES THE DEFENDANTS IN WRITING WITHIN THIRTY FROM
19         RECEIPT OF THE INITIAL COLLECTION LETTER THAT THE
           ALLEGED DEBT, OR ANY PORTION THEREOF, IS DISPUTED, THE
20         DEFENDANTS WOULD OBTAIN VERIFICATION OF THE ALLEGED
           DEBT AND THAT A COPY OF THE VERIFICATION WOULD BE
21         MAILED TO THE PLAINTIFF, IN VIOLATION OF 15 U.S.C. §
           1692g(a)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
22
     E.    THIS COURT SHOULD AWARD PLAINTIFF THE MAXIMUM
23         STATUTORY DAMAGE AMOUNT OF $1,000 UNDER THE FDCPA . . . . . 12

24   F.    BECAUSE THE CALIFORNIA RFDCPA INCORPORATES MOST OF
           THE PROVISIONS OF THE FEDERAL FDCPA BY REFERENCE, A
25         DETERMINATION THAT DEFENDANTS VIOLATED THE FDCPA
           SUPPORTS AN ADDITIONAL AWARD OF STATUTORY DAMAGES
26         UNDER THE RFDCPA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

27

28

1       G.     BOTH CONGRESS AND THE CALIFORNIA LEGISLATURE HAVE
2              EXPRESSED THEIR INTENT THAT THE REMEDIES FOR
              VIOLATIONS OF THE FDCPA AND RFDCPA BE CUMULATIVE . . . . . . . 14

3       H.     PLAINTIFF HAS A STATUTORY RIGHT TO ATTORNEY'S FEES . . . . . . 15

4  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**TABLE OF AUTHORITIES**

2

<u>**CASES**</u>

3   *Abels v. JBC*, 227 F.R.D. 541 (N.D. Cal. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 15

4   *Alkan v. Citimortgage, Inc.*, 336 F. Supp. 2d 1061 (N.D. Cal. 2004) . . . . . . . . . . . . . . . . . 13, 15

5   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

6   *Avila v. Rubin*, 84 F.3d 222 (7th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

7   *Baker v. G.C. Servs. Corp.,*  677 F.2d 775 (9th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . 6, 8, 9, 12

8   *Bentley v. Great Lakes Collection Bureau*, 6 F.3d 60 (2nd Cir. 1993) . . . . . . . . . . . . . . . . . 7, 8, 9

9   *Brinson v. Linda Rose Joint Venture*, 53 F.3d 1044 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . 4

10  *Cacace v. Lucas*, 775 F. Supp. 502 (D. Conn. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 9

11  *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

12  *Chan v. North American Debt Collectors, et al.,*
    2006 U.S. Dist. LEXIS 13353 (N.D. Cal. March 24, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
13

    *Chapman v. ACB Business Services*, Inc.,
14  1997 U.S. Dist. LEXIS 23743 (S.D. W.V. February 13, 1997) . . . . . . . . . . . . . . . . . . . . . . . . . 14

15  *Clomon v. Jackson*, 988 F.2d 1314 (2nd Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

16  *Edstrom v. All Servs. & Processing,*
    2005 U.S. Dist. LEXIS 2773 (N.D. Cal. February 22, 2005) . . . . . . . . . . . . . . . . . . . . . . . 13, 15
17

18  *EEOC v. Farmer Bros. Co.,* 31 F.3d 891 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

19  *Graziano v. Harrison*, 950 F.2d 107 (3rd Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

20  *Hartman v. Meridian Financial Services, Inc.*, 191 F. Supp. 2d 1031 (W.D. Wis. 2002) . . . . . . 9

21  *Jeter v. Credit Bureau*, 760 F.2d 1168 (11th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

22  *Kolker v. Duke City Collection Agency*, 750 F. Supp. 468 (D.N.M. 1990) . . . . . . . . . . . . . . . . . 8

23  *Mann v. Acclaim*, 348 F. Supp. 2d 923 (S.D. OH. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

24  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) . . . . . . . . . . . . . . . 4, 5

25  *McCabe v. Crawford & Company*,  272 F. Supp. 2d 736 (N.D. Il. 2003) . . . . . . . . . . . . . . . . . 11

26  *McCartney v. First City Bank*, 970 F.2d 45 (5th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

27  *Perez v. Perkiss*, 742 F.Supp. 883 (D.Del. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

28  *Picht v. Jon R. Hawks, Ltd.*, 236 F.3d 446 (8th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

1  *Pipiles v. Credit Bureau*, Inc., 886 F.2d 22 (2nd Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

2  *Pittman v. J.J. Mac Inttyre Co. of Nevada, Inc.*, 969 F. Supp. 609 (D. Nev. 1997) . . . . . . . . . . 9

3  *Riveria v. MAB Collections*, 682 F. Supp. 174 (W.D.N.Y. 1988) . . . . . . . . . . . . . . . . . . . . . . 7, 8

4  *Russell v. Equifax A.R.S.*, 74 F.3d 30 (2nd Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . 7, 8, 9, 12

5  *Sakuma v. First National Credit Bureau*,
   1989 U.S. Dist. LEXIS 19120 (D. HI. November 15, 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
6

7  *Saucier v. Katz*, 533 U.S. 194 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

8  *Schneider v. TRW, Inc.*, 938 F.3d 986 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

9  *Sparkman v. Zwicker & Associates, P.C.*, 374 F. Supp. 2d 293 (E.D.N.Y. 2005) . . . . . . . . . . . 10

10 *Stockton Wire Products, Inc. v. K-Lath Corp.*, 440 F.2d 782 (1971) . . . . . . . . . . . . . . . . . . . . . . 4

11 *Stojanovski v. Strobl & Manoogian, P.C.*, 783 F. Supp. 319 (E.D. Mich. 1992) . . . . . . . . . . . . . 7

12 *Swanson v. Southern Oregon Credit Serv.*, 869 F.2d 1222 (9th Cir. 1988) . . . . . . . . . . . . . . . . . 7

13 *Taylor v. Perrin Landry, deLaunay & Durand*, 103 F.3d 1232 (5th Cir. 1997) . . . . . . . . . . . . 8, 9

14 *Terran v. Kaplan*, 109 F.3d 1428 (9th Cir. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

15 *Tolentino v. Friedman*, 46 F.3d 645 (7th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

16 *Traverso v. Sharinn*, 1989 U.S. Dist. LEXIS 19100 (D. Conn. Sept. 15, 1989) . . . . . . . . . . . . . 9

17 *T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Ass'n*,
   809 F.2d 626 (9th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

18 *U.S. v. Nat'l Fin. Servs.*, 98 F.3d 131 (4th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

19 *Wade v. Regional Credit Ass'n*, 87 F.3d 1098 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

20 *Whatley v. Universal Collection Bureau, Inc.*, 525 F. Supp. 1204 (N.D. Ga. 1981) . . . . . . . . . . 8

21 *Withers v. Eveland*, 988 F. Supp. 942 (E.D. Va. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

22 *Zagorski v. Midwest Billing Services, Inc.*, 178 F.3d 116 (7th Cir. 1997) . . . . . . . . . . . . . . . . . 15

23 <u>**STATUTES**</u>

24 15 U.S.C. § 1692(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

25 15 U.S.C. § 1692d . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

26 15 U.S.C. § 1692e . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 8

27 15 U.S.C. § 1692f . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

28

1    15 U.S.C. § 1692g . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

2    15 U.S.C. § 1692g(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

3    15 U.S.C. § 1692g(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

4    15 U.S.C. § 1692k(a)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

5    15 U.S.C. § 1692n . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

6    Cal. Civil Code § 1788.17 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

7                                                 **<u>RULES</u>**

8    Fed. R. Civ. P. 56(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

9    Fed. R. Civ. P. 56(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INTRODUCTION**

This case was brought by YORK GEE AU CHAN (hereinafter "Plaintiff") against a debt collection agency, NORTH AMERICAN COLLECTORS, INC., and three individuals who operate and manage the collection agency (hereinafter collectively referred to as "Defendants").  The Plaintiff alleges various violations of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, *et seq.* (hereinafter "FDCPA") and the Rosenthal Fair Debt Collection Practices Act, California Civil Code §§ 1788, *et seq.* (hereinafter "RFDCPA"), which prohibit debt collectors from engaging in abusive, deceptive and unfair practices.  Plaintiff seeks statutory damages, attorney fees and costs under both the FDCPA and RFDCPA.

This case arises out of the initial debt collection letter that was sent to the Plaintiff by the Defendants.  The alleged debt being collected stemmed from a disputed credit card account issued by CitiBank that was used for personal, family or household purposes.  The Plaintiff alleges that the initial debt collection letter violates both the FDCPA and RFDCPA by misrepresenting the name of the creditor to whom the debt was owed, misrepresenting the amount of the alleged debt, and misrepresenting Plaintiff's rights to request a validation of the alleged debt.  The Plaintiff also alleges that the Defendants attempted to collect interest, fees or other charges from the Plaintiff that were not expressly authorized by the agreement creating the alleged debt or otherwise permitted by law.

Plaintiff hereby moves for partial summary judgment on her claims for violation of 15 U.S.C. §§ 1692g(a)(2) and 1692g(a)(4).  Plaintiff does not waive, and hereby reserves, the remaining claims brought in her Complaint for decision by the Court at a later date.

**PROCEDURAL HISTORY**

On January 4, 2006, Plaintiff filed a Complaint in this action against Defendants.[1]  Instead of filing an Answer, Defendants filed a Motion to Dismiss Case Under Federal Rule of Civil Procedure 12(b) on February 3, 2006.[2]  Plaintiff opposed the motion to dismiss and the Court heard

---

[1]  Doc. 1.

[2]  Doc. 8.

---

1  oral argument on March 15, 2006.[3]  This Court entered an order denying the Defendants' motion to

2  dismiss on March 24, 2006.[4]  Thereafter, Defendants filed their Answer on April 17, 2006,[5] and an

3  Amended Answer on April 24, 2006.  The Defendants' <u>Amended Answer to Complaint</u> asserts no

4  affirmative defenses.[6]  On April 24, 2006, Plaintiff propounded written discovery to Defendant,

5  NORTH AMERICAN COLLECTORS, INC.  Said written discovery remains unanswered and

6  Defendant is in default.  On June 14, 2006, the Court held a Case Management Conference.  Counsel

7  for the Plaintiff was present but the Defendants failed to appear.  When the Deputy Clerk telephoned

8  Defendants' counsel from the courtroom the telephone call went unanswered.

9       On July 19, 2006, Plaintiff's Motion for Summary Judgment was filed herein.  This

10  Memorandum of Law is submitted in support thereof.

11                                     **FACTS OF THE CASE**

12       Plaintiff, York Gee Au Chan, is a "consumer" within the meaning of 15 U.S.C. § 1692(a)(3)

13  and resides in Alameda County.[7]  Defendant, North American Collectors, Inc., is a California

14  corporation engaged in the business of collection debts.[8]  Defendants, David A. Simon, Larry

15  Edward Lawson and David R. Semel are "debt collectors" as defined by 15 U.S.C. § 1692a(6) and

16  they are liable for the acts of Defendant, North American Collectors, Inc., because they set and

17  approve its collection policies, practices and procedures and they directed the unlawful activities

18  alleged in this case.[9]

19       On a date or dates unknown to the Plaintiff, Plaintiff is alleged to have incurred a financial

20

21       [3]  Doc. 11.

22       [4]  2006 U.S. Dist. LEXIS 13353 (N.D. Cal. March 24, 2006).

23       [5]  Doc. 19.

24       [6]  Doc. 21.

25       [7]  <u>Complaint</u> ¶6, (Doc. 1); <u>Amended Answer to Complaint</u> (hereinafter "Answer") ¶2, (Doc.
26  21).

27       [8]  <u>Complaint</u> ¶6, (Doc. 1); <u>Answer</u> ¶2 (Doc. 21).

28       [9]  <u>Complaint</u> ¶¶ 8, 9 and 10 (Doc. 1); <u>Answer</u> ¶2 (Doc. 21).

MEMORANDUM OF POINTS AND AUTHORITIES  -2-                    Case No.  C06-00016-JL

1    obligation, namely a consumer credit account issued by CitiBank.[10]  The alleged debt was incurred

2    primarily for personal, family or household purposes and is therefore a "debt" as that term is defined

3    by 15 U.S.C. § 1692a(5).[11]  Sometime thereafter, the alleged debt was sold, assigned or otherwise

4    transferred to Unifund CCR Partners.[12]  Sometime thereafter on a date unknown to the Plaintiff, the

5    debt was consigned, placed or otherwise transferred to Defendants for collection from the Plaintiff.[13]

6         On or about September 7, 2005, Defendants mailed Plaintiff a collection letter in an attempt

7    to collect the alleged debt.[14]  A true and correct copy of the December 4, 2004, collection letter is

8    attached to the Complaint and identified as Exhibit "1."[15]  The collection letter was the first

9    communication on NORTH AMERICAN COLLECTORS, INC., letterhead from Defendants to

10   Plaintiff in connection with the collection of the alleged debt originally owed to CitiBank.[16]  At the

11   time this letter was sent, the debt was owned by and owed to Unifund CCR Partners.[17]   The

12   collection letter represented that the amount owed by the Plaintiff was $6,937.66.[18]

13        The collection letter states:

14        Unless you notify this office within 30 days after receiving this notice that you
         dispute the validity of this debt or any portion thereof, this office will assume this
15       debt is valid.  If you notify this office within 30 days from receiving this notice, this
         office will: obtain verification of the debt or obtain a copy of a judgment and mail
16       you a copy of such judgment or verification.  If you request this office in writing
         within 20 days after receiving this notice, this office will provide you with the name
17       and address of the original creditor, if different from the current creditor.  This is an

18   _____

19        [10]  Complaint ¶12, (Doc. 1); Answer ¶2 (Doc. 21).

20        [11]  Complaint ¶12, (Doc. 1); Answer ¶2 (Doc. 21).

21        [12]  Complaint ¶13, (Doc. 1); Answer ¶2 (Doc. 21).

22        [13]  Complaint ¶14, (Doc. 1); Answer ¶2 (Doc. 21).

23
24        [14]  Complaint ¶¶ 15, 16, 17 and 18, (Doc. 1); Answer ¶2 (Doc. 21).

25        [15]  Complaint ¶ 16, (Doc. 1); Answer ¶2 (Doc. 21).

26        [16]  Complaint ¶ 20, (Doc. 1); Answer ¶2 (Doc. 21).

27        [17]  Complaint ¶ 12, 13, 14 and 15 (Doc. 1); Answer ¶2 (Doc. 21).

28        [18]  Complaint ¶ 21, (Doc. 1); Answer ¶2 (Doc. 21).

_____
MEMORANDUM OF POINTS AND AUTHORITIES  -3-                    Case No.  C06-00016-JL

1  attempt to collect a debt by a debt collector.  Any Information obtained will be used
2  for that purpose.[19]

3  **STANDARD OF REVIEW**

4  The standard of review for a motion for summary judgment is that the moving party is

5  entitled to summary judgment when the evidence shows that there is no genuine issue of material

6  fact, and that the moving party is entitled to judgment as a matter of law.[20]  The Court must

7  determine "whether there is the need for a trial–whether, in other words, there are any genuine

8  factual issues that properly can be resolved only by a finder of fact because they may reasonably be

9  resolved in favor of either party."[21]  "Only disputes over facts that might affect the outcome of the

10  suit under governing law will . . . preclude summary judgment."[22]  When the record taken as a whole

11  would not persuade a rational trier of fact to find for the nonmoving party, there is no genuine issue

12  for trial.[23]  In some cases, the evidence of the opposing party is so weak as to "fail[] to raise a

13  material issue of fact.[24]

14  The movant must carry this burden of  "identifying those parts of the record that indicate the

15  absence of a genuine issue of material fact."[25]  Once this burden is met, the non-movant is required

16  to "come forward with specific facts showing that there is a genuine issue for trial" as to elements

17  essential to the non-movant's claim.[26] The non-movant must show more than "some metaphysical

[19] Complaint ¶ 16, Exhibit "1", (Doc. 1); Answer ¶2 (Doc. 21).

