**E-FILED on** 8/12/08

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JENNIFER LEIGH REED,<br><br>Plaintiff,<br><br>v.<br><br>GLOBAL ACCEPTANCE CREDIT COMPANY, a Texas Limited Partnership; and GAC GP, LLC, a Texas Limited Liability Corporation<br><br>Defendants. | No. C-08-01826 RMW<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT<br><br>**[Re Docket No. 7]** |

On April 4, 2008 plaintiff Jennifer Leigh Reed ("plaintiff") filed a complaint against Global Acceptance Credit Company and GAC GP, LLC ("defendants") alleging violations of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, *et seq.* ("FDCPA") as well as violations of the Rosenthal Fair Debt Collection Practices Act, Civil Code §§ 1788, *et seq.* ("RFDCPA").  Plaintiff seeks statutory damages, attorney fees and costs.  Defendants filed their answer and affirmative defenses on April 30, 2008.  Plaintiff now moves for summary judgment on her claims and defendants oppose the motion.

# I. BACKGROUND

Plaintiff incurred a debt with Corinthian Colleges, Inc. related to her attendance at a college owned by Corinthian. Opp'n at 2. In March 2007, Corinthian sold plaintiff's $2,782.04 unpaid account to defendant Global Acceptance Credit Company. *Id.* at 3. Defendants sent an initial collection letter to plaintiff on April 10, 2007. Compl. ¶ 14; Answer ¶ 14. On April 25, 2007, plaintiff mailed a letter to defendants stating that she "dispute[s] this debt and refuse[s] to pay." Compl., Ex. 2. Defendants thereafter sent 3 more letters to plaintiff between August 2007 and January 2008. *Id.*, Ex. 4-6. Defendant also left several messages on plaintiff's answering machine between August and September of 2007.[1] *Id.* ¶¶ 25-30. Plaintiff alleges that the defendants failed to disclose in the voice mail messages that the communications were from a debt collector in violation of FDCPA § 1692(e)(11) and RFDCPA §1788.17. *Id.* ¶¶ 45, 55. Plaintiff further alleges that defendants' correspondence sent after her April 25th letter disputing the debt violated the FDCPA under § 1692c(c) and RFDCPA under Cal. Civil Code § 1788.17. *Id.* ¶¶ 46, 56.

Plaintiff filed the instant suit on April 4, 2008 against Global Acceptance Credit Company and its general partner GAC GP, LLC. On April 22, 2008, before filing an answer, defendants contacted plaintiff to request a settlement demand "in an effort to reduce the cost of defense." Narita Decl. ¶ 3, Ex. A. Plaintiff allegedly did not respond to that request or a subsequent request for a settlement demand made on May 3, 2008. *Id.* On May 22, 2008, plaintiff filed this motion for summary judgment. Shortly thereafter, on May 27, 2008, defendants served plaintiff with an offer of judgment pursuant to Rule 68 of the Federal Rules of Civil Procedure. *Id.* ¶ 7 & Ex. C. The settlement offer stated that defendants would allow judgment to be taken against them in the sum of $3,001.00 "plus reasonable attorneys' fees and costs, in an amount to be determined by the Court, <u>less</u> the sum of $2,782.03, which represents the outstanding amount of plaintiff's debt." *Id.* (emphasis in original). The settlement offer was available to plaintiff for 10 days and was deemed

---

[1] Although the voice mail messages differed slightly, a typical message said "This message is for Jennifer Reed. This is Global Acceptance Credit Company. I need you or someone on your behalf to contact our office today regarding a very important matter which requires your immediate attention. Our toll-free number is 866-881-2590. When returning this call, refer to file number 624929. Once again, this is Global Acceptance Credit Company. Contact our offices today. 866-881-2590." Reed Decl. ¶¶ 16-18.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT—No. C-08-01826 RMW
NED                2

withdrawn if not accepted. *Id.* As with the settlement demand requests, plaintiff did not respond to the settlement offer. *Id.*

Plaintiff's Motion asserts that the allegations and admissions in the Complaint and Answer satisfy the requirements of proving violations of FDCPA and RFDCPA. Mot. at 8. Plaintiff also argues that the FDCPA is a strict liability statute and therefore defendants' intent is not relevant. *Id.* at 9. Plaintiff therefore concludes that there is no material issue of fact and that the court should grant the motion for summary judgment. *Id.* at 10.