[20]  Fed. R. Civ. P. 56(c); *Stockton Wire Products, Inc. v. K-Lath Corp.,* 440 F.2d 782, (1971).

[21] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

[22] *Id*. at 248.

[23] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[24] *EEOC v. Farmer Bros. Co.,* 31 F.3d 891, 906 (9th Cir. 1994).

[25] *Brinson v. Linda Rose Joint Venture*, 53 F.3d 1044, 1048 (9th Cir. 1995).

[26] *Schneider v. TRW, Inc.,* 938 F.3d 986, 991 (9th Cir. 1990).

1   doubt as to the material facts;"[27] he or she must "set forth specific facts showing that there is a

2   genuine issue for trial." [28]

3           The Court must resolve all disputed facts and weigh all evidence "in the light most favorable

4   to the nonmoving party."[29]  However, the nonmoving party may not rely upon mere allegations or

5   denials contained in its pleadings or briefs, but must come forward with specific facts showing the

6   presence of a genuine issue for trial.[30] As noted above, the requirement that a "genuine" issue of fact

7   must be present has been interpreted to mean that the evidence is such that a reasonable trier of fact

8   could return a verdict for the nonmoving party.[31]  Summary judgment is more than a "disfavored

9   procedural shortcut," it is an important procedure "designed to 'secure the just, speedy and

10  inexpensive determination of every action.' Fed. R. Civ. P. 1."[32]  One of the principal purposes of

11  the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and

12  the rule should be interpreted in a way that allows it to accomplish this purpose.[33]

13                          **SUMMARY OF ARGUMENT**

14  A.      The "Least Sophisticated Consumer" Standard Is Used to Analyze Violations of the FDCPA.

15  B.      Under the Strict Liability Standard of the FDCPA, Plaintiff Has Pled Numerous Violations

16          of the Act, as Seen from the Perspective of the "Least Sophisticated Consumer."

17  C.      Defendants failed to send the Plaintiff a written notice containing the name of the current

18          creditor to whom the alleged debt was owed, in violation of 15 U.S.C. § 1692g(a)(2).

19  D.      Defendants failed to send the Plaintiff a written notice containing a statement that if the

20

21          [27] *Matsushita Elec. Indus. Co.,* 475 U.S. at 586.

22          [28] Fed. R. Civ. P. 56(e).

23          [29] *T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Ass'n,* 809 F.2d 626, 630-31
        (9th Cir. 1987).

24

25          [30] *Saucier v. Katz,* 533 U.S. 194, 212 n.2 (2001).

26          [31] *Anderson*, 477 U.S. at 248.

27          [32] *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

28          [33] *Id.*, at 323-324.

1   plaintiff notifies the defendants in writing within thirty days from receipt of the collection

2   letter that the alleged debt, or any portion thereof, is disputed, the Defendants would obtain

3   verification of the alleged debt and that a copy of the verification would be mailed to the

4   Plaintiff, in violation of 15 U.S.C. § 1692g(a)(4).

5   E.   This Court should award Plaintiff the maximum statutory damage amount of $1,000 under

6   the FDCPA.

7   F.   Because the California RFDCPA incorporates most of the provisions of the Federal FDCPA

8   by reference, a determination that Defendants violated the FDCPA supports an additional

9   award of statutory damages under the RFDCPA .

10  G.   Plaintiff Has a Statutory Right to Attorney's Fees.

11  **STATEMENT OF QUESTIONS PRESENTED**

12  Have the Defendants violated the Fair Debt Collection Practices Act and the Rosenthal Fair

13  Debt Collection Practices Act?  If so, what is the amount of statutory damages that should be

14  awarded to the Plaintiff?

15  **ARGUMENT**

16  **A.   THE "LEAST SOPHISTICATED CONSUMER" STANDARD IS USED TO
    ANALYZE VIOLATIONS OF THE FDCPA.**

17

18  The FDCPA states that its purpose, in part, is "to eliminate abusive debt collection practices

19  by debt collectors."[34]  The statute is designed to protect consumers from unscrupulous collectors,

20  whether or not there is a valid debt.[35]  The FDCPA broadly prohibits unfair or unconscionable

21  collection methods; conduct which harasses, oppresses or abuses any debtor; and any false,

22  deceptive or misleading statements, in connection with the collection of a debt.[36]  The FDCPA also

23

24

25

26  [34]  15 U.S.C. § 1692(e).

27  [35]  *Baker v. G.C. Services*, 677 F.2d 775, 777 (9th Cir. 1982).

28  [36]  15 U.S.C. §§ 1692d, 1692e, and 1692f.

---

MEMORANDUM OF POINTS AND AUTHORITIES  -6-                    Case No.  C06-00016-JL

1     requires the debt collector to provide the consumer with a notice of his or her validation rights.[37]

2           The United States Court of Appeals for the Ninth Circuit has held that whether a

3     communication or other conduct violates the FDCPA is to be determined by analyzing it from the

4     perspective of the "least sophisticated consumer."[38]  The "least sophisticated consumer" standard

5     is objective—not subjective.[39]  Courts determine whether the "least sophisticated consumer" would

6     be misled or deceived by the statements made in a collection letter as a matter of law.[40]

7           "The basic purpose of the least sophisticated consumer standard is to ensure that the FDCPA

8     protects all consumers, the gullible as well as the shrewd."[41]  "While protecting naive consumers,

9     the standard also prevents liability for bizarre or idiosyncratic interpretations of collection notices

10    by preserving a quotient of reasonableness and presuming a basic level of understanding and

11    willingness to read with care."[42]

12          "As the FDCPA is a strict liability statute, proof of one violation is sufficient to support

13    summary judgment for the plaintiff."[43]  "Because the Act imposes strict liability, a consumer need

14

15

16

17    [37] 15 U.S.C. § 1692g.

18    [38] *Swanson v. Southern Oregon Credit Serv.*, 869 F.2d 1222, 1225 (9th Cir. 1988);  *Wade v. Regional Credit Ass'n*, 87 F.3d 1098, 1100 (9th Cir. 1996).

19

20    [39] *Swanson*, 869 F.2d at 1227.

21    [40] *Wade*, 87 F.3d at 1100;  *Terran v. Kaplan*, 109 F.3d 1428, 1432 (9th Cir. 1977);  *Swanson*, 896 F.2d at 1225-26.

22    [41] *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2nd Cir. 1993).

23

24    [42] *U.S. v. Nat'l Fin. Servs.*, 98 F.3d 131, 136 (4th Cir. 1996) (citations omitted);  *see also Russell v. Equifax A.R.S.*, 74 F.3d 30 (2nd Cir. 1996);  *Bentley v. Great Lakes Collection Bureau*, 6 F.3d 60 (2nd Cir. 1993);  *Jeter v. Credit Bureau*, 760 F.2d 1168 (11th Cir. 1985);  *Graziano v. Harrison*, 950 F.2d 107, 111 (3rd Cir. 1991);  *Avila v. Rubin*, 84 F.3d 222, 226-27 (7th Cir. 1996) ("the standard is low, close to the bottom of the sophistication meter").

25

26    [43] *Cacace v. Lucas*, 775 F. Supp. 502, 505 (D. Conn. 1990);  *see also Stojanovski v. Strobl & Manoogian, P.C.*, 783 F. Supp. 319, 323 (E.D. Mich. 1992);  *Riveria v. MAB Collections*, 682 F. Supp. 174, 178-9 (W.D.N.Y. 1988).

27

28

1    not show intentional conduct by the debt collector to be entitled to damages."[44]  Furthermore, the

2    question of whether the consumer owes the alleged debt has no bearing on a suit brought pursuant

3    to the FDCPA.[45]

4         It is important to note that by protecting consumers from abusive, deceptive and unfair

5    collection practices, the FDCPA insures that those debt collectors who refrain from using abusive

6    debt collection practices are not competitively disadvantaged.[46]  Moreover, the FDCPA further

7    insures that regardless of whether a consumer owes a debt, he or she will be treated in a reasonable

8    and civil manner.[47]

9         Accordingly, Plaintiff asserts that whether or not Defendant violated the FDCPA must be

10   evaluated from the standpoint of the "least sophisticated consumer."

11   **B.    UNDER THE STRICT LIABILITY STANDARD OF THE FDCPA, PLAINTIFF HAS
         PLED NUMEROUS VIOLATIONS OF THE ACT, AS SEEN FROM THE
12       PERSPECTIVE OF THE "LEAST SOPHISTICATED CONSUMER."**

13        To establish a violation of the FDCPA, one need only show that: (1) the Plaintiff has been

14   the object of collection activity arising from a consumer debt, (2) the Defendants collecting the

15   "debt" are "debt collectors" as defined in the Act, and (3) the Defendants have engaged in any act

16   or omission in violation of the prohibitions or requirements of the Act.[48]  Plaintiff has pleaded each

17   of these elements: (1) Plaintiff is a consumer and the obligation being collected was debt[49] (2)

18

19

20

21   [44] *Russell*, 74 F.3d at 33;  *see also Taylor v. Perrin Landry, deLaunay & Durand*, 103 F.3d
     1232, 1236 (5th Cir. 1997);  *Bentley*, 6 F.3d at 62;  *Clomon*, 988 F.2d at 1318.

22   [45] *McCartney v. First City Bank*, 970 F.2d 45 (5th Cir. 1992);  *Baker*, 677 F.2d at 777.

23
     [46] 15 U.S.C. § 1692(e).
24
     [47] *Baker*, 677 F.2d at 777.
25
     [48] *Kolker v. Duke City Collection Agency*, 750 F. Supp. 468, 469 (D.N.M. 1990);  *Riveria*,
26   682 F. Supp. at 175-76;  *Withers v. Eveland*, 988 F. Supp. 942, 945 (E.D. Va. 1997);  *Whatley v.
     Universal Collection Bureau, Inc*., 525 F. Supp. 1204, 1206 (N.D. Ga. 1981).
27

28   [49] Complaint (Doc. 1) ¶¶ 6, 12, 29 and 34; Answer ¶2 (Doc. 21).

1   Defendants are debt collectors,[50] and (3) Defendants violated provisions of the FDCPA.[51]

2       Because the FDCPA is a strict liability statute, proof of one violation is sufficient to defeat

3   a motion to dismiss and support summary judgment for a Plaintiff.[52]  In light of this strict liability

4   standard, a consumer need not show intentional conduct by the debt collector in order to be entitled

5   to damages,[53] and there are no unimportant violations.[54]  Further, no proof of deception or actual

6   damages is required to obtain statutory remedies.[55]

7   **C.   DEFENDANTS FAILED TO SEND THE PLAINTIFF A WRITTEN NOTICE
        CONTAINING THE NAME OF THE CURRENT CREDITOR TO WHOM THE
8       ALLEGED DEBT WAS OWED, IN VIOLATION OF 15 U.S.C. § 1692g(a)(2).**

9       15 U.S.C. § 1692g(a)(2) states:

10      Within five days after the initial communication with a consumer in connection with
        the collection of any debt, *a debt collector shall*, unless the following information
11      is contained in the initial communication or the consumer has paid the debt, *send the
        consumer a written notice containing . . . the name of the creditor to whom the debt
12      is owed...*[56]

13      The facts in the <u>Complaint</u>, which are admitted by the Defendants, are that "on a date

14  unknown to the Plaintiff, the alleged debt was sold, assigned, or otherwise transferred to Unifund

15

16

17      [50] <u>Complaint</u> (Doc. 1) ¶¶ 7, 8, 9, 10, 30, 31, 32 and 33; <u>Answer</u> ¶2 (Doc. 21).

18      [51] <u>Complaint</u> (Doc. 1) ¶ 3, 24, 25, 26, 35.

19      [52] *See Hartman v. Meridian Financial Services, Inc.*, 191 F. Supp. 2d 1031, 1046-47 (W.D.
20  Wis. 2002) ("One false or misleading statement in a collection letter renders the entire
    communication false or misleading and constitutes one violation");  *See also Cacace*, 775 F. Supp.
21  at 505;  *Traverso v. Sharinn*, 1989 U.S. Dist. LEXIS 19100, *4 (D. Conn. Sept. 15, 1989);  *Picht v.
    Jon R. Hawks, Ltd.*, 236 F.3d 446, 451 (8th Cir. 2001);  *Bentley*, 6 F.3d at 62.
22

23      [53] *See Pittman v. J.J. Mac Inttyre Co. of Nevada, Inc.*, 969 F. Supp. 609, 613 (D. Nev. 1997).
    *See also Russell*, 74 F.3d at 36 ("Because the Act imposes strict liability, a consumer need not show
24  intentional conduct by the debt collector to be entitled to damages.").

25      [54] *Bentley*, 6 F.3d at 63 (no non-actionable violations of FDCPA);  *Taylor*, 103 F.3d at 1234
    (failure "to comply with any provision of the FDCPA" leads to liability).
26

27      [55] *Baker*, 677 F.2d at 780.

28      [56] 15 U.S.C. § 1692g(a)(2) (emphasis added).

1    CCR Partners."[57]   Defendants also admit that this assignment of the alleged debt occurred before

2    the Defendants' initial collection letter was sent to Plaintiff.[58]   Therefore, the true creditor to whom

3    the alleged debt was owed at the time the collection letter was sent was Unifund CCR Partners, not

4    Citibank.

5          Because Defendants' initial collection letter violated 15 U.S.C. § 1692g(a)(2) by failing to

6    name Unifund CCR Partners as the current creditor, Plaintiff should be granted summary judgment

7    on this issue.[59]

8    **D.    DEFENDANTS FAILED TO SEND THE PLAINTIFF A WRITTEN NOTICE
         CONTAINING A STATEMENT THAT IF THE PLAINTIFF NOTIFIES THE**
9    **DEFENDANTS IN WRITING WITHIN THIRTY FROM RECEIPT OF THE
         INITIAL COLLECTION LETTER THAT THE ALLEGED DEBT, OR ANY**
10   **PORTION THEREOF, IS DISPUTED, THE DEFENDANTS WOULD OBTAIN
         VERIFICATION OF THE ALLEGED DEBT AND THAT A COPY OF THE**
11   **VERIFICATION WOULD BE MAILED TO THE PLAINTIFF, IN VIOLATION OF
         15 U.S.C. § 1692g(a)(4).**

12

13         15 U.S.C. § 1692g(a) sets forth requirements that a debt collector must comply with when

14   providing notice of a debt to a consumer.  These requirements state:

15         (a) Notice of debt; contents. Within five days after the initial communication with
           a consumer in connection with the collection of any debt, a debt collector shall,
16         unless the following information is contained in the initial communication or the
           consumer has paid the debt, send the consumer a written notice containing--

17

18         (1) the amount of the debt;
           (2) the name of the creditor to whom the debt is owed;
19         (3) a statement that unless the consumer, within thirty days after receipt of
           the notice, disputes the validity of the debt, or any portion thereof, the debt
20         will be assumed to be valid by the debt collector;
           (4) a statement that if the consumer notifies the debt collector in writing
21         within the thirty-day period that the debt, or any portion thereof, is disputed,
           the debt collector will obtain verification of the debt or a copy of a judgment
22         against the consumer and a copy of such verification or judgment will be
           mailed to the consumer by the debt collector; and
23         (5) a statement that, upon the consumer's written request within the thirty-day
           period, the debt collector will provide the consumer with the name and

24

25   _____

26   [57]  Complaint ¶ 13, (Doc. 1); Answer ¶ 2, (Doc. 21).