Defendants' Opposition contends that their Rule 68 settlement offer is more than plaintiff could recover from this litigation. Opp'n at 4. Defendants assert that plaintiff must either accept the settlement offer or her claims will be moot for lack of a justiciable case or controversy. *Id.* Defendants also argue that plaintiff unreasonably disregarded the settlement requests and offer in order to increase attorneys fees. *Id.* at 3. Accordingly, defendants request that the court vacate the hearing on the motion for summary judgment. *Id.* at 4. Alternatively, defendants state without elaboration that "genuine issues of material fact exist as to each of Reed's claims." Opp'n at 9.

## II. ANALYSIS

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. Proc. 56(c). The moving party bears the burden of establishing that there is no issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The court must weigh all evidence in favor of the nonmoving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 472 U.S. 242, 248 (1986). For a dispute to be genuine, there must be sufficient evidence "such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

### A.    Plaintiff's FDCPA & RFDCPA Claims

The FDCPA was enacted "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT—No. C-08-01826 RMW
NED                                                                3

1  competitively disadvantaged, and to promote consistent State action to protect consumers against
2  debt collection abuses." 15 U.S.C. § 1692(e).  In determining whether debt collectors are liable
3  under FDCPA, the Ninth Circuit ruled that violations should be evaluated under the "least
4  sophisticated debtor" standard. *Swanson v. S. Oregon Credit Serv., Inc.*, 869 F.2d 1222, 1225 (9th
5  Cir. 1989).  The least sophisticated debtor standard is objective and meant to protect all consumers,
6  "the gullible as well as the shrewd . . . the ignorant, the unthinking and the credulous." *Clark v.*
7  *Capital Credit & Collection Serv.*, 460 F.3d 1162, 1171 (9th Cir. 2006).  Using this standard, a court
8  must ask whether the information provided by the debt collector or the actions of the debt collector
9  were confusing or misleading to the least sophisticated debtor.  *Id.*  Because FDCPA was modeled
10 after the Truth-in-Lending Act ("TILA"), courts often look to TILA cases in deciding FDCPA
11 claims.  *Bracken v. Harris & Zide, L.L.P.*, 219 F.R.D. 481, 484 (N.D. Cal. 2004).  Lastly, "[t]he
12 FDCPA is a strict liability statute." *Irwin v. Mascott*, 112 F. Supp. 2d 937, 963 (N.D. Cal. 2000).  A
13 plaintiff need not prove either that defendants knew that their debt collection practices were illegal
14 or that they intended to violate the law.  *Id.*

15  California incorporated FDCPA into the RFDCPA under Cal. Civ. Code § 1788.17.  Because
16 violations of FDCPA also constitute violations of RFDCPA, the court will only refer to the alleged
17 violations under FDCPA.  *Costa v. Nat'l Action Fin. Serv.*, 2007 WL 4526510 at *7 (E.D. Cal.
18 2007).

19        **1. Plaintiff's 1692e(11) Claim**

20  Plaintiff alleges that defendants violated § 1692e(11) when they "failed to disclose that the
21 communications were from a debt collector." Compl. ¶ 45.  Plaintiff cites the messages that
22 defendants left on plaintiff's answering machine between August and October of 2007 as evidence of
23 this violation. Mot. at 10-11.

24  Section 1692e(11) is aimed at prohibiting false or misleading representations in the
25 collection of a debt.  15 U.S.C. § 1692e.  It requires a debt collector to disclose in the initial written
26 communication that "the debt collector is attempting to collect a debt and that any information
27 obtained will be used for that purpose." *Id.*  In subsequent communications, the debt collector must
28 disclose that the communication is from a debt collector. *Id.*  A "communication" is defined as the

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT—No. C-08-01826 RMW
NED                                               4

1  "conveying of information regarding a debt directly or indirectly to any person through any

2  medium." *Id.* at § 1692a(2).