27   [58]  Complaint ¶¶ 14 and 15, (Doc. 1); Answer ¶ 2, (Doc. 21).

28   [59]  *Sparkman v. Zwicker & Associates, P.C.*, 374 F. Supp. 2d 293, 300-01 (E.D.N.Y. 2005).

1          address of the original creditor, if different from the current creditor.[60]

2          Defendants' initial collection letter to the Plaintiff (a copy of which is attached to the

3 Complaint (Doc. 1) as Exhibit "1") reads in relevant part as follows:

> Unless you notify this office within 30 days after receiving this notice that you
> dispute the validity of this debt or any portion thereof, this office will assume this
> debt is valid. If you notify this office within 30 days from receiving this notice, this
> office will: obtain verification of the debt or obtain a copy of a judgment and mail
> you a copy of such judgment or verification. If you request this office in writing
> within 30 days after receiving this notice, this office will provide you with the name
> and address of the original creditor, if different from the current creditor.[61]

8          The first sentence quoted above provides the notice required by 15 U.S.C. § 1692g(a)(3) and

9 the third sentence provides the notice required by 15 U.S.C. § 1692g(a)(5). Therefore, the second

10 sentence must be intended to provide the notice required by 15 U.S.C. § 1692g(a)(4), however, it

11 fails for two reasons. First, this sentence fails to inform the consumer that they must dispute the debt

12 in writing to preserve their right to receive verification of the debt. Second, the sentence fails to

13 notify the consumer that any portion of the debt can be disputed to trigger the right to receive a

14 verification.

15          As to the first violation, the court in *McCabe v. Crawford & Company*[62], found a violation

16 of § 1692g(a)(4) in a collection letter that read in relevant part:

> Unless we hear from you within thirty (30) days after the receipt of this letter
> disputing this claim, Federal Law provides that this debt will be assumed to be valid
> and owing. In the event you contact us and dispute the charges owed, we will
> promptly furnish you with any and all documentation to substantiate the claim.

20 The court held that:

> Section 1692g(a) dictates that the debt collector shall send the consumer a written
> notice stating that upon *written* notification of a dispute, verification *must* be
> provided by the debt collector. 15 U.S.C. § 1692g(a)(4). [Debt collector] correctly
> asserts that § 1692g(a)(4) does not expressly prevent the debt collector from
> providing verification of the debt upon *oral* notification of the dispute. However,
> [debt collector] misses the point of the protection found in § 1692g(a)(4). Although
> a debt collector *may* provide verification upon *oral* notification, the debt collector

---

[60] 15 U.S.C. § 1692g(a).

[61] Complaint, Exhibit "1", (Doc. 1).

[62] 272 F. Supp. 2d 736 (N.D. Il. 2003).

1
2
3
4

> *must* provide verification upon *written* notification.  If the debtor gives only *oral* notification of the dispute, the FDCPA imposes no requirement on the debt collector to obtain verification of the debt.  See *Fasten v. Zager*, 49 F. Supp. 2d 144, 149 (E.D.N.Y. 1999) (holding that the debt collector was not required to obtain verification upon oral notification of the dispute).  Thus, by omitting the words "in writing," [debt collector] did not effectively convey to the consumer his rights under the FDCPA and thus violated the Act.[63]

5

As to the second violation, the Ninth Circuit in *Baker v. G.C. Servs. Corp.*,[64]  found a

6

violation of § 1692g(a)(4) in a collection letter that read in relevant part:

7
8

> Verification of this debt, a copy of judgment or the name and address of the original creditor, if different from the current creditor, will be provided if requested in writing within 30 days. Otherwise, the debt will be assumed to be valid.[65]

9

The court held that:

10
11
12
13

> The clear language of the statute explicitly requires that a debtor shall be given notice that he may "dispute the validity of the debt, or any portion thereof . . . ." 15 U.S.C. § 1692g(a)(3).  "In construing a statute we are obliged to give effect, if possible, to every word Congress used."  *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339, 99 S. Ct. 2326, 2331, 60 L. Ed. 2d 931 (1979).  Congress clearly required the notice to inform the debtor that he could dispute any portion of the debt.[66]

14

Because Defendants' initial collection letter contains two separate violations of 15 U.S.C.

15

§ 1692g(a)(4), Plaintiff should be granted summary judgment on this issue.

16    **E.    THIS COURT SHOULD AWARD PLAINTIFF THE MAXIMUM STATUTORY DAMAGE AMOUNT OF $1,000 UNDER THE FDCPA.**

17

18

The maximum statutory damage award available under the Federal FDCPA is a modest

19

$1,000.  Courts have therefore awarded the maximum amount even when the violations found were

20

less numerous and egregious than those herein.  For example, in *Riviera v. M.A.B.*,[67] the court

21

awarded the maximum $1,000 because the validation notice appeared on the back of the letter, in

22

23    [63]  *Id.* at 738 (emphasis in original).

24

25    [64]  677 F.2d 775 (9th Cir. 1982).

26    [65]  *Id.* at 778.

27    [66]  *Id.*

28    [67]  682 F. Supp. 174 (W.D.N.Y. 1988).

1    relatively small print, with no reference to it on the front of the letter.  Thus, even though the notice

2    was accurate, the court determined a $1,000 award was appropriate.  Here the notice is inaccurate

3    in at least three respects.  Furthermore, in *Tolentino v. Friedman*,[68] the Seventh Circuit upheld the

4    maximum statutory award of $1,000 despite finding that only one provision of the FDCPA had been

5    proven.  In that case the debt collector had included a disclosure required 15 U.S.C. § 1692e(11) in

6    its initial notice, but had failed to include it in a subsequent notice.  The present case involves at

7    least 3 violations of the federal FDCPA.  Thus, the violations herein are more numerous and

8    meaningful than in those cases, and therefore the Court should award the maximum amount of

9    statutory damages under 15 U.S.C. § 1692k(a)(2)(A), which is $1,000.

10   **F.     BECAUSE THE CALIFORNIA RFDCPA INCORPORATES MOST OF THE PROVISIONS OF THE FEDERAL FDCPA BY REFERENCE, A DETERMINATION THAT DEFENDANTS VIOLATED THE FDCPA SUPPORTS AN ADDITIONAL AWARD OF STATUTORY DAMAGES UNDER THE RFDCPA .**

13   Cal. Civil Code § 1788.17 provides that:

14   Notwithstanding any other provision of this title, every debt collector collecting or
15   attempting to collect a consumer debt shall comply with the provisions of Sections
     1692b to 1692j, inclusive, of, and shall be subject to the remedies in Section 1692k
16   of Title 15 of the United States Code.  However, subsection (11) of Section 1692e
     and Section 1692g shall not apply to any person specified in paragraphs (A) and (B)
17   of subsection (6) of Section1692a of Title 15 of the United States Code or that
     person's principal.[69]

18   The Northern District of California has held that a violation of the FDCPA is also a violation

19   of Cal. Civil Code § 1788.17.[70]  The monetary remedy for a violation of Cal. Civil Code § 1788.17

20   is the same amount as the remedy provided under 15 U.S.C. § 1692k—$1,000.[71]  Therefore, Plaintiff

21

22   ─────────────────

23        [68]  46 F.3d 645 (7th Cir. 1995).

24        [69]  Cal. Civil Code § 1788.17.

25        [70]  *Alkan v. Citimortgage, Inc.*, 336 F. Supp. 2d 1061, 1065 (N.D. Cal. 2004), and *Edstrom v. All Servs. & Processing*, 2005 U.S. Dist. LEXIS 2773 (N.D. Cal. February 22, 2005).

26

27        [71]  *Abels v. JBC*, 227 F.R.D. 541, 548 (N.D. Cal. 2005) ("A strict reading of Civil Code 1788.17 clearly paves way for CA FDCPA violators to be subjected to the same remedies articulated

28   in 15 U.S.C. 1692k.")

1    is entitled to $1,000 damages pursuant to Cal. Civil Code § 1788.17.[72]

2    **G.   BOTH CONGRESS AND THE CALIFORNIA LEGISLATURE HAVE EXPRESSED THEIR INTENT THAT THE REMEDIES FOR VIOLATIONS OF THE FDCPA AND**
3    **RFDCPA BE CUMULATIVE.**

4    Cal. Civil Code § 1788.32 states that:

5    The remedies provided herein are intended to be cumulative and are in addition to any other procedures, rights, or remedies under any other provision of law.
6

7    Thus, a violation of the federal statute can lead to damages under the federal FDCPA and a

8    violation of the California statute leads to damages under the RFDCPA.  Indeed, the FDCPA

9    expressly states:

10    [t]his subchapter does not annul, alter, or affect, or exempt any person subject to the provisions of this subchapter from complying with the law of any State with respect
11    to debt collection practices, except to the extent that those laws are in consistent with any provision of this subchapter, and then only to the extent of the inconsistency.[73]
12

13    Moreover, courts both within and outside the Ninth Circuit, have allowed statutory damages

14    under both federal and state consumer protection statutes.[74]  Thus, the Court should not be reluctant

15    to assess the maximum possible statutory damages under both federal and state law.  As this Court

16    has noted, Cal. Civil Code § 1788 was amended to expand the remedies of the RFDCPA, including

17

18

19

20    [72] It is also important to note that, in the paragraph quoted above, the California Legislature
21    specifically carved out requirements under § 1692e(11) and § 1692g, which are certain notice requirements traditional *debt collectors* (collecting debts on behalf of another) must comply with,
22    but retained an exemption to such notice requirements for *original creditors* (collecting debts on their own behalf).  But, at the same time the legislature left in the entire remedial scheme of 15
23    U.S.C. § 1692k, including the $1,000 statutory damage remedy.  Had the California Legislature wanted to carve out the $1,000 statutory remedy from Cal. Civil Code § 1788.17 they certainly knew
24    how to do so, but they chose not to.  Thus, they intended to provide consumers a remedy separate and in addition to the remedy afforded under Cal. Civil Code § 1788.30 and 15 U.S.C. § 1692k.
25

26    [73] 15 U.S.C. § 1692n.

27    [74] *Sakuma v. First National Credit Bureau*, 1989 U.S. Dist. LEXIS 19120 (D. HI. November 15, 1989), *Mann v. Acclaim*, 348 F. Supp. 2d 923 (S.D. OH. 2004), and *Chapman v. ACB Business*
28    *Services*, Inc., 1997 U.S. Dist. LEXIS 23743 (S.D. W.V. February 13, 1997).

1    an expansion of the statutory damages available under the state law.[75]

2         Additionally, this Court has concluded, rather than drafting new language to the RFDCPA,

3    the legislature simply incorporated entire sections of the FDCPA by reference.[76]  Indeed, this Court

4    has stated, "California simply incorporated by reference the text of certain federal provisions into

5    the CFDCPA, rather than copying them verbatim into the California code.  Any resulting liability,

6    however, remains a state claim."[77]  In a separate case, this Court went on to hold that a violation of

7    15 U.S.C. § 1692g was also a violation of Cal. Civil Code § 1788.17.[78]  Thus, by incorporating 15

8    U.S.C. § 1692k by reference (and its statutory damages of $1,000), the California legislature chose

9    to make the additional $1,000 available, as a matter of state law, when it enacted Cal. Civil Code

10   § 1788.17.

11   **H.    PLAINTIFF HAS A STATUTORY RIGHT TO ATTORNEY'S FEES**

12        The federal FDCPA directs a court to award attorney's fees to a prevailing consumer.[79]  A

13   number of cases decided under 15 U.S.C. § 1692k have held that an award of attorney fees and costs

14   is required if the plaintiff prevails.[80]  The Court should award the Plaintiff her reasonable attorney

15   fees and costs incurred in this matter.

16

17        [75]  *Abels*, 227 F.R.D. at 548 (The mandatory language in the amendment—" . . . shall be

18   subject to the remedies in Section 1692k" leaves little doubt as to the intent of the legislature to
     broaden the remedies for RFDCPA.)

19        [76]  *Alkan*, 336 F. Supp. 2d at 1065).

20        [77]  *Id*.

21

22        [78]  *Edstrom,* 2005 U.S. Dist. LEXIS 2773 at *15.

23        [79]  15 U.S.C. § 1692k(a)(3).

24        [80]  *See, e.g. Zagorski v. Midwest Billing Services, Inc.*, 178 F.3d 116 (7th Cir. 1997) (holding

25   it was an abuse of discretion not to award attorney's fees following a stipulated judgment in the
     amount of $100; and directing the court to award fees sufficient to compensate the attorney for the

26   time spent on the case in order to encourage enforcement of the FDCPA); *Pipiles v. Credit Bureau*,
     Inc., 886 F.2d 22 (2nd Cir. 1989) (directing trial court to award fees on remand despite the lack of

27   actual or statutory damages because Plaintiff had demonstrated that Defendant violated the FDCPA);
     *Perez v. Perkiss*, 742 F.Supp. 883 (D.Del. 1990) (awarding Plaintiffs' legal services attorneys

28   $10,110 after a half-day jury trial in which Plaintiff was awarded $1,200 in damages).

1

**CONCLUSION**

2       For the reasons set forth above, the Plaintiff, as a matter of law, is entitled to summary

3   judgment: 1) the Defendants' collection letter (Exhibit "1") violates the Fair Debt Collection

4   Practices Act (hereinafter "FDCPA"),  15 U.S.C. §§ 1692g(a)(2)  and 1692g(a)(4);  2) the

5   Defendant's collection letter (Exhibit "1") violates the Rosenthal Fair Debt Collection Practices Act,

6   California Civil Code § 1788.17; 3) awarding the Plaintiff statutory damages in an amount not

7   exceeding $1,000 pursuant to 15 U.S.C. § 1692k(a)(2)(A); 4) awarding the Plaintiff statutory

8   damages in an amount not exceeding $1,000 pursuant to California Civil Code § 1788.17; 5)

9   awarding the Plaintiff the costs of this action and reasonable attorneys fees pursuant to 15 U.S.C.

10  § 1692k(a)(3) and Cal. Civil Code § 1788.17; and 6) awarding the Plaintiff such other and further

11  relief as may be just and proper.