3       Plaintiff relies on defendants' admission that the defendant left messages on plaintiff's

4  answering machine to support her motion for summary judgment. Mot. at 3, 10. Plaintiff states that

5  "failure to disclose clearly in all communications made to collect a debt . . . that 'the debt collector is

6  attempting to collect a debt and that any information obtained will be used for that purpose,'

7  constitutes a violation of the Fair Debt Collection Practices Act." Mot. at 10. That is not the law

8  under FDCPA. This lengthy disclosure is only required in the initial communication. 15 U.S.C. §

9  1692e(11). Subsequent communications only must convey that the communication is from a debt

10 collector. *Id.* More importantly in the instant case, the Ninth Circuit has held that where the debtor

11 already knows the identity of the debt collector, follow-up notices from the debt collector are not

12 communications and do not require compliance with § 1692e(11) as long as they are not misleading

13 or false. *Pressley v. Capital Credit & Collection Serv.*, 760 F.2d 922, 925 (9th Cir. 1985) (*per*

14 *curiam*) ("We therefore hold that the follow up notice sent in this case is not a 'communication'

15 within which the disclosure required by 15 U.S.C. § 1692e(11) must be made.")[2]

16      Here, there is a material issue of fact as to whether defendants violated § 1692e(11). It is

17 unclear whether defendants sufficiently disclosed that they were collecting a debt. Also, there is a

18 material issue of fact whether the defendants' messages were deceptive or misleading.

19      The majority of FDCPA cases involving § 1692e(11) violations are factually distinguishable

20 from the current case because they are clear violations of FDCPA while this situation is less certain.

21 The court granted summary judgment for the plaintiff's claim of a § 1692e(11) violation in *Costa*,

22 2007 WL 4526510 at *6. In *Costa*, the defendant debt collector left a message on plaintiff's

---

[2] There is disagreement about the *Pressley* analysis regarding subsequent communications. The Eastern District of California has stated that the 1996 amendments to § 1692e(11) make *Pressley*'s rule that follow up notices are not "communications" no longer good law. *Schwarm v. Craighead*, 552 F. Supp. 2d 1056, 1082 (E.D. Cal. 2008). Other California District Courts have recently used the Ninth Circuit's *Pressley* rule and did not mention any alterations caused by the 1996 amendments. *Luna v. Alliance One Receivables Management, Inc.*, 2006 WL 357823, *6 (N.D. Cal. 2006); *Hosseinzadeh v. M.R.S. Assocs., Inc.*, 387 F. Supp. 2d 1104, 1116 (C.D. Cal. 2005). This dispute aside, courts have focused their analysis on whether, under the least sophisticated consumer standard, the communication is misleading or false. *Id.* This court likewise conducts a thorough analysis based on the established least sophisticated consumer standard, although the *Pressley* case certainly informs our analysis.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT—No. C-08-01826 RMW
NED      5

1  answering machine stating, "[t]his message is for Jessica Costa. My name is Elizabeth. I received a
2  phone call in my office for you. If you could please contact me back I'll be here until 4 p.m. Eastern
3  Time. My number is 866-529-1899 extension 2936." *Id.* at *1. The court found that this
4  communication violated § 1692e(11) because it did not disclose the identity of the debt collector or
5  the nature of the call. *Id.* at *6. The court emphasized the totality of the debt collector's egregious
6  behavior such as the fact that when the plaintiff returned the debt collector's message, she was
7  harassed, threatened, hung up on numerous times and the debt collector refused to ever identify the
8  name of the company collecting the debt. *Id.* at *1-3.

9  Other cases have also emphasized a debt collector's failure to identify themselves or the
10 nature of the communication which resulted in a misleading representation. *Hosseinzadeh*, 387 F.
11 Supp. 2d at 1115-16. In *Hosseinzadeh*, the debt collector left a message stating, "[t]his message is
12 for Ashraf. Ashraf, my name is Clarence Davis. I have some very important information to discuss
13 with you. I have to make a decision about a situation that concerns you. I am going to make this
14 decision with our without your input. Contact my office right away at 877-647-5945, Extension
15 3619. Failure to return my call will result in a decision-making process that you will not be a part
16 of." *Id.* at 1107. The court found that this message was a violation of § 1692e(11) and granted
17 summary judgment for the plaintiff *sua sponte*. *Id.*