12                                              CONSUMER LAW CENTER, INC.

13

14                                              By: /s/ Fred W. Schwinn
                                                    Fred W. Schwinn, Esq.
15                                                  Attorney for Plaintiff
                                                    YORK GEE AU CHAN

16

17

18

19

20

21

22

23

24

25

26

27

28

1   Fred W. Schwinn (SBN 225575)
    CONSUMER LAW CENTER, INC.
2   12 South First Street, Suite 416
    San Jose, California  95113-2404
3   Telephone Number: (408) 294-6100
    Facsimile Number: (408) 294-6190
4   Email Address: fred.schwinn@sjconsumerlaw.com

5   Attorney for Plaintiff
    DAVID JAMES HOLSINGER
6

7

8              IN THE UNITED STATES DISTRICT COURT
           FOR THE NORTHERN DISTRICT OF CALIFORNIA
9                     SAN JOSE DIVISION

10  DAVID JAMES HOLSINGER,                    Case No.  C05-02075-JF-PVT

11                  Plaintiff,

12  v.                                        **MEMORANDUM OF POINTS AND
                                              AUTHORITIES IN SUPPORT OF
13  WOLPOFF & ABRAMSON, L.L.P., a District    MOTION FOR SUMMARY
    of Columbia limited partnership,          JUDGMENT**

14                  Defendant.                Date:        June 16, 2006
                                              Time:        9:00 a.m.
15                                            Judge:       Honorable Jeremy Fogel
                                              Courtroom:   3, 5th Floor
16                                            Place:       280 South First Street
                                                           San Jose, California
17

18          COMES NOW the Plaintiff, DAVID JAMES HOLSINGER, by and through his attorney

19  Fred W. Schwinn of the Consumer Law Center, Inc., and pursuant to Fed. R. Civ. P. 56 and Civil

20  L.R. 56-1, hereby submits his Memorandum of Points and Authorities in Support of Motion for

21  Summary Judgment filed herein.

22

23

24

25

26

27

28

1

**TABLE OF CONTENTS**

2     Table of Contents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

3     Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

4     I.       INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

5     II.     PROCEDURAL HISTORY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

6     III.    FACTS OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

7     IV.    STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

8     V.     STATEMENT OF QUESTIONS PRESENTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

9     VI.    ARGUMENTS AND AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

10           A.     THE "LEAST SOPHISTICATED CONSUMER" STANDARD IS USED
                  TO ANALYZE VIOLATIONS OF THE FDCPA . . . . . . . . . . . . . . . . . . . . . . . 6

11

12           B.     UNDER THE STRICT LIABILITY STANDARD OF THE FDCPA, W&A
                  HAS COMMITTED NUMEROUS VIOLATIONS OF THE ACT, AS SEEN
                  FROM THE PERSPECTIVE OF THE "LEAST SOPHISTICATED
13                   CONSUMER" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

14           C.     W&A VIOLATED 15 U.S.C. § 1692g(b) WHEN IT FAILED TO CEASE
                  ITS COLLECTION EFFORTS AND VERIFY THE DEBT AFTER
15                   RECEIVING A TIMELY WRITTEN DISPUTE FROM PLAINTIFF . . . . . . . 9

16                 1.     SERVING PLAINTIFF WITH AN ARBITRATION CLAIM PRIOR
                        TO VERIFY THE DEBT BEING COLLECTED IS A
17                         VIOLATION OF 15 U.S.C. § 1692g(b) . . . . . . . . . . . . . . . . . . . . . . . 10

18                 2.     REQUESTING PAYMENT OF THE DEBT PRIOR TO
                        VERIFYING THE DEBT BEING COLLECTED IS A VIOLATION
19                         OF 15 U.S.C. § 1692g(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

20           D.     IF SERVICE OF THE ARBITRATION CLAIM WAS INTENDED BY
                    W&A TO BE VERIFICATION IT WAS INADEQUATE BECAUSE IT
21                   DID NOT ACCURATELY STATE THE AMOUNT BEING COLLECTED
                  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
22

23           E.     A DEBT COLLECTOR WHO SENDS MULTIPLE VALIDATION
                  NOTICES TO CONSUMERS MUST HONOR EACH VALIDATION
                  REQUEST IF THE CONSUMER DISPUTES THE DEBT BEING
24                   COLLECTED—EVEN IF THE DISPUTE IS IN RESPONSE TO A
                  SUBSEQUENT VALIDATION NOTICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
25

26           F.     W&A VIOLATED 15 U.S.C. §§ 1692e AND 1692e(10) BY FALSELY
                  REPRESENTING THAT IT WOULD CEASE ITS COLLECTION
                  EFFORTS UNTIL IT MAILED A VERIFICATION OF THE DEBT TO
27                   THE PLAINTIFF IF HE DISPUTED IT IN WRITING WITHIN 30 DAYS
                  FROM THE DATE HE RECEIVED THE NOVEMBER 23, 2004,
28

COLLECTION LETTER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

G.   W&A VIOLATED 15 U.S.C. §§ 1692e(2) AND 1692f(1) BY
     ATTEMPTING TO COLLECT ATTORNEY'S FEES IN AN AMOUNT
     THAT WAS NOT EXPRESSLY AUTHORIZED BY THE AGREEMENT
     CREATING THE DEBT OR PERMITTED LAW . . . . . . . . . . . . . . . . . . . . . . . 18

     The Agreement Creating the Debt Does Not Contemplate Liquidated
     Attorney Fees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

     Liquidated Attorney Fees Are Not Permitted Under the Law
     Governing the Agreement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

H.   BY ADDING AN UNAUTHORIZED ATTORNEY FEE AND BY
     FAILING TO ITEMIZE THE DEBT, W&A VIOLATED 15 U.S.C. §§
     1692e, 1692e(2), 1692e(10) AND 1692f(1) BY MISREPRESENTING THE
     NATURE, CHARACTER AND AMOUNT OF THE DEBT BEING
     COLLECTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

I.   W&A VIOLATED 15 U.S.C. § 1692e(10) BY FALSELY REPRESENTING
     THE INTEREST RATE APPLICABLE TO THE DEBT BEING
     COLLECTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

J.   THIS COURT SHOULD AWARD PLAINTIFF THE MAXIMUM
     STATUTORY DAMAGE AMOUNT OF $1,000 UNDER THE FDCPA . . . . . 25

K.   PLAINTIFF HAS A STATUTORY RIGHT TO ATTORNEY'S FEES . . . . . . 25

III.   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

1

<u>**TABLE OF AUTHORITIES**</u>

2

<u>**Cases**</u>

3

*Anderson v. Canyon State Professional Services, Inc.,*
2003 U.S. Dist. LEXIS 26419 (D. Ariz. Sept 1, 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

4

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

5

*Avila v. Rubin,* 84 F.3d 222 (7th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 25

6

*Azar v. Hayter,* 874 F. Supp. 1314 (N.D. Fla. 1994), *aff'd,* 66 F.3d 342 (11th Cir. 1995),
*cert. denied,* 516 U.S. 1048, 133 L. Ed. 2d 666, 116 S. Ct. 712 (1996) . . . . . . . . . . . . . . . . . . . 13

7

*Baker v. G.C. Services,* 677 F.2d 775 (9th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 8, 9

8

*Bartlett v. Heibl,* 128 F.3d 497 (7th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

9

*Bentley v. Great Lakes Collection Bureau,* 6 F.3d 60 (2nd Cir. 1993) . . . . . . . . . . . . . . . . . . 7, 8, 9

10

*Beuter v. Canyon State Professional Services, Inc.,*
2005 U.S. Dist. LEXIS 12281 at *9 (D. Ariz. June 13, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

11

*Boatley v. Diem Corp.,*
2004 U.S. Dist. LEXIS 5089 (D. Ariz. March 24, 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

12

13

*Brenker v. Creditors Interchange, Inc.,*
2004 U.S. Dist. LEXIS 4825 (S.D.N.Y. March 25, 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

14

*Brinson v. Linda Rose Joint Venture,* 53 F.3d 1044 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . 5

15

*Cacace v. Lucas,* 775 F. Supp. 502 (D. Conn. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

16

*Celotex Corp. v. Catrett,* 477 U.S. 317 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

17

*Chaudhry v. Gallerizzo,* 174 F.3d 394 (4th Cir. 1999),
*cert. denied,* 528 U.S. 891, 145 L. Ed. 2d 181, 120 S. Ct. 215 (1999) . . . . . . . . . . . . . . . . . 13, 14

18

19

*Clark v. Capital Credit & Collection Services, Inc.,*
2004 U.S. Dist. LEXIS 11349 (D. Or. January 23, 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

20

*Clomon v. Jackson,* 988 F.2d 1314 (2nd Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 9

21

*DiRosa v. North Shore Agency, Inc. et al.,*
56 F. Supp. 2d 1039 (N.D. Ill. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

22

23

*EEOC v. Farmer Bros. Co.,* 31 F.3d 891 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

24

*Fields v. Wilber Law Firm,* 383 F.3d 562 (7th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 24

25

*General Motors Corp v. Cox,* 304 A.2d 55 (Del. 1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

26

*Graziano v. Harrison,* 950 F.2d 107 (3rd Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

27

28

*Hartman v. Meridian Financial Services, Inc.,*
191 F. Supp. 2d 1031 (W.D. Wis. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Higgins v. Capitol Credit Services, Inc.,* 762 F. Supp. 1128 (D. Del. 1991) . . . . . . . . . . . . . . . 18

*Jeter v. Credit Bureau,* 760 F.2d 1168 (11th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Johnson v. Revenue Mgmt. Corp.,* 169 F.3d 1057 (7th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . 24

*Kelly v. Great Seneca Financial Corp.,*
2005 U.S. Dist. LEXIS 40192 (S.D. Ohio June 16, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Kojetin v. C U Recovery, Inc.,* 1999 U.S. Dist LEXIS 10930 (D. Minn. March 29,1999),
*aff'd,* 212 F.3d 1318 (8th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20

*Kolker v. Duke City Collection Agency,* 750 F. Supp. 468 (D.N.M. 1990) . . . . . . . . . . . . . . . . 8

*Lewis v. ACB Business Services, Inc.,* 135 F.3d 389 (6th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . 25

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574 (1986) . . . . . . . . . . . . . . . 4, 5

*McCartney v. First City Bank,* 970 F.2d 45 (5th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*McDaniel v. South & Associates, P.C.,* 325 F. Supp. 2d 1210 (D. Kan. 2004) . . . . . . . . . . . . . . 10

*Miller v. Payco-General American Credits, Inc.,* 943 F.2d 482 (4th Cir. 1991) . . . . . . . . . . . . 16

*Perez v. Perkiss,* 742 F. Supp. 883 (D. Del. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Picht v. Jon R. Hawks, Ltd.,* 236 F.3d 446 (8th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Pipiles v. Credit Bureau, Inc.,* 886 F.2d 22 (2nd Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Pittman v. J.J. Mac Intteyre Co. Of Nevada, Inc.,*
969 F. Supp. 609 (D. Nev. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Princess Hotels Int'l v. Delaware State Bar Ass'n,*
1998 Del. Super. Lexis 189 (Del. Super Ct. March 10, 1998) . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Rivera v. MAB Collections, Inc.,* 682 F. Supp. 174 (W.D.N.Y. 1988) . . . . . . . . . . . . . . . 7, 8, 25

*Rock v. Short,* 336 A.2d 219 (Del. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Russell v. Equifax A.R.S.,* 74 F.3d 30 (2nd Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 9

*Saucier v. Katz,* 533 U.S. 194 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Schneider v. TRW, Inc.,* 938 F.3d 986 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Semper v. JBC Legal Group,*
2005 U.S. Dist. LEXIS 33591 (W.D.W.A. Sept. 6, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Stockton Wire Products, Inc. v. K-Lath Corp.,* 475 U.S. 574 (1986) . . . . . . . . . . . . . . . . . . . . . 4

1   *Stojanovski v. Strobl & Manoogian, P.C.,* 783 F. Supp. 319 (E.D. Mich. 1992) . . . . . . . . . . . . . 7

2   *Stolicker v. Muller,* 2005 U.S. Dist. LEXIS 32404 (D. Mich. Sept 8, 2005) . . . . . . . . . . . . 20, 23

3   *Swanson v. Southern Oregon Credit Serv.,* 869 F.2d 1222 (9th Cir. 1988) . . . . . . . . . . . . . . . 6, 7

4   *Taylor v. Perrin Landry, deLaunday & Durand,* 103 F.3d 1232 (5th Cir. 1997) . . . . . . . . . . . 7, 9

5   *Terran v. Kaplan,* 109 F.3d 1428 (9th Cir. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

6   *Tolentino v. Friedman,* 46 F.3d 645 (7th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

7   *Traverso v. Sharinn,*
    1989 U.S. Dist. LEXIS 19100 (D. Conn. Sept. 15, 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
8
    *T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Ass'n,*
9   809 F.2d 626 (9th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

10  *U.S. v. Nat'l Fin. Servs.,* 98 F.3d 131 (4th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

11  *Wade v. Regional Credit Ass'n,* 87 F.3d 1098 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

12  *Whatley v. Universal Collection Bureau, Inc.,* 525 F. Supp. 1204 (N.D. Ga. 1981) . . . . . . . . . . 8

13  *Wilson v. Quadramed Corp.,* 225 F.3d 350 (3rd Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

14  *Withers v. Eveland,* 988 F. Supp. 942 (E.D. Va. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

15  *Zagorski v. Midwest Billing Services, Inc.,* 178 F.3d 116 (7th Cir. 1997) . . . . . . . . . . . . . . . . . 26

16                                          **Statutes**

17  10 Del. Code § 3912 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

18  15 U.S.C. § 1629(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

19  15 U.S.C. § 1629a(5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

20  15 U.S.C. § 1629d . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

21  15 U.S.C. § 1629e . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

22  15 U.S.C. § 1629e(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

23  15 U.S.C. § 1629e(2)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

24  15 U.S.C. § 1629e(2)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

25  15 U.S.C. § 1692e(10) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

26  15 U.S.C. § 1629e(11) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

27  15 U.S.C. § 1629f . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

28

| | |
|---|---|
| 1 | 15 U.S.C. § 1692f(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim* |
| 2 | 15 U.S.C. § 1629g . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 15 |
| 3 | 15 U.S.C. § 1692g(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18 |
| 4 | 15 U.S.C. § 1692g(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim* |
| 5 | 15 U.S.C. § 1629k . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25 |
| 6 | 15 U.S.C. § 1629k(a)(2)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25 |
| 7 | 15 U.S.C. § 1629k(a)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25 |

8 **<u>Rules</u>**

| | |
|---|---|
| 9 | Delaware Lawyer's Code of Professional Responsibility, DR 2-106(B)(1) . . . . . . . . . . . . . . . 22 |
| 10 | Delaware Lawyers' Rules of Professional Conduct, Rule 1.5 . . . . . . . . . . . . . . . . . . . . . . . . . . 22 |
| 11 | Fed. R. Civ. P. 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5 |
| 12 | Fed. R. Civ. P. 56(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4 |
| 13 | Fed. R. Civ. P. 56(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5 |
| 14 | National Arbitration Forum Code of Procedure 6 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11 |
| 15 | National Arbitration Forum Code of Procedure 13 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11 |

## I.  INTRODUCTION

This action was brought to redress Defendant, WOLPOFF & ABRAMSON, L.L.P.'s, (hereinafter "W&A") false, misleading and abusive attempts to collect a consumer debt.  W&A violated the Federal Fair Debt Collection Practices Act (hereinafter "FDCPA") which prohibits debt collectors from engaging in unfair and deceptive practices.  Plaintiff contends that W&A violated the FDCPA by: (1) failing to cease its collection efforts and verify the debt after receiving a timely dispute from the Plaintiff; (2) falsely representing that it would cease it collection efforts until it mailed a verification of the debt to the Plaintiff if he disputed the debt in writing within 30 days from the date he received W&A's November 23, 2004, collection letter; (3) adding an unauthorized attorney fee and failing to itemize the debt, thereby misrepresenting the nature, character and amount of the debt being collected; (4) by attempting to collect attorney fees that were not expressly authorized by the agreement creating the debt or permitted by law; and (5) falsely representing the interest rate applicable to the debt being collected.  For these violations of the FDCPA, Plaintiff seeks an award of $1,000 in statutory damages and his reasonable attorney fees and costs incurred in this case.