18 The messages that defendants left on plaintiff's answering machine are not conclusively
19 deceptive and misleading as in the cases discussed previously. Defendants identified themselves
20 immediately and truthfully as Global Acceptance Credit Company and did not make any false
21 representations in the messages. In determining § 1692e(11) violations, courts have focused on
22 whether the communication would suggest that the message was from a debt collector. *See Foti v.*
23 *NCO Fin. Systems, Inc.*, 424 F. Supp. 2d 643, 669 (S.D.N.Y. 2006) (finding that "NCO Financial
24 Systems" was an insufficient disclosure under § 1692e(11) when the message left for the plaintiff
25 had no other suggestions or clues that the communication was from a debt collector). Here, given
26 the totality of the circumstances, it is very possible that even the least sophisticated consumer would
27 have known that Global Acceptance Credit Company was a debt collector. Not only does the
28 defendants' company name suggest that it could be a debt collector, but the totality of the

1  circumstances and prior communications between the parties suggest that a consumer would know
2  the nature and identity of the caller in the voice mail messages.

3        The FDCPA also prohibits debt collectors from communicating with third parties about a
4  consumer's debt. 15 U.S.C. §1692c(b). Debt collectors therefore have competing obligations to
5  notify a debtor in subsequent communications that they are a debt collector but *not* disclose this to
6  third parties who may inadvertently hear the message. Considering that defendants must comply
7  with these sometimes contradictory obligations and the language of the messages is not clearly in
8  violation of FDCPA, there is a material issue of fact as to whether defendants violated § 1692e(11).
9  Lastly, since plaintiff wrote to defendants on April 25, 2007 disputing the debt and the defendant did
10 not leave the messages until August 2007, plaintiff was aware that Global Acceptance Credit
11 Company was a debt collector. Compl., Ex. 2. Indeed, by the time defendants left the voice mail
12 messages, defendants gave verification of the debt to plaintiff. *Id.* at Ex. 4; *see Pressley*, 760 F.2d at
13 925 (stating that if debtor already knows identity of the debt collector then subsequent
14 correspondence is not a communication and is not subject to § 1692e(11)).

15       **2.  Plaintiff's § 1692c(c) Claim**

16       Plaintiff alleges that defendants also violated § 1692c(c) of the FDCPA. This section states:
17 "[i]f a consumer notifies a debt collector in writing that the consumer refuses to pay a debt or that
18 the consumer wishes the debt collector to cease further communication with the consumer, the debt
19 collector shall not communicate further with the consumer with respect to such debt . . ." 15 U.S.C.
20 § 1692c(c). Plaintiff asserts that the April 25, 2007 letter was a "cease communication" letter under
21 § 1692c(c) and that defendants' subsequent communications were therefore a violation of FDCPA.

22       Plaintiff's April 25th letter stated: "I have enclosed a copy of the last collection letter that you
23 sent me. In this regard, please be advised that I dispute this debt and refuse to pay." Compl., Ex. 2.
24 The next communication did not occur until July 25, 2007, when defendants sent plaintiff a letter
25 containing information about the account, including the original creditor, description of the debt and
26 the date the debt was incurred. Compl., Ex. 4. The letter stated it was sent "per your request for
27 verification of the account." *Id.* Defendants did not resume collections activities until after they
28 sent the verification letter to the plaintiff. Compl. ¶ 21-38.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT—No. C-08-01826 RMW
NED      7

1    Although plaintiff claims that the FDCPA violation falls under § 1692c(c), another section is
2 also pertinent to the analysis of this alleged violation. Section § 1692g concerns the validation of
3 debts and subsection (b) specifically addresses disputed debts. It states in part:

> If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) of this section that the debt, or any portion thereof, is disputed . . . the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt . . . and a copy of such verification . . . is mailed to the consumer by the debt collector.

7 15 U.S.C. § 1692g(b).

8    With § 1692g(b) and § 1692c(c) in mind, the language in plaintiff's April 25th letter makes
9 her intent somewhat unclear. Plaintiff's letter stated that she disputed the debt and refused to pay.
10 Defendants could have reasonably understood plaintiff's April 25th letter as a request for verification
11 and not as a "cease communications" letter. Defendants' next communication with plaintiff supports
12 this proposition since defendant stated that it was sending the letter "per your request for
13 verification." Compl., Ex. 4. If plaintiff's April 25th letter was a verification letter and not a cease
14 communication letter, then defendants fully complied with FDCPA when they sent verification to
15 plaintiff before resuming any collection activities.