## II.  PROCEDURAL HISTORY

On May 20, 2005, Plaintiff filed his <u>Complaint</u> in this case alleging violations of the FDCPA.[1]   On July 15, 2005, W&A filed its Answer to the Complaint.[2]   On February 22, 2006, Plaintiff filed his <u>First Amended Complaint</u> in this case.[3]  On March 7, 2006, W&A filed its Answer to the Plaintiff's <u>First Amended Complaint</u>.[4]  The Deposition of David James Holsinger was taken

---

[1]  Doc. 1.

[2]  Doc. 7.

[3]  Doc. 25.

[4]  Doc. 27.

by W&A on March 30, 2006.[5]  The discovery in this case closed on March 31, 2006.[6]  On April 19, 2006, the parties filed a Stipulation for Partial Dismissal[7] which dismisses all of the individual Defendants from this case as well as all claims made under the California Rosenthal Fair Debt Collection Practices Act.  Therefore, the only Defendant remaining in this case is W&A and the only remaining claims are those brought under the federal FDCPA.

On May 1, 2006, Plaintiff filed his Motion for Summary Judgment in this case.  This Memorandum of Points and Authorities is filed in support of the Motion for Summary Judgment.

## III.  FACTS OF THE CASE

On or about July 17, 2002, Plaintiff incurred a financial obligation, namely a revolving credit account issued by MBNA America Bank, N.A.(hereinafter "MBNA") and bearing the account number XXX-XXXXX-XX6-683 (hereinafter "the debt").[8]  The debt was incurred primarily for personal, family or household purposes and is therefore a "debt" as that term is defined by 15 U.S.C. § 1692a(5).[9]  Sometime thereafter on a date unknown to the Plaintiff, the debt was consigned, placed or otherwise transferred to W&A for collection from the Plaintiff.[10]

On or about November 23, 2004, W&A mailed Plaintiff a collection letter in an attempt to collect the debt.[11]  A true and correct copy of the November 23, 2004, collection letter is attached

---

[5]  Deposition of David Holsinger at 1.  A true and accurate copy of the transcript of the Deposition of David Holsinger is attached hereto, and identified as Exhibit "6."

[6]  Doc. 13.; Doc. 22.

[7]  Doc. 43.

[8]  First Amended Complaint (hereinafter "Complaint") ¶ 12 (Doc. 25); Answer of Defendants Wolpoff & Abramson, LLP, Phillip Joseph Brusseau, Neal Jonathan Levitski and Matthew Paul Linkie to First Amended Complaint (hereinafter "Answer") ¶ 12 (Doc. 27).

[9]  Id.; Exhibit "6" at 69:24-25 and 70:1-7.

[10]  Complaint ¶13; Answer ¶ 13.

[11]  Complaint ¶¶ 14 and 16; Answer ¶¶ 14 and 16.

1    to the <u>First Amended Complaint</u> and identified as Exhibit "1."[12]  The November 23, 2004, collection

2    letter was the first communication received by the Plaintiff from W&A in connection with the

3    collection of the debt owed to MBNA.[13]

4         The November 23, 2004, collection letter represented that the amount owed by the Plaintiff

5    was $19,698.04.[14]  However, no account number was provided and the amount listed was different

6    from any account listed on Plaintiff's credit bureau reports.[15]  Because the account information

7    provided by W&A was unreconcilable, Plaintiff assumed W&A was mistaken.[16]  The November 23,

8    2004, collection letter states "If you dispute this debt, or any portion thereof, I urge you to take

9    advantage of your right to dispute this debt as described in the important notice on the reverse side

10   of this letter."[17]  Relying on this language and the notice on the reverse that the notice referred to,

11   Plaintiff mailed a letter to W&A on December 7, 2004, disputing the debt "in its entirety."[18]

12        W&A did not respond to the Plaintiff's dispute letter with a verification of the debt being

13   collected, instead W&A continued its collection efforts against the Plaintiff.[19]  First, on December

14   28, 2004, W&A served the Plaintiff with a copy of an Arbitration Claim that was filed by W&A in

15   the National Arbitration Forum.[20]   This claim described the debt as a principal amount of

16   $16,445.83, interest of $485.56 and attorney fees of $2,466.87—"equaling 15% of the outstanding

17

18   ───────────────

19        [12]  <u>Complaint</u> ¶ 15; <u>Answer</u> ¶ 15.

20        [13]  <u>Complaint</u> ¶ 18; Exhibit "6" at 70:8-13.

21        [14]  <u>Complaint</u> ¶ 20; <u>Answer</u> ¶ 20.

22        [15]  Exhibit "2"; Exhibit "6" at 39:8-25 and 40:1-3.

23        [16]  Exhibit "6" at 38:21-25.

24        [17]  Exhibit "1."

25        [18]  <u>Complaint</u> ¶ 26; <u>Answer</u> ¶ 26; Exhibit "6" at 70:14-25 and 71:1-25.

26        [19]  <u>Complaint</u> ¶ 32; Exhibit "6" at 72:1-15.

27        [20]  <u>Complaint</u> ¶¶ 36 and 37; <u>Answer</u> ¶¶ 36 and 37; Exhibit "6" at 72:1-4; <u>Documents Filed</u>

28   <u>Under Seal</u> at WA0003 (entry on December 21, 2004).

───────────────

1    principle balance."[21]  The total of these amounts was $299.77 less that W&A claimed was owed in

2    its November 23, 2004, collection letter.  Thereafter, W&A mailed Plaintiff a collection letter dated

3    January 20, 2005, and postmarked January 29, 2005.[22]  In its collection letter, W&A asked Plaintiff

4    to contact W&A to work out a settlement of the debt.[23]  Plaintiff did not respond to this letter,

5    because it was received after he filed for protection under Chapter 13 of the Bankruptcy Code on

6    January 22, 2004.[24]

7                                    **IV.  STANDARD OF REVIEW**

8            The standard of review for a motion for summary judgment is that the moving party is

9    entitled to summary judgment when the evidence shows that there is no genuine issue of material

10   fact, and that the moving party is entitled to judgment as a matter of law.[25]  The Court must

11   determine "whether there is the need for a trial—whether, in other words, there are any genuine

12   factual issues that properly can be resolved only by a finder of fact because they may reasonably be

13   resolved in favor of either party."[26]  "Only disputes over facts that might affect the outcome of the

14   suit under governing law will … preclude summary judgment."[27]  When the record taken as a whole

15   would not persuade a rational trier of fact to find for the nonmoving party, there is no genuine issue

16   for trial.[28]  In some cases, the evidence of the opposing party is so weak as to "fail[] to raise a

17

18

19

20          [21]  Complaint ¶42; Exhibit "4"; Answer ¶ 42; Exhibit "6" at 42:3-20.

21          [22]  Complaint ¶¶ 49, 51 and 52; Answer ¶¶ 49, 51 and 52.

22          [23]  Complaint ¶ 51; Exhibit "5"; Answer ¶ 51.

23          [24]  Exhibit "7" at WA 0067; Exhibit "6" at 74:7-20.

24          [25]  Fed. R. Civ. P. 56(c); *Stockton Wire Products, Inc. v. K-Lath Corp.,* 440 F.2d 782 (9th Cir.
25   1971).

26          [26]  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

27          [27]  *Id*. at 248.

28          [28]  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

material issue of fact.[29]

The movant must carry this burden of "identifying those parts of the record that indicate the absence of a genuine issue of material fact."[30] Once this burden is met, the non-movant is required to "come forward with specific facts showing that there is a genuine issue for trial" as to elements essential to the non-movant's claim.[31] The non-movant must show more than "some metaphysical doubt as to the material facts;"[32] he or she must "set forth specific facts showing that there is a genuine issue for trial."[33]

The Court must resolve all disputed facts and weigh all evidence "in the light most favorable to the nonmoving party."[34] However, the nonmoving party may not rely upon mere allegations or denials contained in its pleadings or briefs, but must come forward with specific facts showing the presence of a genuine issue for trial.[35] As noted above, the requirement that a "genuine" issue of fact must be present has been interpreted to mean that the evidence is such that a reasonable trier of fact could return a verdict for the nonmoving party.[36] Summary judgment is more than a "disfavored procedural shortcut," it is an important procedure "designed to 'secure the just, speedy and inexpensive determination of every action.' Fed. R. Civ. P. 1."[37] One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and

---

[29] *EEOC v. Farmer Bros. Co.,* 31 F.3d 891, 906 (9th Cir. 1994).

[30] *Brinson v. Linda Rose Joint Venture*, 53 F.3d 1044, 1048 (9th Cir. 1995).

[31] *Schneider v. TRW, Inc.,* 938 F.3d 986, 991 (9th Cir. 1990).

[32] *Matsushita Elec. Indus. Co.,* 475 U.S. at 586.

[33] Fed. R. Civ. P. 56(e).

[34] *T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Ass'n,* 809 F.2d 626, 630-31 (9th Cir. 1987).

[35] *Saucier v. Katz,* 533 U.S. 194, 212 n.2 (2001).

[36] *Anderson*, 477 U.S. at 248.

[37] *Celotex Corp. v. Catrett,* 477 U.S. 317, 327 (1986).

---

1    the rule should be interpreted in a way that allows it to accomplish this purpose.[38]

2    **V.  STATEMENT OF QUESTIONS PRESENTED**

3        Has W&A violated the Fair Debt Collection Practices Act?  If so, what is the amount of

4    statutory damages that should be awarded to the Plaintiff?

5    **VI.  ARGUMENTS AND AUTHORITIES**

6    **A.    THE "LEAST SOPHISTICATED CONSUMER" STANDARD IS USED TO ANALYZE VIOLATIONS OF THE FDCPA.**

7

8        The FDCPA states that its purpose, in part, is "to eliminate abusive debt collection practices

9    by debt collectors."[39]  The statute is designed to protect consumers from unscrupulous collectors,

10    whether or not there is a valid debt.[40]  The FDCPA broadly prohibits unfair or unconscionable

11    collection methods; conduct which harasses, oppresses or abuses any debtor; and any false,

12    deceptive or misleading statements, in connection with the collection of a debt.[41]  The FDCPA also

13    requires the debt collector to provide the consumer with a notice of his or her validation rights.[42]

14        The United States Court of Appeals for the Ninth Circuit has held that whether a

15    communication or other conduct violates the FDCPA is to be determined by analyzing it from the

16    perspective of the "least sophisticated consumer."[43]  The "least sophisticated consumer" standard

17    is objective—not subjective.[44]  Courts determine whether the "least sophisticated consumer" would

18

19

20

21    [38] *Id*., at 323-324.

22    [39] 15 U.S.C. § 1692(e).

23    [40] *Baker v. G.C. Services*, 677 F.2d 775, 777 (9th Cir. 1982).

24    [41] 15 U.S.C. §§ 1692d, 1692e, and 1692f.

25    [42] 15 U.S.C. § 1692g.

26    [43] *Swanson v. Southern Oregon Credit Serv.*, 869 F.2d 1222, 1225 (9th Cir. 1988); *Wade v.*

27    *Regional Credit Ass'n*, 87 F.3d 1098, 1100 (9th Cir. 1996).

28    [44] *Swanson*, 869 F.2d at 1227.

1    be misled or deceived by the statements made in a collection letter as a matter of law.[45]

2        "The basic purpose of the least sophisticated consumer standard is to ensure that the FDCPA

3    protects all consumers, the gullible as well as the shrewd."[46]  "While protecting naive consumers,

4    the standard also prevents liability for bizarre or idiosyncratic interpretations of collection notices

5    by preserving a quotient of reasonableness and presuming a basic level of understanding and

6    willingness to read with care."[47]

7        "As the FDCPA is a strict liability statute, proof of one violation is sufficient to support

8    summary judgment for the plaintiff."[48]  "Because the Act imposes strict liability, a consumer need

9    not show intentional conduct by the debt collector to be entitled to damages."[49]  Furthermore, the

10   question of whether the consumer owes the alleged debt has no bearing on a suit brought pursuant

11   to the FDCPA.[50]

12       It is important to note that by protecting consumers from abusive, deceptive and unfair

13   collection practices, the FDCPA insures that those debt collectors who refrain from using abusive

14   debt collection practices are not competitively disadvantaged.[51]  Moreover, the FDCPA further

15

16   ───────────────

17   [45]  *Wade*, 87 F.3d at 1100;  *Terran v. Kaplan*, 109 F.3d 1428, 1432 (9th Cir. 1977);  *Swanson*,
     896 F.2d at 1225-26.

18
     [46]  *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2nd Cir. 1993).
19
     [47]  *U.S. v. Nat'l Fin. Servs.*, 98 F.3d 131, 136 (4th Cir. 1996) (citations omitted);  *see also*
20   *Russell v. Equifax A.R.S.*, 74 F.3d 30 (2nd Cir. 1996); *Bentley v. Great Lakes Collection Bureau*, 6
     F.3d 60 (2nd Cir. 1993); *Jeter v. Credit Bureau*, 760 F.2d 1168 (11th Cir. 1985); *Graziano v.*
21   *Harrison*, 950 F.2d 107, 111 (3rd Cir. 1991); *Avila v. Rubin*, 84 F.3d 222, 226-27 (7th Cir. 1996) ("the
     standard is low, close to the bottom of the sophistication meter").
22
     [48]  *Cacace v. Lucas*, 775 F. Supp. 502, 505 (D. Conn. 1990);  *see also Stojanovski v. Strobl*
23   *& Manoogian, P.C.*, 783 F. Supp. 319, 323 (E.D. Mich. 1992); *Riveria v. MAB Collections, Inc.*, 682
     F. Supp. 174, 178-9 (W.D.N.Y. 1988).
24
     [49]  *Russell*, 74 F.3d at 33;  *see also Taylor v. Perrin Landry, deLaunay & Durand*, 103 F.3d
25   1232, 1236 (5th Cir. 1997); *Bentley*, 6 F.3d at 62;  *Clomon*, 988 F.2d at 1318.
26
     [50]  *McCartney v. First City Bank*, 970 F.2d 45 (5th Cir. 1992); *Baker*, 677 F.2d at 777.
27
     [51]  15 U.S.C. § 1692(e).
28

───────────────────────────────────────────────────────────
MEMORANDUM OF POINTS AND AUTHORITIES  -7-              Case No. 05-01939-JF-PVT

1  insures that regardless of whether a consumer owes a debt, he or she will be treated in a reasonable
2  and civil manner.[52]

3     Accordingly, Plaintiff asserts that whether or not W&A violated the FDCPA must be
4  evaluated from the standpoint of the "least sophisticated consumer."

**B.   UNDER THE STRICT LIABILITY STANDARD OF THE FDCPA, W&A HAS
5      COMMITTED NUMEROUS VIOLATIONS OF THE ACT, AS SEEN FROM THE
6      PERSPECTIVE OF THE "LEAST SOPHISTICATED CONSUMER."**

7     To establish a violation of the FDCPA, one need only show that: (1) the Plaintiff has been
8  the object of collection activity arising from a consumer debt, (2) the Defendant collecting the
9  "debt" is a "debt collector" as defined in the Act, and (3) the Defendant has engaged in any act or
10 omission in violation of the prohibitions or requirements of the Act.[53]  Plaintiff has pleaded and
11 W&A has admitted two of these three elements—Plaintiff is a consumer and the obligation being
12 collected was a consumer debt[54] and W&A is a debt collector.[55] The remainder of this memorandum
13 will show that the third element is also satisfied as a matter of law.