16    Other than the letter, plaintiff presents no evidence that she was requesting a cessation of
17 communications under FDCPA. Since there is a material issue of fact whether plaintiff actually
18 requested that defendants cease communications regarding the debt and whether defendants violated
19 FDCPA § 1692c(c), plaintiff's motion for summary judgement as to the § 1692c(c) claim is
20 inappropriate at this time.

21    **B.    Defendants' Rule 68 Offer**

22    Defendants' Opposition relies almost wholly on their argument that plaintiff must either
23 accept the settlement offer or the case will be moot for lack of a case or controversy. Defendants
24 claim that almost immediately after the complaint was filed, they requested a settlement demand
25 from plaintiff. Opp'n at 3. They claim that this, as well as a later, request were ignored by plaintiff,
26 who then filed the instant motion for summary judgment. *Id.* Defendants then presented plaintiff
27 with a Rule 68 offer of judgment, to which plaintiff likewise did not respond. *Id.* The offer would
28 allow judgment against defendants in the amount of $3,001.00 plus reasonable attorney's fees

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT—No. C-08-01826 RMW
NED                                8

determined by the court, offset by the $2,782.04 debt owed by plaintiff to defendants. *Id.* at 4. Defendants maintain that if plaintiff rejects this offer, which they claim is the maximum damages that plaintiff can recover from this litigation, then the case will be dismissed for lack of subject matter jurisdiction. *Id.* at 5.

### 1. Settlement Offers

Many courts have concluded that a full offer of settlement renders a case moot. *See Board of Governors of the Fed. Reserve System v. Shoaib*, 1994 WL 697590 at *2 (9th Cir. 1994) (offer of full settlement renders case moot and case must be dismissed unless court can grant additional meaningful relief); *Spencer-Lugo v. Immigration & Naturalization Serv.*, 548 F.2d 870, 870 (9th Cir. 1977) (full settlement offer "has effect of mooting any real case or controversy here"); *Simmerman v. Bell*, 800 F.2d 386, 390 (4th Cir. 1986) (stating that plaintiff's personal stake in the outcome had disappeared when she was offered a full settlement and that "federal courts do not sit simply to bestow vindication in a vacuum"); *Wiskur v. Short Term Loans, LLC*, 94 F. Supp. 2d 937, 939 (N.D.Ill. 2000) (stating that a Rule 68 offer in a TILA case that is greater than plaintiff's claimed damages eliminated the legal dispute and the case must be dismissed as moot); *Ambalu v. Rosenblatt*, 194 F.R.D. 451, 452-53 (E.D.N.Y. 2000) (rejected Rule 68 offer of judgment for maximum statutory damages renders case moot). Some courts have understandably not followed this rule for settlement offers when the plaintiff is seeking class certification, since the plaintiff may have a continuing stake in the litigation. *Littledove v. JBC & Assoc., Inc.*, 2000 WL 33141223 at *2 (E.D. Cal. 2000) (plaintiff seeking class certification is distinguishable from regular full offers of settlement in that full offer of settlement does not moot plaintiff's claims).

Nevertheless, Article III of the United States Constitution clearly "limits federal courts to the adjudication of actual, ongoing controversies between litigants" and plaintiffs without a cognizable interest in the litigation must have their claims dismissed. *Ruiz v. City of Santa Maria*, 160 F.3d 543, 548 (9th Cir. 1998); *Ruvalcaba v. City of Los Angeles*, 167 F.3d 514, 520 (9th Cir. 1998). If defendants did offer plaintiff the maximum statutory damages that she could possibly recover from the litigation, this court would most likely agree with defendants' argument that the claims would become moot. However, the allowance of offset is clearly relevant to whether defendants' offer was

a "full offer of settlement" and the maximum that plaintiff could recover from the litigation. *Shoaib*, 1994 WL 697590 at *2 ("[A] settlement does not result in mootness, however, if it does not provide all the relief a court might reward.").