14    Because the FDCPA is a strict liability statute, proof of one violation is sufficient to defeat
15 a motion to dismiss and support summary judgment for a Plaintiff.[56]  In light of this strict liability
16 standard, a consumer need not show intentional conduct by the debt collector in order to be entitled

17
18
19
---
20   [52] *Baker*, 677 F.2d at 777.

21   [53] *Kolker v. Duke City Collection Agency*, 750 F. Supp. 468, 469 (D.N.M. 1990); *Riveria*,
22 682 F. Supp. at 175-76; *Withers v. Eveland*, 988 F. Supp. 942, 945 (E.D. Va. 1997); *Whatley v.
   Universal Collection Bureau, Inc*., 525 F. Supp. 1204, 1206 (N.D. Ga. 1981).

23   [54] Complaint ¶¶ 6, 12, 61 and 66; Answer ¶¶ 12, 61 and 66; Exhibit "6" at 69:24 to 70:7.
24   [55] Complaint ¶¶ 7 and 62; Answer ¶¶ 7 and 62.

25   [56] *See Hartman v. Meridian Financial Services, Inc.*, 191 F. Supp. 2d 1031, 1046-47 (W.D.
26 Wis. 2002) ("One false or misleading statement in a collection letter renders the entire
   communication false or misleading and constitutes one violation"); *See also, Cacace*, 775 F. Supp.
27 at 505; *Traverso v. Sharinn*, 1989 U.S. Dist. LEXIS 19100 at *4 (D. Conn. Sept. 15, 1989); *Picht
   v. Jon R. Hawks, Ltd.*, 236 F.3d 446, 451 (8th Cir. 2001); *Bentley*, 6 F.3d at 62.

1  to damages,[57] and there are no unimportant violations.[58]  Further, no proof of actual deception or

2  actual damages is required to obtain statutory remedies.[59]

3  **C.  W&A VIOLATED 15 U.S.C. § 1692g(b) WHEN IT FAILED TO CEASE ITS COLLECTION EFFORTS AND VERIFY THE DEBT AFTER RECEIVING A TIMELY WRITTEN DISPUTE FROM PLAINTIFF.**

5  On or about November 23, 2004, W&A mailed a collection letter to Plaintiff, advising him

6  that W&A was attempting to collect a debt in the amount of $19,698.04 which was allegedly owed

7  to MBNA.[60]  The collection letter's text stated "[i]f you dispute this debt, or any portion thereof, I

8  urge you to take advantage of your right to dispute this debt as described in the important notice on

9  the reverse side of this letter."[61]  After reading the validation notice on the back of the letter, Plaintiff

10  mailed a dispute letter to W&A disputing the debt "in its entirety."[62]  When W&A received

11  Plaintiff's dispute letter it did not cease its collection efforts and verify the debt being collected as

12  it promised it would in the collection letter and as required by 15 U.S.C. § 1692g(b).  Instead, W&A

13  served the Plaintiff with a claim that it had filed in the National Arbitration Forum to collect the

14  debt.[63]  This service of an arbitration claim prior to verifying the debt being collected constitutes a

15  violation of 15 U.S.C. § 1692g(b).

16  / / /

17  / / /

18

19

20  [57] *See Pittman v. J.J. Mac Inttyre Co. of Nevada, Inc.*, 969 F. Supp. 609, 613 (D. Nev. 1997). *See also Russell*, 74 F.3d at 36 ("Because the Act imposes strict liability, a consumer need not show intentional conduct by the debt collector to be entitled to damages.").

22  [58] *Bentley*, 6 F.3d at 63 (no non-actionable violations of FDCPA); *Taylor*, 103 F.3d at 1234 (failure "to comply with any provision of the FDCPA" leads to liability).

23

24  [59] *Baker*, 677 F.2d at 780; *Clomon*, 988 F.2d at 1319.

25  [60] Exhibit "1."

26  [61] Exhibit "1"; Exhibit "6" at 70:14-22.

27  [62] Exhibit "6" at 70:23-25 and 71:1-20.

28  [63] Documents Filed Under Seal at WA 0009.

---

1. **SERVING PLAINTIFF WITH AN ARBITRATION CLAIM PRIOR TO VERIFYING THE DEBT BEING COLLECTED IS A VIOLATION OF 15 U.S.C. § 1692g(b)**.

15 U.S.C. § 1692g(b) states:

> *If the consumer notifies the debt collector in writing* within the thirty-day period described in subsection (a) *that the debt, or any portion thereof, is disputed*, or that the consumer requests the name and address of the original creditor, *the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt* or a copy of a judgment, or the name and address of the original creditor, *and a copy of such verification* or judgment, or name and address of the original creditor, *is mailed to the consumer by the debt collector.*[64]  (emphasis added)

Serving an arbitration claim on the Plaintiff before sending verification of the debt is a failure to "cease collection of the debt"[65] and a violation of the statute's plain text.  Pursuing a lawsuit, including service of a complaint, after receiving a verification request is a violative continuation of collection efforts.[66]  Serving an arbitration claim is just like serving a Summons and Complaint in a lawsuit.  As explained on the National Arbitration Forum's (hereinafter "NAF") website, arbitration is a desirable substitute for judicial proceedings because, "[a]rbitration is a streamlined legal procedure"[67] that "provides comparable results to [a] court in terms of monetary

---

[64]  15 U.S.C. § 1692g(b).

[65]  *Id.*

[66]  *McDaniel v. South & Associates, P.C.*, 325 F. Supp. 2d 1210 (D. Kan. 2004) (Court found a violation of 15 U.S.C. § 1692g(b) when, after receiving a request to verify the debt, Defendant filed a judicial foreclosure and served the Plaintiff with a summons before verifying the debt.); *See also, Bartlett v. Heibl*, 128 F.3d 497, 501 (7th Cir. 1997) ("The debt collector is perfectly free to sue within thirty days; he just must cease his efforts at collection during the interval between being asked for verification of the debt and mailing the verification to the debtor").

[67]  National Arbitration Forum, *Frequently Asked Questions about NAF*, at http://www.arb-forum.com/questions.asp#2.

---

compensation"[68] and is used "to resolve legal disputes efficiently and at low cost."[69]  According to the NAF's Rules of Procedure, a Claimant must serve a copy of the arbitration claim on the Respondent "[i]n accord with the Federal Rules of Civil Procedure of the United States or the rules of civil procedure of the jurisdiction where the Respondent entered into the Arbitration Agreement."[70]  The respondent then has thirty days to respond to the claim.[71]  Because the rules and purposes of arbitration are virtually the same as judicial proceedings, service of an arbitration claim by W&A before sending verification of the debt must carry the same consequences as would service of a Summons or Complaint.

A Certified Mail receipt indicates that W&A received Plaintiff's request for verification on December 13, 2004.[72]  This is confirmed by W&A's collection activity logs.[73]  The next contact W&A had with the Plaintiff was on December 28, 2004, when the arbitration claim was served on Plaintiff via Certified Mail.[74]  This is confirmed by W&A's collection activity logs which indicate that W&A first checked its system for additional files regarding the Plaintiff, and then proceeded to "reissue" service of the arbitration claim without first sending verification of the debt being collected.[75]  The arbitration claim indicated that W&A intended to pursue arbitration as a method to collect the amount Plaintiff was "indebted to [MBNA America Bank, N.A.]" as an "award" in an

---

[68]  National Arbitration Forum, *Frequently Asked Questions about NAF*, at http://www.arb-forum.com/questions.asp#4.

[69]  National Arbitration Forum, *Frequently Asked Questions about NAF*, at http://www.arb-forum.com/questions.asp#2.

[70]  National Arbitration Forum Code of Procedure 6.

[71]  National Arbitration Forum Code of Procedure 13.

[72]  Exhibit "3."

[73]  Documents Filed Under Seal at WA 0003.

[74]  Exhibit "6" at 71:18-25 and 72:1-8; Documents Filed Under Seal at WA 0003.

[75]  Documents Filed Under Seal at WA 0003.

1  arbitration proceeding.[76]  Because an arbitration proceeding is the same as a judicial proceeding for

2  these purposes, service of the arbitration claim by W&A before verifying the debt being collected

3  is a violation of 15 U.S.C. § 1692g(b).

4      **2.  REQUESTING PAYMENT OF THE DEBT PRIOR TO VERIFYING THE DEBT BEING COLLECTED IS A VIOLATION OF 15 U.S.C. § 1692g(b).**

5

6  When a consumer timely disputes the debt being collected, 15 U.S.C. § 1692g(b) requires

7  the debt collector to cease all collection efforts until a verification of the debt being collected is

8  mailed to the consumer.[77]  In addition to service of an arbitration claim, W&A violated this section

9  by mailing Plaintiff two requests for payment of the debt.

10  When W&A served the arbitration claim, they also included an insert in the service package

11  which requested payment of the debt.[78]  This service insert stated "[i]f you owe the money and

12  would like to arrange to pay the debt, please call our office.  This may avoid the necessity of

13  proceeding with the Arbitration process."[79]  The service insert then provided the phone number and

14  mailing address of W&A's office.[80]  This service insert is a patent collection attempt—a collection

15  attempt without first sending verification of the debt being collected and a failure to cease collection

16  efforts required by 15 U.S.C. § 1692g(b).

17  Additionally, W&A mailed Plaintiff a collection letter dated January 20, 2005, which

18  requested payment of the debt being collected.[81]  W&A had not yet verified the debt being collected,

19  yet it requested that Plaintiff contact W&A to "work out a reasonable payment plan and/or

---

[76] Exhibit "4."

[77] 15 U.S.C. § 1692g(b).

[78] Exhibit "4."

[79] *Id.*

[80] *Id.*

[81] Complaint ¶ 49; Exhibit "5"; Answer ¶ 49.

MEMORANDUM OF POINTS AND AUTHORITIES -12-          Case No. 05-01939-JF-PVT

1    settlement."[82]  This is clearly an attempt to collect the debt without first providing the required

2    verification—a a violation of 15 U.S.C. § 1692g(b).

3           When a debt collector receives a timely dispute, it must cease <u>all collection efforts</u> until

4    verification is mailed to the consumer.[83]  W&A violated this provision of the FDCPA three times.

5    First, by serving Plaintiff with the arbitration claim.[84]  Then, by requesting payment of the debt as

6    a method to avoid arbitration.[85]  Finally, by requesting Plaintiff contact W&A to work out a payment

7    plan or settlement agreement.[86]  This constitutes three violations of 15 U.S.C. § 1692g(b).

8    **D.    IF SERVICE OF THE ARBITRATION CLAIM WAS INTENDED BY W&A TO BE**
     **VERIFICATION IT WAS INADEQUATE BECAUSE IT DID NOT ACCURATELY**
9    **STATE THE AMOUNT BEING COLLECTED.**

10          If W&A attempts to argue that the arbitration claim <u>was</u> a verification of the debt being

11   collected, this argument will fail because the arbitration claim did not accurately state the amount

12   being collected.  While the Ninth Circuit Court of Appeals has not published a decision directly on

13   point, there is ample authority from other Circuit Courts of Appeal.  These courts have held that,

14   "verification of a debt involves nothing more than the debt collector confirming in writing that the

15   amount being demanded is what the creditor is claiming is owed…"[87]  These appellate decisions

16   have been used by district courts throughout the Ninth Circuit.[88]

17   _____

18          [82] Exhibit "5."

19          [83] 15 U.S.C. § 1692g(b).

20          [84] Exhibit "4"; <u>Documents Filed Under Seal</u> at WA 0003.

21          [85] Exhibit "4."

22          [86] Exhibit "5."

23          [87] *Chaudhry v. Gallerizzo*, 174 F.3d 394, 406 (4th Cir.1999), *cert. denied*, 528 U.S. 891, 145
24   L. Ed. 2d 181, 120 S. Ct. 215 (1999); *see also, Azar v. Hayter*, 874 F. Supp. 1314, 1317 (N.D. Fla.
25   1994), *aff'd*, 66 F.3d 342 (11th Cir. 1995), *cert. denied*, 516 U.S. 1048, 133 L. Ed. 2d 666, 116 S. Ct.
     712 (1996).

26          [88] *Anderson v. Canyon State Professional Services, Inc.,* 2003 U.S. Dist. LEXIS 26419 at
27   *17 (D. Ariz. Sept. 1, 2003); *Clark v. Capital Credit & Collection Services, Inc.,* 2004 U.S. Dist.
     LEXIS 11349 at *40 (D. Or. Jan. 23, 2004); *Semper v. JBC Legal Group*, 2005 U.S. Dist. LEXIS
28   33591 at *15 n.6 (W.D. WA. Sept. 6, 2005).

_____

1    There are multiple aspects of the arbitration claim that are incorrect.  To begin with, the

2    amount stated was not "the amount being demanded."[89]  This is apparent, because the arbitration

3    claim states that it was filed on August 20, 2004.[90]  It is false to assume that the amount being

4    collected in August was the same as the amount being collected in December, when W&A was

5    computing interest with each passing day.

6        Further, the arbitration claim stated an incorrect interest rate.  The interest rate on the

7    arbitration claim was stated as 7.00%.[91]  However, the actual interest rate for the Plaintiff's MBNA

8    account was 9.24%.[92]  It would be impossible to accurately state the amount actually demanded by

9    the creditor when the interest is calculated using the wrong interest rate.

10        Finally, the amount of the debt listed in the arbitration claim included liquidated attorney

11    fees of a flat 15% of the outstanding balance.[93]  As explained below, the agreement creating the debt

12    did not authorize a liquidated attorney's fee, but a "reasonable attorney's fee."[94]  By attempting to

13    charge Plaintiff an unauthorized attorney's fee, W&A violated the account agreement entered into

14    between MBNA and the Plaintiff.  As such, the amount demanded in the arbitration claim is

15    misstated and inaccurate.

16        Because the arbitration claim states an amount that is incorrect due to the time it was

17    computed, the interest rate used to compute it and the amount of attorney's fees added to the

18    balance, there is no way that it accurately states the "amount being demanded"[95] as required by law.

19    Therefore, the arbitration claim cannot be considered a sufficient verification of the debt being

20

21    ───────────────────

[89]  *Chaudhry*, 174 F.3d at 406.

22    [90]  Exhibit "4."

23    [91]  Exhibit "4."

24    [92]  Exhibit "8" at 10029.

25    [93]  Exhibit "4."

26    [94]  Exhibit "9" at 100005.

27

28    [95]  *Chaudhry*, 174 F.3d at 406.

1    collected under 15 U.S.C. § 1692g(b).

2    **E.    A DEBT COLLECTOR WHO SENDS MULTIPLE VALIDATION NOTICES TO**
3    **CONSUMERS MUST HONOR EACH VALIDATION REQUEST IF THE**
     **CONSUMER DISPUTES THE DEBT BEING COLLECTED—EVEN IF THE**
     **DISPUTE IS IN RESPONSE TO A SUBSEQUENT VALIDATION NOTICE.**
4

5         The November 23, 2004, collection letter was the first communication that the Plaintiff

6    received from W&A regarding the debt owed to MBNA.[96]  This letter contained a validation notice

7    which stated in relevant part as follows:

8         unless you, within thirty days after receipt of *this* notice, dispute the validity of the
          debt, or any portion thereof, the debt will be assumed to be valid by this office… if
9         you notify us in writing within the thirty-day period that the debt, or any portion
          thereof, is disputed, we will obtain verification of the debt ... and a copy of such
10        verification … will be mailed to you by us … If you notify us in writing within the
          thirty-day period described [above] that the debt, or any portion thereof, is disputed
11        … we shall cease collection of the debt … until we obtain verification of the debt…[97]
          (emphasis added)
12

13   Pursuant to this notice, Plaintiff disputed the debt.[98]  However, W&A did not provided Plaintiff with

14   a verification of the debt.  Instead, W&A continued its collection efforts as discussed above.