### 2. Setoff

The equitable remedy of setoff lies within the discretion of the court. *Riggs v. Government Employees Financial Corp.*, 623 F.2d 68, 73 (9th Cir. 1980). In *Riggs*, the defendant in a TILA action attempted to use the plaintiff's underlying debt to setoff the TILA damages. *Id.* at 74. The Ninth Circuit upheld the district court's denial of setoff in order to effectuate the purpose of TILA since allowing setoff would deter the pursuit of TILA claims. *Id.*

Other courts have held that counterclaims for the underlying debt in FDCPA cases are not compulsory and are often dismissed at the court's discretion for policy considerations. *See Sparrow v. Mazda American Credit*, 385 F. Supp. 1063, 1071 (E.D. Cal. 2005) ("Strong policy reasons exist to prevent the chilling effect of trying FDCPA claims in the same case as state law claims for collection of the underlying debt."). Indeed, this very court addressed whether a court should exercise jurisdiction over permissive counterclaims for the underlying debt in a FDCPA action. *Campos v. Western Dental Serv., Inc.*, 404 F. Supp. 2d 1164, 1170 (N.D. Cal. 2005). There, this court determined that a "strong public policy reasons exist for declining to exercise jurisdiction over defendant Western's counterclaim" for the underlying debt in a FDCPA suit. *Id.*

Considering that setoff is an equitable remedy, setoff appears contrary to the established policies of FDCPA, and that a counterclaim for the underlying debt would likely be dismissed, defendants will not likely recover for the underlying debt in this litigation. Therefore, defendants' offer of settlement was not a full offer and accordingly did not terminate plaintiff's interest in the outcome of the litigation. Since plaintiff has a continuing interest in the litigation, her claims are not moot and defendants' request to vacate the hearing for the motion for summary judgment is denied.[3]

---

[3] Although there is little analogous case law directly on point, had defendants offered plaintiff a full settlement without offset, their argument for mootness of plaintiff's claims would have likely been meritorious.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT—No. C-08-01826 RMW
NED                                                    10

### C. Conclusion

Plaintiff has not satisfied her burden on summary judgment by proving that there is no issue of material fact as to her claims. Taking all inferences in favor of the non-moving party, there is a factual dispute over several issues including: (1) whether defendant failed to adequately disclose that they were a debt collector in messages left on plaintiff's answering machine; (2) whether plaintiff's April 25th letter was a request for verification under § 1692g(b) or a cease communications letter under § 1692c(c); and (3) whether defendants subsequent communications violated § 1692g(b) or § 1692c(c).

Defendants' request for vacating the hearing for this summary judgment motion, although partially accurate, is denied. Because defendants are unable to setoff the underlying debt against plaintiff's FDCPA claims, the Rule 68 settlement offer was not a full settlement offer.

Lastly, plaintiff's reply does not change the disposition of this court, as many of the cases cited are either unpersuasive or not on point.[4] Because plaintiff failed to satisfy her burden for summary judgment and defendants' offer was not a full offer, plaintiff's motion for summary judgment is denied and defendants' request to vacate the hearing for mootness of the claims is denied as well.

### III. ORDER

For the reasons stated above, the court finds that plaintiff's motion for summary judgment is DENIED. Defendants' request to vacate the hearing on the motion for summary judgment is DENIED as well.

DATED:  August 11, 2008

*Ronald M Whyte*
RONALD M. WHYTE
United States District Judge

---

[4] Plaintiff's argument that setoff is not allowed under FDCPA twice cites to a non-binding case that was vacated and remanded by the United States Supreme Court. *Griggs v. Provident Consumer Discount Co.*, 680 F.2d 927, 932 (3d Cir. 1982) *certiorari granted, judgment vacated on other grounds by Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982). Plaintiff also argues that any setoff would infringe on plaintiff's counsel's lien on any damages obtained from the litigation. Opp'n at 7. Since defendant's settlement offer included reasonable attorney's fees to be determined by the court, these lines of cases are not on point with the present dispute.

**Notice of this document has been electronically sent to:**

**Counsel for Plaintiff:**

Fred W. Schwinn                fred.schwinn@sjconsumerlaw.com
Jovanna R. Longo            jovanna.longo@sjconsumerlaw.com

**Counsel for Defendants:**

Tomio B. Narita                 tnarita@snllp.com
Jeffrey A Topor                jtopor@snllp.com

Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

**Dated:** August 12, 2008                                /s/ MAG
                                                                **Chambers of Judge Whyte**