15        W&A will likely argue that the November 23, 2004, collection letter was not their "initial"

16   letter to Plaintiff.  W&A has produced in discovery a letter dated March 23, 2004, which was

17   purportedly mailed to the Plaintiff.[99]  If this is proven to be true, the November 23, 2004, collection

18   letter was not the first letter W&A <u>sent</u> to the Plaintiff, even though it was the first letter that he

19   <u>received</u> from W&A.

20        15 U.S.C. § 1692g requires debt collectors to send consumers a validation notice in writing.

21   The goal of this requirement is to provide consumers with adequate notice of their rights under the

22

23

24   _____

25        [96]  Exhibit "1"; Exhibit "6" at 70:8-13.

26        [97]  *Id.*

27        [98]  Exhibit "6" at 70:11-25 and 71:25.

28        [99]  Exhibit "10."

1   law.[100]  It is not a violation of this section to include a validation notice in subsequent collection

2   letters.[101]  This is because providing a subsequent validation notice does not "adversely confuse" the

3   consumer and, in the view of one court, may actually be helpful.[102]  The validation notice informs

4   the consumer about his rights, if does not include misleading or incorrect information that would

5   cause adverse confusion.[103]   Additionally, a subsequent validation notice would provide the

6   consumer with information regarding his rights if the initial letter sent by the debt collector was

7   never received by the consumer.[104]

8        This reasoning utterly fails if the subsequent validation notice is provided, but not honored

9   by the debt collector.  Failing to honor a subsequent validation notice would cause adverse confusion

10  in the mind of the "least sophisticated consumer."  Even a sophisticated consumer would be

11  understandably confused by information regarding rights that were not honored.  Logic dictates that

12  a debt collector must honor any subsequent validation notice it provides to avoid confusing the

13  "least sophisticated consumer."[105]

14       Even if, *arguendo*, the first letter W&A mailed to Plaintiff was actually the March 23, 2004,

15  letter, W&A should still be required to honor the validation rights it stated in the November 23,

16  2004, letter.  The November 23, 2004, letter not only contained a validation notice on the reverse

17

18       [100]  *Wilson v. Quadramed Corp.,* 225 F.3d 350, 354 (3rd Cir. 2000), *citing*, *Miller v.*
19  *Payco-General American Credits, Inc.*, 943 F.2d 482, 484 (4th Cir. 1991).

20       [101]  *DiRosa v. North Shore Agency, Inc.*, 56 F. Supp. 2d 1039, 1040 (N.D. Ill. 1999) (Finding
    no violation of 15 U.S.C. § 1692g when repeated validation notices were mailed to a consumer
21  because there is no way the notices could adversely confuse him).

22       [102]  *Id.*

23       [103]  *Id.*

24       [104]  *Id.*

25       [105]  *Brenker v. Creditors Interchange, Inc.*, 2004 U.S. Dist. LEXIS 4825 at *7 (S.D.N.Y. Mar.
26  25, 2004) ("The second letter also described the validation period and related rights accurately.  It
    did nothing to suggest diminution of the initial period; **if anything, it re-started the period,**
27  **thereby effectively extending Plaintiff's opportunity to seek validation of the debt.**" (emphasis
    added)).
28

1    side, but it also encouraged Plaintiff on the front of the letter to take advantage of these validation

2    rights if he disputed the debt.[106] Plaintiff read the letter and the validation notice and understood that

3    these rights were available to him.[107] Plaintiff exercised these rights and disputed the debt in writing

4    as instructed. W&A then failed to honor Plaintiff's validation request, thereby denying Plaintiff the

5    rights W&A told him were available.

6         Providing subsequent validation notices is only harmless if the validation requests are

7    honored by the debt collector. Plaintiff relied on the validation rights provided in the November 23,

8    2004, letter from W&A.[108] By failing to honor these validation rights, W&A has violated 15 U.S.C.

9    § 1692g(b).

10   **F.    W&A VIOLATED 15 U.S.C. §§ 1692e AND 1692e(10) BY FALSELY
         REPRESENTING THAT IT WOULD CEASE ITS COLLECTION EFFORTS UNTIL
11       IT MAILED A VERIFICATION OF THE DEBT TO THE PLAINTIFF IF HE
         DISPUTED IT IN WRITING WITHIN 30 DAYS FROM THE DATE HE RECEIVED
12       THE NOVEMBER 23, 2004, COLLECTION LETTER.**

13       15 U.S.C. § 1692e(10) provides as follows:

14       A debt collector may not use any false, deceptive, or misleading representation or
         means in connection with the collection of any debt. Without limiting the general
15       application of the foregoing, the following conduct is a violation of this section:
                                          . . .
16           (10)  The use of any false representation or deceptive means to collect or
                 attempt to collect any debt or to obtain information concerning a consumer.
17

18       As explained above, the November 23, 2004, collection letter from W&A granted Plaintiff

19   the right to receive validation of the debt if he disputed the debt in writing within 30 days from his

20   receipt of the November 23, 2004, collection letter. The letter also contained language that

21   encouraged Plaintiff to dispute the debt.[109] The collection letter further advised the Plaintiff that if

22

23       [106] Exhibit "1" ("If you dispute this debt, or any portion thereof, I urge you to take advantage
24   of your right to dispute this debt as described in the important notice on the reverse side of this
     letter."); Exhibit "6" at 70:14-22.
25
         [107] Exhibit "6" at 70:14-25 and 71:1-25.
26
         [108] *Id.*
27
         [109] Exhibit "1."
28

1    he did dispute the debt with W&A in writing, collection efforts against him would cease until he was

2    provided with verification of the debt.[110]  The FDCPA does not require debt collectors to notify

3    consumers that collection efforts must be suspended after a written dispute is received.[111]  However,

4    W&A did make this disclosure, thereby representing that if Plaintiff disputed the debt in writing,

5    collection efforts would, in fact, cease until a verification of the debt was sent to him.  The least

6    sophisticated consumer would surely rely on this representation, just as the Plaintiff did.[112]

7         After reading the collection letter, Plaintiff did dispute the debt "in its entirety" by sending

8    a written dispute to W&A.  Instead of ceasing its collection efforts and verifying the debt for the

9    Plaintiff as the November 23, 2004, letter represented, W&A continued its collection efforts and did

10   not send Plaintiff a verification of the debt being collected.[113]  W&A's collection activity logs show

11   that this was a deliberate decision—not a mistake.  Upon receiving the Plaintiff's written dispute,

12   W&A's collection notes read "REQUEST REISSUE PL[EA]S[E] SERV H[OME] A[DDRESS]

13   CERT[IFIED] MAIL."[114]  By misrepresenting that it would cease its collection efforts and verify

14   the debt if it received a written dispute, W&A violated 15 U.S.C. §§ 1692e and 1692e(10).

15   **G.    W&A VIOLATED 15 U.S.C. §§ 1692e(2) AND 1692f(1) BY ATTEMPTING TO
           COLLECT ATTORNEY'S FEES IN AN AMOUNT THAT WAS NOT EXPRESSLY
16         AUTHORIZED BY THE AGREEMENT CREATING THE DEBT OR PERMITTED
           LAW.**
17

18        15 U.S.C. § 1692e(2) provides as follows:

19   A debt collector may not use any false, deceptive, or misleading representation or
     means in connection with the collection of any debt.  Without limiting the general
20   application of the foregoing, the following conduct is a violation of this section:

                                                               . . .
21

     ─────────────────────────
22
     [110]  Id.
23
     [111]  15 U.S.C. § 1692g(a);  Higgins v. Capitol Credit Services, Inc., 762 F. Supp. 1128, 1134
24   (D.D.E. 1991) ("The court will not penalize a debt collector who discloses more than is required by
     the Act.").
25
     [112]  Exhibit "6" at 71:18-23.
26
     [113]  Exhibit "6" at 71:18-25 and 72:1-8;  Documents Filed Under Seal at WA0003.
27
     [114]  Documents Filed Under Seal at WA0003.
28

─────────────────────────

1                   (2)  The false representation of -

2                         (A)  the character, amount, or legal status of any debt; or
                       (B)  any services rendered or compensation which may be lawfully
3                         received by any debt collector for the collection of a debt.

4      15 U.S.C. § 1692f(1) provides as follows:

5      A debt collector may not use unfair or unconscionable means to collect or attempt
to collect any debt.  Without limiting the general application of the foregoing, the
6  following conduct is a violation of this section:

                       …
7          (1) The collection of any amount (including any interest, fee, charge,
        or expense incidental to the principal obligation) unless such amount
8          is *expressly authorized by the agreement creating the debt* or
        *permitted by law*.  (emphasis added)
9

10  <u>The Agreement Creating the Debt Does Not Contemplate Liquidated Attorney Fees.</u>

11      In this case, the agreement creating the debt contained the following provision regarding

12  attorney fees:

13      If you default, unless prohibited by applicable law, we can also require you to pay
    … *a reasonable attorney's fee* if we refer your account for collection to an attorney
14      who is not our salaried employee.[115]  (emphasis added)

15      The Eighth Circuit has affirmed the District of Minnesota court's interpretation of a similar

16  contract provision which required the consumer "to pay reasonable attorney's fees and costs incident

17  to collection of due and unpaid installments."[116]   The court concluded:

18      that this language should be construed narrowly, such that "reasonable costs incident
    to collection" means the actual costs associated with collection.  Indeed, such a
19      narrow construction comports with the spirit of the FDCPA.  For example, it is a
    violation of the FDCPA for a debt collector to collect any amount "unless such
20      amount is *expressly authorized* by the agreement created [sic] a debt or permitted by
    law."[117]

21

22

23      [115]  Exhibit "9" at 100005.

24
    [116]  *Kojetin v. C U Recovery, Inc.,* 1999 U.S. Dist. LEXIS 10930 at *4 n.1 (D.Minn. March
25  29, 1999), *aff'd,* 212 F.3d 1318 (8th Cir. 2000) (per curiam) ("we agree with the district court's
conclusion that CUR violated the FDCPA when it charged Kojetin a collection fee based on a
26  percentage of the principal balance that remained due rather than the actual cost of the collection.
We thus affirm.").
27

28      [117]  *Id.* (emphasis in original).

The district court, therefore, concluded that the debt collector's "inclusion of the percentage fee amount in the [collection] notice, … violated the FDCPA."[118]

> [T]o hold otherwise would contravene the purpose of the FDCPA and would open the door to abuse. The FDCPA would provide little protection to a debtor like Kojetin if, in agreeing to pay "reasonable collection costs," a debtor was held to have agreed to pay whatever percentage fee a debt collection service happened to charge a lender such as MMCU for collection efforts. Construing the contract more narrowly – as authorizing collection of the actual cost of the service's efforts – conforms to the purpose of the FDCPA. While actual costs may include some provision for a reasonable profit margin for a collection service, such costs cannot be derived from a fee based solely on a percentage of the outstanding debt.[119]

Relying in part on the decision in *Kojetin*, the District Court for the Western District of Michigan has held that:

> The inclusion of a liquidated sum as attorney fees with the principal debt owed altered the terms of the contract between Capital One and Stolicker and violated the FDCPA. The contract she signed with Capital One required that she pay a "reasonable attorney fee," not $776.68 or any other liquidated amount. As Muller's counsel acknowledged at oral argument, Stolicker did not agree to a specific percentage contingent fee or a liquidated amount for attorney fees.
> …
> More importantly for this matter, the alteration of the terms of the contract misrepresents the amount of the debt owed and the compensation which may be received for the collection of the debt in violation of § 1692e(2)(A), (B).
> …
> It would take a leap of logic to find, as Muller urges, that Stolicker agreed to a liquidated amount (25% of the principal debt or otherwise) of attorney fees in the event she defaulted.
> …
> The Muller law firm acknowledges that the contract between Stolicker and Capital One stated that she would be responsible for a "reasonable attorney fee." Muller contends that this clause provided it with a contractual basis to request $776.68 as an attorney fee and that this clause prevents Stolicker from asserting an FDCPA claim. Further, Muller denies that its request was false and attempts to demonstrate that a twenty-five percent contingent fee is reasonable.
>
> Muller's argument misconstrues the issue in this case. The issue is not whether the requested attorney fee is in fact reasonable. Nor is the issue whether Michigan law permits the award of a contingent attorney fee. The central issue in this case, which Muller repeatedly overlooks, is whether the request of a liquidated amount as an attorney fee is false or misleading when the contract authorizing the fee permits only a "reasonable attorney fee."[120]

---

[118]  *Kojetin*, 1999 U.S. Dist. LEXIS 10930 at *5.

[119]  *Id*. at *5 n.3.

[120]  *Stolicker v. Muller,* 2005 U.S. Dist. LEXIS 32404 at *10-12 (D.Mich. September 8,

1    In the case at bar, the first collection letter received by Plaintiff from W&A stated that the

2    amount owed was $19,698.04.[121]  This amount included a liquidated attorney fee in the amount of

3    15% which W&A added to the principal debt, but W&A failed to disclose this fact.[122]  In fact, the

4    very first action taken by W&A upon receiving the collection assignment of the Plaintiff's MBNA

5    account was to add $2,466.87 in attorney fees (15% of the principal balance of $16,445.83).[123]

6    However, the agreement creating the debt with MBNA stated that the Plaintiff would be responsible

7    for the payment of "collection and court costs … and a reasonable attorney's fee"—not a liquidated

8    attorney fee.[124]  By adding a liquidated attorney fee to the balance being collected, W&A failed to

9    conform its collection activities to the terms of the agreement creating the debt.  This is a violation

10   of 15 U.S.C. §§ 1692e(2) and 1692f(1).

11   <u>Liquidated Attorney Fees Are Not Permitted Under the Law Governing the Agreement.</u>

12   The agreement between the Plaintiff and MBNA contains the following choice of law

13   provision:

14   > **Governing Law:**  This Agreement is made in Delaware.  It is governed by the laws
     > of the State of Delaware, without regard to its conflict of laws principles, and by any
15   > applicable federal laws.[125]

16   Delaware law allows a creditor to "recover reasonable counsel fees" which do not exceed 20 percent

17   of the principle and interest.[126]  The relevant Delaware statute reads as follows:

18   > In all causes of action, suits, matters or proceedings brought for the enforcement of
     > any note, bond, mechanics lien, mortgage, invoice or other instrument of writing, if
19   > the plaintiff or lien holder in the action, suit or proceeding recovers judgment in any

20   _____

21   2005).

22   [121]  Exhibit "1"; Exhibit "6" at 70:8-13.

23   [122]  Exhibit "1"; Exhibit "4."

24   [123]  <u>Documents Produced Under Seal</u> at WA 0009 ("03/19/04  *SY  INIT DATA ENTRY
     ATTY FEES = $2,466.87 AT 15 PERCENT").

25   [124]  Exhibit "9" at 100005.

26   [125]  <i>Id</i>. at 100006.

27   [126]  10 Del. Code § 3912.

28

---

sum, the plaintiff or lien holder may also recover reasonable counsel fees, which shall be entered as a part of the judgment in the action, suit or proceeding. Such counsel fees shall not in any such action, suit or proceeding, exceed 20 percent of the amount adjudged for principal and interest. Such counsel fees shall not be entered as a part of such judgment unless the note, bond, mortgage, invoice or other instrument of writing sued upon, by the terms thereof, expressly provides for the payment and allowance thereof, except in the cases of mechanics liens in which no express agreement shall be necessary in order to entitle the lien holder to reasonable counsel fees.[127]

Moreover, the Delaware Supreme Court has explained that: "[t]he statute permits recovery of counsel fees but, we emphasize, only those which are 'reasonable.'"[128]  Under Delaware law, the reasonableness of attorney fees is evaluated using the factors set forth in the Delaware Lawyer's Rules of Professional Conduct, Rule 1.5.[129]  These factors include, among other things, consideration of the "time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly."[130]

In the case at bar, W&A has provided no time records or other evidence which would justify the reasonableness of the attorney fees that they charges to the Plaintiff's MBNA account.  W&A has provided an itemized collection log, but this document lacks any time entries which would show how much time was spent on each task or who preformed the various tasks.[131]  This itemized collection log, however, does show that the first task that W&A did when it opened the file was to add a liquidated attorney fee in the amount of 15%.[132]  It is noteworthy that this fee was added to the account before the any other tasks were preformed.  This clearly indicates that the attorney fee

---

[127]  *Id.*

[128]  *Rock v. Short,* 336 A.2d 219, 221 (Del. 1975).

[129]  *General Motors Corp v. Cox,* 304 A.2d 55, 57 (Del. 1973), *see also, Princess Hotels Int'l v. Delaware State Bar Ass'n,* 1998 Del. Super. LEXIS 189 at *19-20 (Del. Super Ct. March 10, 1998) (applying Delaware Lawyer's Code of Professional Responsibility, DR 2-106(B), which has been replaced by the Delaware Lawyers' Rules of Professional Conduct, Rule 1.5).

[130]  Delaware Lawyers' Rules of Professional Conduct, Rule 1.5.

[131]  <u>Documents Produced Under Seal</u> at WA0001-0009.

[132]  <u>Documents Produced Under Seal</u> at WA 0009.

---

1   charged by W&A was a liquidated amount that bears no relationship to the "time and labor required,

2   the novelty and difficulty of the questions involved, [or] the skill requisite to perform the legal

3   service properly."  As such, the liquidated attorney fees charged by W&A were not authorized by

4   Delaware law.

5        By attempting to collect attorney fees that are not authorized by applicable law, W&A has

6   violated 15 U.S.C. § 1692f(1).

7   **H.    BY ADDING AN UNAUTHORIZED ATTORNEY FEE AND BY FAILING TO
        ITEMIZE THE DEBT, W&A VIOLATED 15 U.S.C. §§ 1692e, 1692e(2), 1692e(10)
8        AND 1692f(1) BY MISREPRESENTING THE NATURE, CHARACTER AND
        AMOUNT OF THE DEBT BEING COLLECTED.**
9

10       When a debt collector adds unauthorized collection fees or charges to a debt they are

11  attempting to collect, the debt collector necessarily misrepresent the character and amount of the

12  debt.[133]  In this case, W&A failed to clearly delineate or otherwise disclose that the debt it was

13  attempting to collect included an amount for attorney fees—which, as shown above, were not

14  authorized—had been added to the balance demanded.  This is a violation of 15 U.S.C. §§ 1692e,

15  1692e(2) and 1692e(10).

16       Even if attorneys' fees are authorized by contract, as in this case, and even if the fees
        are reasonable, debt collectors must still clearly and fairly communicate information
17       about the amount of the debt to debtors.  This includes how the total amount due was
        determined if the demand for payment includes add-on expenses like attorneys' fees
18       or collection costs.[134]

19   The court described the reasoning behind this result as follows:

20       [A]n unsophisticated consumer may have lost the bill and forgotten the amount of

21

22       [133]  *Beuter v. Canyon State Professional Services, Inc.* 2005 U.S. Dist. LEXIS 12281 at *9
      (D.Ariz. June 13, 2005) ("Defendants also violated § 1692e(2)(A) as a matter of law because they
23       falsely represented the amount of Plaintiff's debt by listing the unauthorized attorney's fees in their
      communications with Plaintiff."); *Boatley v. Diem Corp.,* 2004 U.S. Dist. LEXIS 5089 at *17-18
24       (D.Ariz. March 24, 2004) ("By listing the unauthorized collection fee in their communications with
      Plaintiff, Defendants falsely represented the amount of the debt, violating the FDCPA.  See 15
25       U.S.C. [§] 1692e(2)(A)." ).

26       [134]  *Fields v. Wilber Law Firm, P.C.,* 383 F.3d 562, 565(7th Cir. 2004); *see also, Stolicker*,
27       2005 U.S. Dist. LEXIS 32404 at *17 n.4 ("the $776.68 attorney fee is not clearly delineated, but
      rather, is included in the total damages requested.").
28

the debt completely. In this circumstance, the debtor (or the debtor's spouse, or someone else paying bills for the debtor) might logically assume that she simply incurred nearly $400 in charges. By leaving the door open for this assumption to be made, [debt collector]'s letter was misleading because it gave a false impression of the character of the debt. It is unfair to consumers under the FDCPA to hide the true character of the debt, thereby impairing their ability to knowledgeably assess the validity of the debt. One simple was to comply with § 1692e and § 1692f in this regard would be to itemize the various charges that comprise the total amount of the debt.[135]

In the case at bar, W&A's November 23, 2004, collection letter failed to itemize the debt being collected.[136] This made the amount of the debt unrecognizable and misleading to the least sophisticated consumer (and the Plaintiff)—thereby hiding the true nature and character of the debt.

Unsophisticated readers may require more explanation than do federal judges; what seems pellucid to a judge, a legally sophisticated reader, may be opaque to someone whose formal education ended after sixth grade.[137]

By adding an unauthorized attorney fee to the debt being collected and then failing to itemize the debt in its collection letter, W&A has violated 15 U.S.C. §§ 1692e, 1692e(2), 1692e(10) and/or 1692f(1).[138]

## I. W&A VIOLATED 15 U.S.C. § 1692e(10) BY FALSELY REPRESENTING THE INTEREST RATE APPLICABLE TO THE DEBT BEING COLLECTED.

When Plaintiff opened his MBNA account, his interest rate was at 9.99%.[139] Because the interest rate was adjustable, the interest rate, thereafter, decreased to 9.24%.[140] In the arbitration claim W&A served on Plaintiff, W&A stated that the interest rate on Plaintiff's MBNA account was 7.00%.[141] This statement regarding the interest rate was misleading and literally false. A literally

---

[135] *Fields*, 383 F.3d at 566.

[136] Exhibit "1."

[137] *Johnson v. Revenue Mgmt. Corp.,* 169 F.3d 1057, 1060 (7th Cir. 1999).

[138] *Fields*, 383 F.3d at 566.

[139] Exhibit "9" at 100004; Exhibit "11" at 100007.

[140] Exhibit "8" at 10029.

[141] Exhibit "4."

1    false or deceptive statement used in the collection of a debt is a violation of 15 U.S.C. §

2    1692e(10).[142]

3    **J.    THIS COURT SHOULD AWARD PLAINTIFF THE MAXIMUM STATUTORY**
     **DAMAGE AMOUNT OF $1,000 UNDER THE FDCPA.**

4

5         The maximum statutory damage award available under the FDCPA is a modest $1,000.

6    Courts have therefore awarded the maximum amount even when the violations found were less

7    numerous and egregious than those herein.  For example, in *Riviera v. M.A.B.*,[143] the court awarded

8    the maximum $1,000 because the validation notice appeared on the back of the letter, in relatively

9    small print, with no reference to it on the front of the letter.  Thus, even though the notice was

10   accurate, the court determined a $1,000 award was appropriate.  Furthermore, in *Tolentino v.*

11   *Friedman*,[144] the Seventh Circuit upheld the maximum statutory award of $1,000 despite finding that

12   only one provision of the FDCPA had been proven.  In that case the debt collector had included a

13   disclosure required 15 U.S.C. § 1692e(11) in its initial notice, but had failed to include it in a

14   subsequent notice.  The present case involves at least 5 violations of the FDCPA.  Thus, the

15   violations herein are more numerous and meaningful than in those cases, and therefore the Court

16   should award the maximum amount of statutory damages under 15 U.S.C. § 1692k(a)(2)(A), which

17   is $1,000.

18   **K.    PLAINTIFF HAS A STATUTORY RIGHT TO ATTORNEY'S FEES.**

19        The FDCPA directs the Court to award attorney's fees to a prevailing consumer.[145]  A

20   number of cases decided under 15 U.S.C. § 1692k have held that an award of attorney fees and costs

21

22        [142] *Avila*, 84 F.3d at 227; *see also*, *Kelly v. Great Seneca Financial Corp.*, 2005 U.S. Dist.
     LEXIS 40192 at *16 (S.D. Ohio June 16, 2005) ( "The Seventh Circuit concluded that a literally

23   false statement in a collection letter violates the FDCPA as a matter of law.");  *Lewis v. ACB*

24   *Business Services, Inc.*, 135 F.3d 389 (6th Cir. 1998) (Holding that a false statement is a violation
     of 15 U.S.C. § 1692e(10) when it is deceptive.).

25

26        [143] 682 F. Supp. 174 (W.D.N.Y. 1988).

27        [144] 46 F.3d 645 (7th Cir. 1995).

28        [145] 15 U.S.C. § 1692k(a)(3).

1  is required if the plaintiff prevails.[146]  The Court should award the Plaintiff his reasonable attorney

2  fees and costs incurred in this matter.

3  **VII.  CONCLUSION**

4  For the reasons set forth above, the Plaintiff, as a matter of law, is entitled to summary

5  judgment: (1) declaring that W&A violated 15 U.S.C. § 1692g(b) when it failed to cease its

6  collection efforts and verify the debt after receiving a timely dispute from Plaintiff; (2) declaring that

7  W&A violated 15 U.S.C. §§ 1692e and 1692e(10) by falsely representing that it would cease its

8  collection efforts until it mailed a verification of the debt to the Plaintiff if he disputed it in writing

9  within 30 days from the date he received the November 23, 2004, collection letter; (3) declaring that

10  W&A violated 15 U.S.C. §§ 1692e, 1692e(2) and 1692e(10) by misrepresenting the nature,

11  character and amount of the debt being collected; (4) declaring that W&A violated 15 U.S.C. §

12  1692f(1) by attempting to collect attorney fees that were not expressly authorized by the agreement

13  creating the debt or permitted by law; and (5) declaring that W&A violated 15 U.S.C. §§ 1692e and

14  1692e(10) by falsely representing the interest rate applicable to the debt being collected.  The Court

15  should award the Plaintiff $1,000 in statutory damages and his reasonable attorney fees and costs

16  incurred in this case.

17

18  Dated:  May 1, 2006          CONSUMER LAW CENTER, INC.

19

20  By: /s/ Fred W. Schwinn
         Fred W. Schwinn, Esq.
21       Attorney for Plaintiff
         DAVID JAMES HOLSINGER

22

23

---

24  [146]  *See, e.g. Zagorski v. Midwest Billing Services, Inc.*, 178 F.3d 116 (7th Cir. 1997) (holding
    it was an abuse of discretion not to award attorney's fees following a stipulated judgment in the
25  amount of $100; and directing the court to award fees sufficient to compensate the attorney for the
    time spent on the case in order to encourage enforcement of the FDCPA); *Pipiles v. Credit Bureau,*
26  *Inc.*, 886 F.2d 22 (2nd Cir. 1989) (directing trial court to award fees on remand despite the lack of
    actual or statutory damages because Plaintiff had demonstrated that Defendant violated the FDCPA);
27  *Perez v. Perkiss*, 742 F.Supp. 883 (D.Del. 1990) (awarding Plaintiffs' legal services attorneys
    $10,110 after a half-day jury trial in which Plaintiff was awarded $1,200 in damages).

28

---

Exhibit C

1 | TOMIO B. NARITA (SBN 156576)
JEFFREY A. TOPOR (SBN 195545)
2 | SIMMONDS & NARITA LLP
44 Montgomery Street, Suite 3010
3 | San Francisco, CA 94104-4816
Telephone: (415) 283-1000
4 | Facsimile:  (415) 352-2625
tnarita@snllp.com
5 | jtopor@snllp.com

6 | Attorneys for Defendants
Global Acceptance Company, LP
7 | and GAC GP, LLC

8
                     UNITED STATES DISTRICT COURT
9
                   NORTHERN DISTRICT OF CALIFORNIA
10
                           SAN JOSE DIVISION
11

12 | JENNIFER LEIGH REED,              )   CASE NO.: C08 01826 RMW (RS)
                                      )
13 |          Plaintiff,              )
                                      )
14 |   vs.                            )   **DEFENDANTS' OFFER OF**
                                      )   **JUDGMENT PURSUANT TO**
15 |                                  )   **RULE 68**
                                      )
16 | GLOBAL ACCPETANCE CREDIT         )
     COMPANY, a Texas Limited         )
17 | Partnership; and GAC GP, LLC, a  )
     Texas Corporation,               )
18 |                                  )
              Defendants.             )
19 | _____)

20

21

22

23

24

25

26

27

28

1   Defendants GLOBAL ACCEPTANCE CREDIT COMPANY, LP and GAC GP,

2   LLC ("Defendants"), pursuant to Rule 68 of the Federal Rules of Civil Procedure, and

3   without admitting liability for any of the claims alleged herein, hereby offer to allow

4   judgment to be taken against them as follows:

5       Judgment for plaintiff JENNIFER LEIGH REED in the sum of Three Thousand

6   and One Dollars ($3,001.00), plus reasonable attorneys' fees and costs, in an amount to

7   be determined by the Court, <u>less</u> the sum of $2,782.04, which represents the

8   outstanding amount of plaintiff's debt.

9       In accordance with Rule 68, this offer shall be deemed withdrawn if it is not

10  accepted within ten days of the service hereof.  Evidence of this Offer of Judgment is

11  not admissible except in a proceeding to determine costs.

12

13  DATED: May 27, 2008            SIMMONDS & NARITA LLP
                                   TOMIO B. NARITA
14                                 JEFFREY A. TOPOR

15

16                          

17                    By:  _____
                           Tomio B. Narita
18                         Attorneys for Defendants
                           Global Acceptance Credit Company, LP and
19                         GAC GP, LLC

20

21

22

23

24

25

26

27

28

1

# PROOF OF SERVICE

2

3

I, the undersigned, declare:

4

5

I am employed in the City and County of San Francisco, California. I am over the age of eighteen years and not a party to this action. My business address is 44 Montgomery Street, Suite 3010, San Francisco, California 94104-4816.

6

7

8

9

10

I am readily familiar with the business practices of my employer, Simmonds & Narita LLP, for the collection and processing of correspondence by Federal Express Overnight Delivery and that said correspondence is delivered to an authorized representative of the courier services with delivery fees provided for in the ordinary course of business.

11

On this date, I served copies of the following document:

12

13

**1)    DEFENDANTS' OFFER OF JUDGMENT PURSUANT TO RULE 68**

14

15

by causing such document to be placed in a sealed envelope for collection and delivery as indicated below:

16

17

**VIA FEDERAL EXPRESS**

18

Fred W. Schwinn

19

Jovanna R. Longo

Consumer Law Center

20

12 South First Street, Suite 1014

San Jose, California 95113-2418

21

counsel for Plaintiff

22

23

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed at San Francisco, California on this 27th day of May, 2008.

24

25

26

27



28

_____

Stephanie Schmitt